Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com

*Counsel for Plaintiffs*

[Additional counsel on signature page.]

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| STEPHEN G. AQUILINA and LUCINA J. AQUILINA, Individually and on Behalf of All Others Similarly Situated; and AUDRA M. LANE and SCOTT K. LANE, Individually and as Trustees of the Lane Family Trust, dated March 28, 1998, and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> CERTAIN UNDERWRITERS AT LLOYD'S LONDON; LLOYD'S SYNDICATE #2003; LLOYD'S SYNDICATE #318; LLOYD'S SYNDICATE #4020; LLOYD'S SYNDICATE #2121; LLOYD'S SYNDICATE #2007; LLOYD'S SYNDICATE #1183; LLOYD'S SYNDICATE #1729; BORISOFF INSURANCE SERVICES, INC. d/b/a MONARCH E&S INSURANCE SERVICES; SPECIALTY PROGRAM GROUP, LLC d/b/a SPG INSURANCE SOLUTIONS, LLC; PYRAMID INSURANCE CENTRE, LTD.; ILIKEA LLC d/b/a MOA INSURANCE SERVICES HAWAII; and DOES 1-100, <br><br> Defendants. | No. 1:18-cv-00496-ACK-KJM <br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS BORISOFF INSURANCE SERVICES, INC. d/b/a MONARCH E&S INSURANCE SERVICES AND SPECIALTY PROGRAM GROUP, LLC d/b/a SPG INSURANCE SOLUTIONS, LLC'S MOTION TO DISMISS** <br><br> **CLASS ACTION** <br><br> Hearing Date: August 27, 2019 <br>                11 A.M. <br> Trial Judge:    Alan C. Kay <br> Trial Date:     Not assigned <br> Motion:        ECF No. 30 |

# **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................1

FACTUAL BACKGROUND ..........................................................................2

PLEADING STANDARD................................................................................6

ARGUMENT ..................................................................................................8

     I.     Plaintiffs State a Claim for Violation of §480-2 ..................................8

          A.     Plaintiffs Adequately Allege Monarch Engaged in "Deceptive" Practices Under §480-2 ..........................................8

          B.     Plaintiffs Adequately Allege Monarch Engaged in "Unfair" Practices Under §480-2...........................................................10

          C.     Plaintiffs' §480-2 Claim Is Not Precluded By Either HRS §480-11(b) or the Hawaii Insurance Code................................12

     II.     Plaintiffs State a Claim for Violation of §481A ................................15

     III.     Plaintiffs State a Breach of the Duty of Good Faith and Fair Dealing Claim Against Monarch.........................................................17

     IV.     Plaintiffs State an Unjust Enrichment Claim Against Monarch .........24

     V.     Plaintiffs State a Negligence Claim Against Monarch ......................29

     VI.     Plaintiffs State a Breach of Fiduciary Duty Claim Against Monarch..............................................................................................30

     VII.     Plaintiffs Are Entitled to Equitable Relief .........................................34

CONCLUSION..............................................................................................37

i

# TABLE OF AUTHORITIES

**PAGE(S)**

CASES

*In re Adobe Sys., Inc. Privacy Litig.*,
66 F. Supp. 3d 1197, 1221 (N.D. Cal. 2014) ..................................................... 35

*Advanced Salon Visions Inc. v. Lincoln Benefit Life Co.*,
No. 08-cv-02346-LAB-WMC, 2010 WL 3341803
(S.D. Cal. Aug. 25, 2010) ................................................................................... 31

*In re Alexander Seawright Transp., LLC*,
No. 19-cv-00217-NPO, 2019 WL 1282951
(Bankr. S.D. Miss. Mar. 18, 2019) ............................................................... 26, 27

*Allstate Ins. Co. v. Kim*,
121 F. Supp. 2d 1301 (D. Haw. 2000) ............................................................... 31

*Aloha Petroleum, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
No. 13-cv-00296-DKW-RLP, 2014 WL 3359933
(D. Haw. July 8, 2014) ..................................................................... 6, 19, 20, 24

*Am. Auto. Ins. Co. v. Haw. Nut & Bolt, Inc.*,
No. 15-cv-00245-ACK-KJM, 2016 WL 10611393 (D. Haw. May 13, 2016) ... 31

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................. 6

*Bald v. Wells Fargo Bank, N.A.*,
688 F. App'x 472 (9th Cir. 2017) ................................................................... 7, 11

*Balthazar v. Verizon Haw., Inc.*,
123 P.3d 194 (Haw. 2005) ................................................................................. 16

*Best Place, Inc. v. Penn Am. Ins. Co.*,
920 P.2d 334 (Haw. 1996) ........................................................................ *passim*

*Brown v. Brewer*,
No. 06-cv-03731-GHK-JTLx, 2008 WL 6170885 (C.D. Cal. July 14, 2008) ..... 7

*Burnett v. Ala Moana Pawn Shop*,
No. 90-cv-00267-ACK, 1991 WL 11986116 (D. Haw. Oct. 17, 1991),
*aff'd*, 3 F.3d 1261 (9th Cir. 1993) ..................................................................... 16

*Casados v. Drury*,
   No. 13-cv-00283-LEK-RLP, 2014 WL 2968221 (D. Haw. June 30, 2014) ......24

*Certain Underwriters at Lloyd's London Subscribing to Policy No.*
   *LL001HI0300520 v. Vreeken*,
   329 P.3d 354 (Haw. Ct. App. 2014) ............................................................29, 33

*CIM Ins. Corp. v. Masamitsu*,
   74 F. Supp. 2d 975 (D. Haw. 1999) ...................................................................22

*Cochrane v. Azman*,
   No. 29562, 2011 WL 661714 (Haw. Ct. App. Feb. 22, 2011) ..........................31

*Cole v. Asurion Corp.*,
   No. 06-cv-06649-PSG-JTLx, 2008 WL 5423859
   (C.D. Cal. Dec. 30, 2008) ............................................................................31, 32

*Courbat v. Dahana Ranch, Inc.*,
   141 P.3d 427 (Haw. 2006) ..................................................................................8

*Elder v. Pac. Bell Tel. Co.*,
   205 Cal. App. 4th 841 (2012) ............................................................................28

*Enoka v. AIG Haw. Ins. Co., Inc.*,
   128 P.3d 850 (Haw. 2006) .................................................................................19

*Ensign Yachts, Inc v. Arrigoni*,
   No. 09-cv-00209-VLB, 2010 WL 918107 (D. Conn. Mar. 11, 2010) ...............12

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
   371 F. Supp. 3d 1150 (N.D. Ga. 2019) ..............................................................17

*F.K. ex rel. A.K. v. Dep't of Educ.*,
   No. 12-cv-00136-ACK-RLP, 2012 WL 5438989 (D. Haw. Nov. 7, 2012).......35

*Fick v. Unum Life Ins. Co. of Am.*,
   No. 12-cv-01851-MCE-CKD, 2012 WL 5214346
   (E.D. Cal. Oct. 22, 2012) ..................................................................................30

*Gas Co., LLC v. Amerigas Propane, L.P.*,
   No. 16-cv-00366-LEK-KSC, 2017 WL 3613986
   (D. Haw. Jan. 27, 2017) ...............................................................................7, 17

*Gorsuch v. Fin. Freedom*,
No. 14-cv-00152, 2014 WL 4675453 (N.D. Ohio Sept. 18, 2014) ...................25

*Gruenberg v. Aetna Ins. Co.*,
510 P.2d 1032 (Cal. 1973) ...................................................................................23

*Guccione v. JPMorgan Chase Bank, N.A.*,
No. 14-cv-04587-LB, 2015 WL 1968114 (N.D. Cal. May 1, 2015).................36

*Gustafson v. BAC Home Loans Serv., LP*,
No. 11-cv-00915-JST-ANx, 2012 WL 7071488 (C.D. Cal. Dec. 26, 2012)......25

*Haw. Isle Adventures v. N. Am. Capacity Ins. Co.*,
No. 08-cv-00574-SOM, 2009 WL 330211 (D. Haw. Feb. 10, 2009) ...............23

*Henry v. Associated Indem. Corp.*,
217 Cal. App. 3d 1405 (1990) ......................................................................33, 34

*Hough v. Pac. Ins. Co., Ltd.*,
927 P.2d 858 (Haw. 1996)............................................................................32, 33

*Hungate v. Law Office of David B. Rosen*,
391 P.3d 1 (Haw. 2017) ................................................................................10, 11

*James River Ins. Co. v. DCMI, Inc.*,
No. 11-cv-06345-WHA, 2012 WL 2873763 (N.D. Cal. July 12, 2012)........5, 29

*Jenkins v. Commonwealth Land Title Ins. Co.*,
95 F.3d 791 (9th Cir. 1996) ............................................................................14

*In re Kekauoha-Alisa*,
674 F.3d 1083 (9th Cir. 2012) ...........................................................................8

*Lake v. Rutherfoord Int'l, Inc.*,
No. 14-cv-02431-H-NLS, 2014 WL 12526276 (S.D. Cal. Nov. 25, 2014) .......31

*Lumford v. Yoshio Ota*,
434 P.3d 1215 (Haw. Ct. App. 2018) ..........................................................26, 28

*McGraw-Edison Co. v. Preformed Line Prods. Co.*,
362 F.2d 339 (9th Cir. 1966) .............................................................................36

*McKay v. Hageseth*,
   No. 06-cv-01377-MMC, 2007 WL 1056784 (N.D. Cal. Apr. 6, 2007) ..............7

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007)........................................................................................34

*Meheula v. Hausten*,
   29 Haw. 304 (Terr. 1926) ................................................................................31

*Minson-Gray v. New Life Agency Inc.*,
   No. 12-cv-02163-VPP-SPx, 2013 WL 12142944 (C.D. Cal. Mar. 15, 2013)....20

*Moore v. Allstate Ins. Co.*,
   736 P.2d 73 (Haw. Ct. App. 1987) ............................................................22, 23

*OSU Student Alliance v. Ray*,
   699 F.3d 1053 (9th Cir. 2012) ............................................................................8

*In re Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*,
   No. 09-cv-02076-RSL, 2010 WL 2640243 (W.D. Wash. June 25, 2010).........27

*Sanders v. Kennedy*,
   794 F.2d 478 (9th Cir. 1986) ..............................................................................6

*Scott v. Scott*,
   428 P.3d 626 (Colo. Ct. App. 2018), *cert. denied*,
   No. 18SC243, 2018 WL 5052214 (Colo. Oct. 15, 2018)..................................28

*Servco Pac., Inc. v. SkyBridge Glob., Inc.*,
   No. 16-cv-00266-DKW-KSC, 2016 WL 6996987 (D. Haw. Nov. 29, 2016) ...36

*Small v. Badenhop*,
   701 P.2d 647 (Haw. 1985).................................................................................24

*Smallwood v. NCsoft Corp.*,
   730 F. Supp. 2d 1213 (D. Haw. 2010).................................................................7

*Soule v. Hilton Worldwide, Inc.*,
   1 F. Supp. 3d 1084 (D. Haw. 2014).................................................................7, 8

*Starr Indem. & Liab. Co. v. JT2, Inc.*,
   No. 17-cv-00213-DAD-BAM, 2018 WL 1142207 (E.D. Cal. Mar. 2, 2018)....32

*Sunday's Child, LLC v. Irongate AZREP BW LLC*,
   No. 13-cv-00502-DKW-RLP, 2017 WL 561338 (D. Haw. Feb. 10, 2017).........6

*T.K. v. Adobe Sys. Inc.*,
   No. 17-cv-04595-LHK, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018).............36

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07-md-01827-SI, 2011 WL 4501223 (N.D. Cal. 2011) ........................25, 28

*Thomas Fatato Realty Corp. v. Certain Underwriters at Lloyd's London*,
   No. 504419/12, 2017 WL 3386262 (N.Y. Sup. Ct. Aug. 07, 2017) .................24

*Thompson v. Cannon*,
   224 Cal. App. 3d 1413 (Ct. App. 1990)...............................................................33

*True Value Co. v. Hills*,
   No. 16-cv-00237-JMS-RLP, 2016 WL 7191540 (D. Haw. Nov. 16, 2016) ......17

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .............................................................................7

*Wailua Assocs. v. Aetna Cas. & Sur. Co.*,
   183 F.R.D. 550 (D. Haw. 1998) (Kay, C.J.)......................................................18

*Wieck v. CIT Grp., Inc.*,
   308 F. Supp. 3d 1093, (D. Haw. 2018)................................................................9

*Williams v. Wells Fargo Bank N.A.*,
   No. 11-cv-21233, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011).................25, 27

*Willis v. Swain*,
   304 P.3d 619 (Haw. 2013).........................................................................*passim*

**STATUTES, RULES & REGULATIONS**

ACT OF JUNE 18, 1991, NO. 284, §1, 1991 HAW. SESS. LAWS 8 ................................11

HAWAII REVISED STATUTES
   §431:1-101 ............................................................................................................21
   §431:1-102 .....................................................................................................21, 29
   §431:8-102 ............................................................................................................13
   §431:8-203 ............................................................................................................36
   §431:8-301 ............................................................................................................29

§431:8-301(a)(2)-(4) ...........................................................................................13
§431:21-101 ...................................................................................................4, 10
§480-11(b) ..........................................................................................................12
§481A-3(a)(12) .............................................................................................16, 17
§481A-3(b) ..........................................................................................................16

Fed. R. Civ. P. 57 ...............................................................................................36

**Other Authorities**

Colin Sammon, *Insurance Agent and Broker Liability: Crossing the Two
    Way Street*, 29 Ohio N.U. L. Rev. 237, 237-41 (2002) ...................................4, 5

Douglas R. Richmond, *Insurance Agent and Broker Liability*,
    40 Tort Trial & Ins. Prac. L.J. 1, 2-9 (2004) ......................................................4

Law of Commercial Agents and Brokers §§5.2, 10:3 (West 2019) ..................4

*Premium & Claims Handling*, Lloyd's (2019),
    https://www.lloyds.com/market-resources/delegated-authorities/
    compliance-and-operations/premium-and-claims-handling; .............................26

*What is Lloyd's?*, Lloyd's (2019),
    https://www.lloyds.com/about-lloyds/what-is-lloyds .........................................5

Plaintiffs Stephen G. Aquilina and Luciana J. Aquilina ("Aquilina Plaintiffs") and Plaintiffs Audra M. Lane and Scott K. Lane ("Lane Plaintiffs") (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to the motion to dismiss (ECF No. 30) ("Motion") Plaintiffs' Class Action Complaint (ECF No. 1) ("Complaint") filed by Defendants Borisoff Insurance Services, Inc. d/b/a Monarch E&S Insurance Services ("Monarch") and Specialty Program Group, LLC d/b/a SPG Insurance Solutions, LLC ("SPG") (together, "Monarch").

## **INTRODUCTION**

Plaintiffs detail a straight-forward scheme of unfair and deceptive conduct, whereby Monarch with the other Broker Defendants[1] steered homeowners to Underwriters'[2] surplus lines insurance policies, instead of more comprehensive Hawaii Property Insurance Association ("HPIA") policies.  The Complaint explains how Monarch entered into compensation agreements to steer homeowners to Underwriters' surplus lines insurance policies in exchange for kickbacks.  As a result, Plaintiffs and the Class purchased insurance with numerous exclusions that did not provide vital coverage for damage caused by volcanic eruption.  In the wake

---

[1]     The "Broker Defendants" are Monarch along with Ilikea LLC d/b/a Moa Insurance Services Hawaii ("Moa") and Pyramid Insurance Centre, Ltd. ("Pyramid").

[2]     "Underwriters" are Defendants Certain Underwriters Participating in Lloyd's Syndicates 2003, 318, 4020, 2121, 2007, 1183, and 1729 (collectively, with the Broker Defendants, "Defendants").

of the devastating eruption of the Kilauea Volcano in May 2018, Plaintiffs and the Class were displaced, their homes were damaged, and their inferior insurance policies did not provide coverage for their losses.  But for Defendants' improper and unlawful scheme, Plaintiffs and the Class would not have paid for nearly worthless insurance and could have had more comprehensive coverage.

Each of Monarch's arguments seeking dismissal is contrary to established law or is based on a mischaracterization of the Complaint's well-pleaded allegations.  As demonstrated below, Plaintiffs' allegations satisfy the applicable pleading requirements and state claims for damages for violation of Hawaii's Unfair or Deceptive Acts and Practices law, HRS §480-2 ("§480-2"), breach of the duty of good faith and fair dealing, breach of fiduciary duties, and negligence; injunctive relief under Hawaii's Uniform Deceptive Trade Practice Act, HRS §481A ("§481A"); disgorgement of all unjust benefits; and equitable relief under the Declaratory Judgment Act, 28 U.S.C. §2201.

## **FACTUAL BACKGROUND**

In Hawaii, Lava Zones 1 and 2 are the areas that the U.S. Geological Survey has determined are the most hazardous; therefore, homeowner's insurance available in these areas is limited.  ¶¶9, 53-54.[3]  The prominent insurers for Lava Zones 1 and 2 are Lloyd's of London syndicates, such as Underwriters, and HPIA.  ¶55.  In the

---

[3]     All "¶" and "¶¶" references are to the Complaint.

aftermath of the 2018 Kilauea Volcano eruption, Plaintiffs and Class members discovered that they unknowingly purchased homeowner's insurance that did not provide coverage for the losses they have suffered, due to the exclusions contained in Underwriters' surplus lines policies and post-claim coverage denials. ¶¶2-9, 61, 75-76. Plaintiffs allege they have paid for virtually worthless insurance as a result of Defendants' scheme whereby Broker Defendants accepted kickbacks in exchange for steering Plaintiffs and the Class to Underwriters' surplus lines insurance policies, rather than more comprehensive HPIA policies. *Id*.; ¶10.

Monarch operates as a broker for Underwriters, which are a network of syndicates that underwrite insurance, including surplus lines homeowner's insurance, in a specialty insurance marketplace known as Lloyd's of London. ¶¶18-19, 29, 32-34, 48. Surplus lines insurance is a niche insurance product that serves to fill a gap in the insurance market to provide insurance coverage for high-risk perils. ¶¶39-41. But because surplus lines insurers are not admitted or licensed to operate in the insured's home state, placing surplus lines insurance is permitted only under specified circumstances in compliance with HRS §431:8-301(a). ¶¶44-47. In essence, surplus lines insurance is considered a policy of last resort when no domestic admitted insurer can offer the same or comparable coverage for the same or less amount. *Id*. Because admitted insurers stopped writing homeowner's insurance policies to provide coverage for certain high risk perils for properties

located in Hawaii, such as the ongoing risks of damage from volcanic eruption, the Hawaii Legislature made coverage under HPIA available.   ¶50; *see also* HRS §431:21-101, *et seq*.   Monarch, however, disregarded the availability of HPIA coverage; failed to perform the required due diligence; issued surplus lines policies that contained coverage amounts that were artificially inflated above the ceiling for HPIA coverage; and received kickbacks in exchange for steering homeowners to Underwriters' surplus lines policies.   ¶¶4-6, 57, 59, 66-68; *see also* ECF Nos. 30-3 at 43 and 30-4 at 43.

Unlike in the traditional insurance market, the Lloyd's of London insurance market involves many more intermediaries.   *See* Law of Commercial Agents and Brokers §§5.2, 10:3 (West 2019).   As a result, agency relationships often are blurred and can result in conflicts of interest.   *See* Douglas R. Richmond, *Insurance Agent and Broker Liability*, 40 TORT TRIAL & INS. PRAC. L.J. 1, 2-9 (2004) (describing varying roles of insurance intermediaries); Colin Sammon, *Insurance Agent and Broker Liability: Crossing the Two Way Street*, 29 OHIO N.U. L. REV. 237, 237-41 (2002).   Here, Monarch played a dual role in Defendants' scheme, effectively operating on both sides of the insurance transactions.   On the one hand, Monarch served as the conduit through which Underwriters are able to access the U.S.

market.[4]  In this capacity, Plaintiffs allege (and Monarch concedes) that Monarch is an agent of Underwriters.  ¶¶29, 33(B), 34; Br. at 22-25.[5]  The scope of Monarch's agency and its delegated authority is governed by a contract between Monarch and Underwriters, known as a "Binding Authority," to which Plaintiffs are not a party. ¶¶29, 34.  On the other hand, Plaintiffs also allege Monarch is directly liable for its conduct as it was licensed as a surplus lines broker in Hawaii that procured and placed insurance for Plaintiffs through Monarch's authorized representatives, Moa and Pyramid.  ¶¶15-16, 32, 34-35.  Thus, Plaintiffs plausibly allege Monarch also served as an agent of Plaintiffs, as the insureds.  *James River Ins. Co. v. DCMI, Inc.*, No. 11-cv-06345-WHA, 2012 WL 2873763, at *5 (N.D. Cal. July 12, 2012) (defining "an insurance agent or broker's general duties to its client as 'those duties normally found in any agency relationship'").  Whether a broker represents the insurer or the insured depends on the circumstances of the transaction and is a question of fact for the jury.  *See* Sammon, *supra*, at 239-40.

As a result of Defendants' improper steering scheme, Plaintiffs and the Class paid for homeowner's insurance that was essentially worthless because it excluded necessary coverage for damage caused by volcanic eruption.  ¶¶1-2, 8, 15-16, 76.  If

---

[4]     *See What is Lloyd's?*, LLOYD'S (2019), https://www.lloyds.com/about-lloyds/what-is-lloyds ("The business written at Lloyd's is brought to specialist syndicates, who price and underwrite risk, via brokers and coverholders.").

[5]     All "Br." references are to Monarch's Memorandum in Support of Motion (ECF No. 30-1).

Plaintiffs and the Class had been informed of the availability of HPIA insurance, they would have purchased more comprehensive policies that insured against these perils, which are necessary for homeowners living in Lava Zones 1 and 2.  ¶¶66, 70, 76.  Plaintiffs therefore seek damages, restitution, and injunctive and other equitable relief on behalf of the Class.  ¶11.

## **PLEADING STANDARD**

To survive a motion to dismiss, a complaint need only "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  In making this determination, a court construes the complaint in the light most favorable to the plaintiff, accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in the plaintiff's favor.  *See Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).

Plaintiffs' duty of good faith and fair dealing, negligence, fiduciary duty, and unjust enrichment claims are properly evaluated under the relaxed notice pleading standard of Rule 8(a).  *See, e.g., Aloha Petroleum, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 13-cv-00296-DKW-RLP, 2014 WL 3359933, at *3-5 (D. Haw. July 8, 2014) (analyzing breach of duty of good faith and fair dealing claim under Rule 8(a)); *Sunday's Child, LLC v. Irongate AZREP BW LLC*, No. 13-cv-00502-DKW-RLP, 2017 WL 561338, at *6 (D. Haw. Feb. 10, 2017) (same as to

unjust enrichment claim); *McKay v. Hageseth*, No. 06-cv-01377-MMC, 2007 WL 1056784, at *2 (N.D. Cal. Apr. 6, 2007) (same as to negligence claim); *Brown v. Brewer*, No. 06-cv-03731-GHK-JTLx, 2008 WL 6170885, at *6 (C.D. Cal. July 14, 2008) (same as to fiduciary duty claim).  Moreover, Plaintiffs' allegations under the "unfair" prong of §480-2—such as Monarch's failure to perform various duties of due diligence, including the duties required under §431:8-301(a) (¶¶3-5, 44-46, 57)—are subject to Rule 8(a), as Plaintiffs do not allege solely fraudulent conduct in connection with this claim.  *See Soule v. Hilton Worldwide, Inc.*, 1 F. Supp. 3d 1084, 1090 (D. Haw. 2014); *Bald v. Wells Fargo Bank, N.A.*, 688 F. App'x 472, 476 (9th Cir. 2017).

Plaintiffs' allegations under §480-2's "deceptive" prong—such as Monarch artificially inflating the dwelling coverage limit and personal liability coverage the Lane Plaintiffs needed beyond the coverage limits provided under non-surplus lines insurance (¶16)—are subject to Rule 9(b).  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003); *see also Soule*, 1 F. Supp. 3d at 1090; *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1234 (D. Haw. 2010).  The same is true for Plaintiffs' §481A claim.  *See Gas Co., LLC v. Amerigas Propane, L.P.*, No. 16-cv-00366-LEK-KSC, 2017 WL 3613986, at *4 (D. Haw. Jan. 27, 2017)  To the extent Rule 9(b) applies, it is satisfied, as discussed below.  *See* §§I-II.

Moreover, Courts routinely grant leave to amend to cure deficiencies in a pleading.  *See OSU Student Alliance v. Ray*, 699 F.3d 1053, 1079 (9th Cir. 2012); *see also Soule*, 1 F. Supp. 3d at 1096.

## ARGUMENT

### I.     Plaintiffs State a Claim for Violation of §480-2

Monarch does not challenge, and therefore concedes, that Plaintiffs have properly pleaded that Monarch engaged in unfair or deceptive conduct in violation of §480-2.  Br. at 5-8.  As set forth below, Plaintiffs' allegations satisfy the separate tests for establishing both deceptive and unfair conduct.  Therefore, Plaintiffs' §480-2 claim should be sustained.

#### A.    Plaintiffs Adequately Allege Monarch Engaged in "Deceptive" Practices Under §480-2

A "deceptive act or practice is '(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under circumstances where (3) the representation, omission, or practice is material.'"  *Courbat v. Dahana Ranch, Inc.*, 141 P.3d 427, 435 (Haw. 2006).  "A representation, omission, or practice is considered 'material' if it involves 'information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'"  *Id.*  The inquiry is objective—analyzing "whether the practice was 'capable of misleading a reasonable consumer.'"  *In re Kekauoha-Alisa*, 674 F.3d 1083, 1091 (9th Cir. 2012).

Plaintiffs allege that they went to Broker Defendants to obtain homeowner's insurance for their properties located in Hawaii Lava Zone 1.   ¶¶15-16, 35-36. Monarch had a relationship and agreement with Underwriters to steer its customers that owned homes located in Lava Zones 1 and 2 to Underwriters' surplus lines insurance policies.   ¶¶6, 47, 58-59, 61, 68-69.   Monarch accomplished its goal, in part, by disregarding the availability of alternative insurance coverage and underwriting surplus lines policies that contained coverage amounts that were artificially inflated above the ceiling for HPIA coverage in order to place the insurance and receive improper commissions.   ¶¶4-5, 68, 93, 104, 119, 126, 133, 138.   These practices were material because HPIA insurance was more comprehensive than Lloyd's surplus lines insurance, offering property coverage against 16 different perils, including fire and volcanic eruption.   ¶¶10, 52, 70.   As a result, these practices misled Plaintiffs and the Class into believing that they could not obtain traditional insurance and were required to purchase Underwriters' surplus lines insurance, and Plaintiffs obtained less comprehensive insurance that amounted to no coverage at all.   ¶¶2, 8, 60, 66, 70, 76.   These allegations clearly satisfy the deceptive practices prong under §480-2.   *See Wieck v. CIT Grp., Inc.*, 308 F. Supp. 3d 1093, 1119-21, 1124 (D. Haw. 2018) (sustaining §480-2 claim against mortgagee and Lloyd's entities where the complaint alleged mortgager chose more expensive

Lloyd's and other insurer's policies in order to receive kickbacks, reinsurance profits, and other wrongful benefits).

**B.    Plaintiffs Adequately Allege Monarch Engaged in "Unfair" Practices Under §480-2**

"A practice 'is unfair when it [1] offends established public policy and [2] when the practice is immoral, unethical, oppressive, unscrupulous or [3] substantially injurious to consumers.'" *Hungate v. Law Office of David B. Rosen*, 391 P.3d 1, 18 (Haw. 2017).  A party "need not allege" that the defendant's "actions meet all three of these factors to assert an unfair act or practice." *Id.*  "A practice may be unfair if it 'offends public policy as it has been established by statutes, the common law, or otherwise.'" *Id.*

Monarch's conduct that Plaintiffs allege was deceptive is also unfair.  *See id.* Monarch's scheme to steer Plaintiffs and the Class by artificially inflating the values of their coverages, so that they could underwrite surplus lines insurance in Hawaii, directly contravenes the purpose behind establishing HPIA.  *See* HRS §431:21-101. The Hawaii Legislature explained:

> The legislature finds that the recent Kilauea volcano eruption and lava flows have caused a serious problem for residents of certain areas of the Big Island. The actual and potential losses caused by the volcanic activity has also resulted in the unavailability of basic property insurance for persons having insurable interests in properties in the vicinity which has caused great personal suffering and financial hardship and has contributed to uncertainty in the community. The legislature finds it is in the interest of the State to foster stability for people adversely affected by major natural disasters, and this purpose

will be served by making basic property insurance available to such persons.

The purpose of this Act is to create an entity which will provide appropriately priced basic property insurance for owners and occupants of property in high risk areas for major natural disasters. This extraordinary action is being taken to provide limited relief to meet the unique and pressing needs of these persons who are currently unable to obtain any property insurance.

Act of June 18, 1991, No. 284, §1, 1991 Haw. Sess. Laws 8.  Monarch's conduct thus plainly violates the express public policy that Hawaiian homeowners should be afforded property insurance with coverage for damage cause by "major national disasters," specifically the Kilauea volcano eruption.

Monarch's scheme also offends the public policy espoused elsewhere throughout the Hawaii Insurance Code, specifically HRS §§431:1-102, 431:8-102, 431:8-301(a), and 431:13-103(a)(1)(A), (8), and thus, is unfair.  *See*, *e.g.*, *Hungate*, 391 P.3d at 18 (stating that a factfinder could find that defendant's conduct in failing to use all fair and reasonable means to obtain the best prices for a property offended public policy or otherwise met the test for "unfair"); *Bald v. Wells Fargo Bank, N.A.*, 688 F. App'x 472, 475 (9th Cir. 2017) (finding that plaintiffs sufficiently alleged defendant's practices in conducting foreclosure sales were "unfair because they offend public policy as established by the common law").

Finally,  Broker Defendants' practice of steering consumers and placing them into surplus lines insurance also was oppressive, unscrupulous, and "substantially

injurious to consumers" who were never even informed of the availability of HPIA insurance, which would have provided necessary coverage for damage caused by volcanic eruption.  ¶¶66, 70, 76.  In the wake of the eruption of the Kilauea Volcano, and subsequent revelations that hundreds, if not thousands, of Hawaii residents were left with no coverage, it is evident that Underwriters' sale through the Broker Defendants of surplus lines insurance containing these exclusions was substantially injurious to consumers in Lava Zones 1 and 2.  Thus, Plaintiffs have stated claims under the unfair prong of §480-2.  *Cf. Ensign Yachts, Inc v. Arrigoni*, No. 09-cv-00209-VLB, 2010 WL 918107, at *15-17 (D. Conn. Mar. 11, 2010) (plaintiff stated unfair trade practices claim against Lloyd's underwriters who were alleged, along with their broker, to have '"misrepresent[ed] the benefits, advantages, conditions and terms of the policy'").

### C.    Plaintiffs' §480-2 Claim Is Not Precluded By Either HRS §480-11(b) or the Hawaii Insurance Code

Monarch argues HRS §480-11 ("§480-11") bars Plaintiffs' §480-2 claim.  Br. at 8.  Section 480-11 provides that Chapter 480 "shall not apply to any transaction in ***the business of insurance.***"  HRS §480-11(b).[6]  But the surplus lines insurance transactions at issue occurred in violation of the Hawaii Insurance Code, and thus, were not "expressly permitted by the insurance laws of this State[.]"   *Id.*

---

[6]    Unless otherwise indicated, all emphasis is added and citations omitted.

Specifically, Hawaii law mandates that "[s]urplus lines insurance . . . shall be in accordance with part III of this article."  HRS §431:8-102.  HRS §431:8-301(a) outlines several threshold requirements for the placement of lawful surplus lines insurance, namely to perform a diligent search of the admitted insurer market and only place surplus lines insurance when no domestic admitted insurer can offer the same or comparable coverage for the same or less amount.  *See* HRS §431:8-301(a)(2)-(4).  The failure to perform statutorily required due diligence, which Monarch was required to perform, violates HRS §431:8-301(a).  Monarch's misrepresentations relating to coverage amounts and underwriting policies in disregard for the availability of other non-surplus lines insurance parallels the practices prohibited under HRS §431:13-103(a)(1)(A).  And, Monarch's receipt of kickbacks in exchange for steering homeowners to Underwriters' surplus lines policies violates HRS §431:13-103(a)(8).  Therefore, the insurance policies issued to Plaintiffs were not permitted by the insurance laws of Hawaii and Monarch is not exempted from Hawaii's unfair or deceptive acts and practices laws.

Despite these violations, Monarch asserts that "[t]here is no private right of action for breaches of the Insurance Code."  Br. at 6 (citing *Best Place, Inc. v. Penn Am. Ins. Co.*, 920 P.2d 334, 340 (Haw. 1996)).  Plaintiffs, however, are not asserting a claim against Monarch under Hawaii's Insurance Code.  Instead, Plaintiffs assert their unfair or deceptive practices claim under §480-13(b).  ¶¶98-99.  Indeed, Article

13 of the Insurance Code does not preclude Plaintiffs from bringing a private cause of action against Monarch under another provision of the Hawaii Revised Statutes. *See Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 799 (9th Cir. 1996) (holding "that the Hawaiʻi Supreme Court would not read Article 13 of the Hawaiʻi Insurance Code as preempting private actions under the general unfair-competition law of Hawaiʻi").

In *Jenkins*, the plaintiff appealed the district court's finding that his §480-2 claim was "precluded by certain provisions of the Hawaiʻi Insurance Code that provide only administrative remedies." *Id.* at 796. The Ninth Circuit reversed and held that the plaintiff sufficiently stated a claim for deceptive trade practices under §480-2. *Id.* at 798-99. The *Jenkins* court relied on language from *Best Place, Inc. v. Penn Am. Ins. Co.*, 920 P.2d 334 (Haw. 1996)—the case Monarch cites in support of its argument—in which the Hawaii Supreme Court stated that "'we glean from the legislative history of HRS § 413:13-202(b) [the section of Article 13 that provides for administrative remedies] that the legislature deemed the existing administrative remedies inadequate.'" *Jenkins*, 95 F.3d at 798 (citing *Best Place*, 920 P.2d at 341). This reasoning is directly applicable here, where the administrative remedies in the Insurance Code are inadequate, but the private right of action under §480-13(b) provides a means for Plaintiffs to plead a §480-2 claim against Monarch.

14

Monarch argues that permitting Plaintiffs to bring a §480-2 claim would "fly in the face of Hawaii appellate decisions . . . and upend Hawaii's insurance statutory scheme by implicitly recognizing a private cause of action to enforce the Insurance Code[.]" Br. at 7. The court in *Best Place*, however, expressly recognized that the administrative remedies under the Insurance Code "are not exclusive." *Best Place*, 920 P.2d at 341. Moreover, in the legislative history of Article 13, the House Committee found "'the current administrative procedure for cease and desist orders by the Insurance Commissioner are inadequate and do not afford compensation to the individual damaged by the carrier's unfair claim settlement practices. Therefore, your Committee emphasizes its accord with the provisions of this bill clarifying that the cease and desist order is not the exclusive remedy.'" *Id.* (citing Hse. Stand. Comm. Rep. No. 1518). Consistent with this finding, a cease and desist action by the Insurance Commissioner against Monarch would not be an adequate remedy where Hawaii homeowners have been damaged by Monarch's unfair steering of Plaintiffs to worthless surplus lines policies. Thus, Plaintiffs' §480-2 claim against Monarch is not precluded and Monarch's Motion must be denied as to this claim.

## II. Plaintiffs State a Claim for Violation of §481A

Plaintiffs allege Monarch's conduct of misrepresenting coverage amounts and issuing policies in disregard for the availability of other non-surplus lines insurance (¶¶4-5, 68, 93, 104, 119, 126, 133, 138) "create[d] a likelihood of confusion or of

misunderstanding" relating to the benefits, advantages, and terms of insurance policies in violation of §481A-3(a)(12).  These acts parallel the conduct prohibited under HRS §431:13-103(a)(1)(A).  To prevail on a §481A claim, a plaintiff "need not prove . . . actual confusion or misunderstanding."  HRS §481A-3(b).  Rather, a "deceptive practice" is defined as "'an act causing, as a natural and probable result, a person to do that which he [or she] would not otherwise do.'"  *Balthazar v. Verizon Haw., Inc.*, 123 P.3d 194, 202 (Haw. 2005).  Plaintiffs and the Class would not have purchased surplus lines insurance absent Underwriters' and the Broker Defendants' scheme to steer them into surplus lines insurance over HPIA insurance.  ¶¶10, 70, 86.  Thus, because Plaintiffs and the Class were not fully informed as to the insurance transactions, Plaintiffs' allegations are sufficient to state a §481A claim.  *See Burnett v. Ala Moana Pawn Shop*, No. 90-cv-00267-ACK, 1991 WL 11986116, at *14 (D. Haw. Oct. 17, 1991) (Kay, J.), *aff'd*, 3 F.3d 1261 (9th Cir. 1993) (finding a violation of §481A where defendant's non-disclosure of information in violation of TILA "would likely lead to a misunderstanding or confusion since plaintiff was not fully informed as to the transactions").  These same allegations therefore also state a claim under §480-2.  *See id.*

Monarch argues Plaintiffs' §481A claim is deficient because Plaintiffs do not allege Monarch engaged in an enumerated deceptive trade practice under §481A-3.  Br. at 8-10.  Monarch's argument ignores that Plaintiffs bring their §481A claim

16

under the catch-all provision.  HRS §481A-3(a)(12).  Monarch's cited case, *True Value Co. v. Hills*, No. 16-cv-00237-JMS-RLP, 2016 WL 7191540, at *5 (D. Haw. Nov. 16, 2016), is inapposite since the language Monarch quotes comes from HRS §481A-3(a)(2) and (3), not HRS §481A-3(a)(12).  On its face, HRS §481A-3(a)(12) is a broad catch-all that does not contain the limiting language from HRS §481A-3(a)(2) or (3) cited in *True Value*.  *See Gas Co.*, 2017 WL 3613986, at *4 (characterizing §481A-3(a)(12) as "a sweeping provision").  Therefore, Monarch's impermissibly narrow construction of §481A should be rejected.

Monarch also argues Plaintiffs' §481A claim fails because the injunction Plaintiffs seek is "unworkable and inadequate[.]"  Br. at 11-13.  This argument is premature and must be rejected, as an adequate injunction can be fashioned at the appropriate time.  *See In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1185 (N.D. Ga. 2019) (rejecting similar argument).

### III.  Plaintiffs State a Breach of the Duty of Good Faith and Fair Dealing Claim Against Monarch

Monarch argues Plaintiffs' breach of the duty of good faith and fair dealing claim fails because "there is no contract between Plaintiffs and Monarch from which to impute the duty of good faith and fair dealing."  Br. at 14.  No binding Hawaii decision, however, has ever held that a bad faith defendant must have contractual privity.  Indeed, the Hawaii Supreme Court has expanded the duty of good faith and fair dealing in the insurance law context beyond the confines of a contract where a

special relationship and statutory duties exists.   Plaintiffs allege Monarch has violated the Hawaii Insurance Code in a scheme to maximize the volume of surplus lines premiums to increase the commissions and kickbacks it receives.   As discussed below, misconduct that violates the Hawaii Insurance Code serves as the legal basis for imposing a duty of good faith and fair dealing on Monarch, which has a contractually-based special relationship with Plaintiffs even though it is not the insurer.   Accordingly, the Court should deny Monarch's Motion as to this claim.

Hawaii has long recognized a duty of good faith and fair dealing in the insurance context.   *See Best Place*, 920 P.2d at 346.   *Best Place* held that the duty of good faith and fair dealing owed to the insured is "unconditional and independent of the performance of [the insured]'s contractual obligations." *Id*. at 342.   As this Court has explained, "[t]he court's decision was based upon a number of factors unique to the insurer-insured relationship[,]" including the "'special relationship between insurer and insured.'"   *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 560 (D. Haw. 1998) (Kay, C.J.) (summarizing policy considerations underpinning the *Best Place* decision).   Hawaii decisions subsequent to *Best Place* have construed the bad faith cause of action broadly, recognizing duties outside the bounds of the contract.   In particular, the Hawaii Supreme Court has made clear that "[a]n underlying contract . . . is not the *sine qua non* of a bad faith tort claim."   *Willis v.*

*Swain*, 304 P.3d 619, 631 (Haw. 2013); *see also Enoka v. AIG Haw. Ins. Co., Inc.*, 128 P.3d 850, 865 (Haw. 2006).

As the *Willis* court recognized, "[t]he legal basis for imposing a duty of good faith and fair dealing on insurers is [] set forth by statute[,]" specifically HRS §431. *Willis*, 304 P.3d at 628.  In *Best Place* and *Willis*, differing sections of HRS §431 defined the duty owed to the insured, so that the underlying covenant of good faith and fair dealing applies, even in the absence of a contract.  *See Best Place*, 920 P.2d at 340 (discussing that obligation of good faith is consistent with provisions of HRS §431 that contemplate a cause of action for insurer bad faith); *Willis*, 304 P.3d at 628 (discussing HRS §431:10C-403).  In *Aloha Petroleum*, Judge Watson followed the rationale contained in *Best Place* and *Willis*.  The plaintiff in *Aloha Petroleum* sought to hold an insurer liable for bad faith based on a violation of "HRS § 431:10-227's prohibition on retroactively annulling coverage.''  2014 WL 3359933, at *7.  In rejecting the defendant's position that a bad faith claim is limited to insurance claims and settlement practices, the court agreed that *Willis* permitted this use of HRS §431 and ruled: "[A]t the present stage of the litigation, [the Court] relies upon Hawaiʻi courts' embrace of 'the common law duty of good faith and fair dealing of insurers [that] is incorporated in the insurance code.'"  *Id*., at *8.  In other words, the court recognized that *Willis* permits allegations of bad faith based on a defendant's violation of the Insurance Code.

Applying the foregoing principles, Plaintiffs plausibly allege a violation of the duty of good faith and fair dealing against Monarch.  Monarch, however, seeks to avoid liability for its bad faith conduct in violation of these statutory duties by claiming it "had <u>no</u> contractual relationship with Plaintiff[s.]"  Br. at 19.  This is not true.  Even if Monarch is not the insurer, it is no stranger to the insurance transactions at issue.  Monarch underwrote, issued, and signed Underwriters' surplus lines insurance policies issued to Plaintiffs.  ECF No. 30-3 at 1-2, 43; ECF No. 30-4 at 1-2, 43.  It also is the entity that policyholders are to contact with inquiries and claims.  ECF No. 30-3 at 1-2, 15; ECF No. 30-4 at 1-2, 15.  Plaintiffs also allege that Monarch is a coverholder and agent of Underwriters.  ¶¶29, 33(B), 34.  In light of these allegations and representations on the face of the policies, the Court cannot accept Monarch's contrary assertions at the motion to dismiss stage.  *See Minson-Gray v. New Life Agency Inc.*, No. 12-cv-02163-VPP-SPx, 2013 WL 12142944, at *1-2 (C.D. Cal. Mar. 15, 2013).  Thus, Plaintiffs establish that Monarch has a special relationship with Plaintiffs arising from the policy and transactions with Plaintiffs, such that the statutory duties owed by Monarch under the Insurance Code serve as the basis for this bad faith claim.

Despite this clear contractual relationship, Monarch asserts no duty of good faith and fair dealing can extend to it purely because it is not the insurer.  Br. at 14-19.  This argument is not well-reasoned.  While *Best Place*, *Willis*, and *Aloha*

*Petroleum* deal with the insurer-insured relationship, the reasoning in each of these decisions emphasizes that the duty springs from the special relationship created by the insurance contract and the statutory duties owed pursuant to the Insurance Code. The Hawaii Insurance Code requires ***all parties*** involved in an insurance transaction to maintain statutory duties to policyholders under HRS §431.  HRS §431:1-101 mandates that "***[n]o person*** shall transact a business of insurance in [Hawaii] without complying with the applicable provisions of this code[,]" and HRS §431:1-102 declares that "[t]he business of insurance is one affected by the public interest, requiring that ***all persons*** be actuated by good faith, abstain from deception and practice honesty and equity in all insurance matters.  Upon the insurer, the insured and ***their representatives*** rests the duty of preserving inviolate the integrity of insurance."  Clearly, these provisions apply to Monarch and Underwriters equally. Also relevant here, HRS §431:13-103(a) expansively defines unfair and deceptive acts and practices in the business of insurance that broadly govern the scope of the insurance transaction, while HRS §431:8-301(a) defines specific duties for the placement of surplus lines insurance.  None of these provisions establishing statutory duties in the business of insurance is limited to insurers.  To the contrary, the duty of good faith and fair dealing extends to all persons acting under authority of the contractual relationship established by the insurance contracts.

It is undisputed that Monarch must abide by these duties; however, as Plaintiffs' allege, it has failed to do so.  Monarch's failure to perform statutorily required due diligence violates HRS §431:8-301(a)(2).   And, Monarch's misrepresentations relating to coverage amounts and availability of other non-surplus lines insurance and failure to disclose that it received unlawful commissions and kickbacks parallels the practices prohibited under HRS §§431:13-103(a)(1)(A) and (8).  Thus, as in the cases cited above, the violation of these statutory provisions provides the basis for Plaintiffs' bad faith claim.  This conclusion serves the policy considerations identified in *Best Place*, protects the public interest, and preserves the integrity of insurance espoused in HRS §431:1-102.  Having stated a viable cause of action, whether Monarch acted in bad faith is a fact question for the jury to decide. *Willis*, 304 P.3d at 637.

The cases Monarch cites to support its position that a bad faith claim cannot lie against non-insurers (Br. at 16-19) are inapposite.  The only Hawaii Intermediate Court of Appeals ("ICA") case Monarch cites, *Moore v. Allstate Ins. Co*., 736 P.2d 73, 77 (Haw. Ct. App. 1987), was decided well before *Best Place* and *Willis*, did not address the duty of good faith and fair dealing, and is factually distinguishable because no contract whatsoever existed.[7]  *CIM Ins. Corp. v. Masamitsu*, 74 F. Supp.

---

[7]    Importantly, Monarch misquotes the case.  Monarch claims that the ICA reasoned that the lower court properly dismissed the insured's claim because "the adjuster 'was merely ***an agent*** of [the insurer], and [the insured's] attempt to hold

2d 975, 994 (D. Haw. 1999), pre-dates *Willis* and was decided on summary judgment.  In *Haw. Isle Adventures v. N. Am. Capacity Ins. Co.*, another pre-*Willis* decision, the plaintiff conceded, unlike here, that the defendant Golden Bear was not a party to the insurance contract and assumed no contractual obligations.  No. 08-cv-00574-SOM, 2009 WL 330211, at *2-3 (D. Haw. Feb. 10, 2009).  Following *Gruenberg v. Aetna Ins. Co.*, 510 P.2d 1032 (Cal. 1973), which concluded "'the non-insurer defendants were not parties to the agreements for insurance; therefore, they are not, as such, subject to an implied duty of good faith and fair dealing[,]'" the court dismissed the bad faith claim against the non-insurer.  2009 WL 330211, at *3 (citing *Gruenberg*, 510 P.2d at 1039).  The court, however, did not have the benefit of the Hawaii Supreme Court's reasoning in *Willis* for extending a bad faith claim beyond the confines of the contract, a concept which is not recognized under California law.  Monarch also relies on *Gruenberg*.  Br. at 15-16.  But *Willis*, not *Gruenberg*, is binding legal authority on whether contractual privity is required to establish a bad faith tort claim under Hawaii law.

---

him personally liable is without precedent and legally unsupportable.'"  Br. at 17 (purportedly quoting *Moore*, 736 P.2d at 76) (bracketed text in Monarch brief). What the ICA actually stated is: "Bisho was merely ***an employee*** of Allstate, and Moore's attempt to hold him personally liable is without precedent and legally insupportable."  *Moore*, 736 P.2d at 77.  In other words, the ICA simply held than an individual insurance salesman could not be held personally liable for his negligent actions on behalf of his company, an unremarkable proposition that is entirely irrelevant here.

In the only post-*Willis* Hawaii case Monarch cites, *Casados v. Drury*, No. 13-cv-00283-LEK-RLP, 2014 WL 2968221 (D. Haw. June 30, 2014), the plaintiff did not contest the defendant insurance company's argument that "Hawai'i law does not permit a bad faith claim against claim examiners." *Id.*, at *3. In the absence of a contested issue, the district court agreed with the defendant, citing the pre-*Willis* authority proffered by the defendant. *Id.* *Casados* did not mention *Willis*. The *Casados* case also is procedurally inapposite as it was decided at summary judgment. Similarly, *Thomas Fatato Realty Corp. v. Certain Underwriters at Lloyd's London*, No. 504419/12, 2017 WL 3386262, at *4 (N.Y. Sup. Ct. Aug. 07, 2017), is not persuasive as summary judgment was granted because the plaintiff failed to respond to coverholder's arguments relating to the scope of its authority.

In short, Monarch's attempt to restrict the bases upon which insureds may bring bad faith claims is unsupported by controlling case law and is not consistent with "'the decidedly pro-insured principles set forth in Hawai'i case law.'" *Aloha Petroleum*, 2014 WL 3359933, at *6. The Court should deny Monarch's Motion as to this claim.

## IV.   Plaintiffs State an Unjust Enrichment Claim Against Monarch

Unjust enrichment is an equitable remedy, and thus, by its very nature, is a flexible doctrine. *See Small v. Badenhop*, 701 P.2d 647, 654 (Haw. 1985). Plaintiffs allege they conferred an unjust benefit on Defendants that inured to the benefit of

Monarch as kickbacks in the form of commissions that were based on a percentage of the insurance premiums Plaintiffs would not have paid, but for Monarch's role in the unfair and deceptive practices alleged here. ¶¶6, 59, 68, 125-28. Monarch argues the unjust enrichment claim should be dismissed, however, because "Plaintiffs did not ***directly*** confer any payment to the benefit of Monarch." Br. at 20. This argument impermissibly limits the flexible nature of an unjust enrichment claim. Courts routinely sustain unjust enrichment claims in cases where money passes from the plaintiff through the hands of multiple parties to a transaction that include the defendant, as has occurred here. *See*, *e.g.*, *Gustafson v. BAC Home Loans Serv., LP*, No. 11-cv-00915-JST-ANx, 2012 WL 7071488, at \*12 (C.D. Cal. Dec. 26, 2012) (finding plaintiff stated claim for unjust enrichment against bank that received a commission from insurer in the arrangement of forced-place insurance) (California and Illinois law); *Gorsuch v. Fin. Freedom*, No. 14-cv-00152, 2014 WL 4675453, at \*4 (N.D. Ohio Sept. 18, 2014) (same); *Williams v. Wells Fargo Bank N.A.*, No. 11-cv-21233, 2011 WL 4368980, at \*8-10 (S.D. Fla. Sept. 19, 2011) (same); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827-SI, 2011 WL 4501223, at \*8 (N.D. Cal. 2011) (upholding unjust enrichment claim where under plaintiffs' theory, the court found "there are no intervening events that disrupt the flow of money from plaintiffs to defendants") (Hawaii law).

Monarch is no stranger to the insurance transactions at issue. Monarch underwrote, issued, and signed the Underwriters' surplus lines insurance policies issued to Plaintiffs. ECF No. 30-3 at 1-2, 43; ECF No. 30-4 at 1-2, 43. It also is the entity that policyholders are to contact with inquiries and claims. ECF No. 30-3 at 1-2, 15; ECF No. 30-4 at 1-2, 15. Plaintiffs also plead that Monarch is a coverholder and agent of Underwriters. ¶¶29, 33(B), 34. Plaintiffs further allege the direct relationship and direct nature of the payments to Monarch. ¶¶6, 59 ("The Broker Defendants' commissions were directly tied to the amount of premium steered to Lloyd's, thereby incentivizing the Broker Defendants to maximize the amount of surplus lines insurance placed with Lloyd's."). Based on these representations on the face of the policies and Plaintiffs' allegations (which must be taken as true at this stage), it stands to reason that Plaintiffs' premium payments inured to the benefit of Monarch.[8] This relationship is significantly less attenuated than the one in *Lumford*

---

[8]    Various sources, including Lloyd's website, indicate that coverholders' responsibilities include collecting and reporting premiums. *See Premium & Claims Handling*, LLOYD'S (2019), https://www.lloyds.com/market-resources/delegated-authorities/compliance-and-operations/premium-and-claims-handling; a percentage of premium paid and alleging that "[b]rokers and coverholders earn commissions by achieving volume and/or profit targets, and for placing insurance pursuant to lineslips and binding authorities as described above"); *In re Alexander Seawright Transp., LLC*, No. 19-cv-00217-NPO, 2019 WL 1282951, at *3 (Bankr. S.D. Miss. Mar. 18, 2019) (finding as a fact that coverholders for Lloyd's have the authority to collect premiums from insureds).

*v. Yoshio Ota*, 434 P.3d 1215, 1222 (Haw. Ct. App. 2018), and alleges much more than simple "ill-treat[ment]" at the hands of a third party.[9]

Although Plaintiffs plead that Monarch received commissions "from" Underwriters, Monarch construes the allegation too narrowly. Only Defendants know the exact money flow. Plaintiffs paid one lump sum as a premium. Whether Monarch received the premium and deducted its commission before passing the remainder to Underwriters, or Underwriters received the full payment directly or through Monarch and then remitted kickbacks to Monarch, is irrelevant. *See Williams*, 2011 WL 4368980, at *9 (rejecting direct benefit argument where the benefit did not pass directly from plaintiffs to defendants, but instead passed through a third party). "Indeed to hold otherwise would be to undermine the equitable purpose of unjust enrichment claims." *Id.* Monarch is not merely "an incidental beneficiary of a third-party transaction from whom no restitution can be sought." *In re Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*, No. 09-cv-02076-RSL, 2010 WL 2640243, at *7 (W.D. Wash. June 25, 2010) (plaintiff stated claim for unjust enrichment against defendant who received a fee from the ultimate recipient of the fraudulently induced funds). Instead, there is a direct relationship between

---

[9]      There, the plaintiff had no knowledge of the third party, no interactions with it, and no agreement with it; the third party paid money directly to the defendant and money never came out of the plaintiff's pocket. *Id.* In other words, the third party was a true stranger to the relationship between the plaintiff and defendant.

the loss to Plaintiffs and the gain to Monarch.  *See TFT-LCD (Flat Panel)*,  2011 WL 4501223, at *8 (upholding unjust enrichment claims under the laws of many states (including Hawaii) after finding that there was "a direct relationship between the plaintiffs' expenses and the defendants' benefit" and "no intervening events that disrupt the flow of money from plaintiffs to defendants."); *Elder v. Pac. Bell Tel. Co.*, 205 Cal. App. 4th 841, 857 (2012) (finding telephone subscriber stated claim for unjust enrichment against telephone service billing aggregator and intermediary).

Even if the Court determines Plaintiffs indirectly conferred a benefit to Monarch such that Plaintiffs "must establish, either a clear legal entitlement to the benefit or an entitlement under equity jurisprudence[,]" *see Lumford*, 434 P.3d at 1223, Plaintiffs clear this hurdle.  Plaintiffs paid a unitary amount as a premium that Monarch, the other Broker Defendants, and Underwriters divided among themselves.  There is no other person or entity who would have a superior legal or equitable right to the disputed funds, and Monarch does not point to any.  Moreover, the "resolution of [who has the superior right] should not be decided on a motion to dismiss . . ., but, rather, should be left to a fact finder's determination of equity under the totality of the circumstances."  *Scott v. Scott*, 428 P.3d 626, 638 (Colo. Ct. App. 2018), *cert. denied*, No. 18SC243, 2018 WL 5052214 (Colo. Oct. 15, 2018).  In sum, the Court should deny Monarch's Motion as to this claim.

## V.    Plaintiffs State a Negligence Claim Against Monarch

"In Hawai'i, . . . '[a]n insurance agent owes a duty to the insured to exercise reasonable care, skill and diligence in carrying out the agent's duties in procuring insurance.'"  *Certain Underwriters at Lloyd's London Subscribing to Policy No. LL001HI0300520 v. Vreeken*, 329 P.3d 354 (Haw. Ct. App. 2014) (citing *Quality Furniture, Inc. v. Hay*, 595 P.2d 1066, 1068 (Haw. 1979)); *see also James River Ins. Co. v. DCMI, Inc.*, No. 11-cv-06345-WHA, 2012 WL 2873763, at *6 (N.D. Cal. July 12, 2012) (concluding an insured can state a negligence claim against an insurance broker "for breaching the duty to use reasonable care, diligence, and judgment in procuring the insurance requested by the insured").  "Such a duty is owed to 'the extent of the responsibilities that the agent had in rendering help and providing advice to the insured.'"  *Vreekin*, 329 P.3d at *3.  Specific duties brokers owe to the insured are defined in the Hawaii Insurance Code.  *See*, *e.g.*, HRS §431:1-102 (duty of good faith); §431:8-301 (duty to perform diligent search for insurance in the admitted insurer market before placing insured in surplus lines insurance). Monarch's only argument against this claim is that it "was not acting for the Plaintiffs and was never Plaintiffs' agent."  Br. at 24-25.  This argument contradicts Plaintiffs' allegations and must be rejected.

Monarch is a licensed surplus lines broker in Hawaii and owed a duty to Plaintiffs and the Class to conduct a diligent search to place them with insurance that

accurately reflected the premiums necessary to cover Plaintiffs' homes.  ¶¶3-4, 32-33, 57, 66, 68, 93; *see Fick v. Unum Life Ins. Co. of Am.*, No. 12-cv-01851-MCE-CKD, 2012 WL 5214346, at *8 (E.D. Cal. Oct. 22, 2012) (finding that "Insurance Broker Defendants voluntarily assumed the responsibility of finding a suitable [insurance] policy that would meet the needs of the [client] and thus had a duty 'to discharge that responsibility competently'").  Monarch failed to perform its duty.  ¶¶4-5, 57-58, 76.  Instead, it engaged in an unfair and deceptive scheme to steer Plaintiffs and the Class to surplus lines insurance in exchange for kickbacks.  ¶¶29, 59, 68, 119, 127, 133.  As a result, Plaintiffs and the Class purchased surplus lines insurance policies that amounted to no insurance at all due to numerous exclusions.  ¶¶2, 8-9, 60-61, 66, 75; *see Fick*, 2012 WL 5214346, at *8 ("It was reasonably foreseeable that Insurance Broker Defendants' negligence in choosing an insurance provider for the City would lead to Plaintiff's injury.").  Plaintiffs and the Class suffered damages when they paid monies to Monarch for their insurance policies that were essentially worthless.  ¶¶15-16, 76.  Accordingly, Plaintiffs' allegations are sufficient to state a negligence claim and Monarch's factual contradiction of Plaintiffs' allegations must be rejected.

## VI.   Plaintiffs State a Breach of Fiduciary Duty Claim Against Monarch

To state a claim for breach of fiduciary duty, a plaintiff must show that a fiduciary relationship existed between the parties, the defendant breached a fiduciary

duty to the plaintiff, and the breach proximately caused injury to the plaintiff. *See*

*Cochrane v. Azman,* No. 29562, 2011 WL 661714, at *5 (Haw. Ct. App. Feb. 22,

2011).   A fiduciary relationship exists when there is a relationship of trust and

confidence. *See Meheula v. Hausten*, 29 Haw. 304, 314 (Terr. 1926).   Numerous

courts, including this one, have found at the motion to dismiss stage that a broker

owes a fiduciary duty to an insured. *See*, *e.g.*, *Am. Auto. Ins. Co. v. Haw. Nut &

Bolt, Inc.*, No. 15-cv-00245-ACK-KJM, 2016 WL 10611393, at *6 (D. Haw. May

13, 2016) (finding leave to amend would not be futile for counterclaim plaintiff

insured to bring fiduciary duty claim against broker counterclaim defendant); *Lake

v. Rutherfoord Int'l, Inc.,* No. 14-cv-02431-H-NLS, 2014 WL 12526276, at *4-5

(S.D. Cal. Nov. 25, 2014) (declining to dismiss breach of fiduciary duty claims

against broker at the pleading stage); *Advanced Salon Visions Inc. v. Lincoln Benefit

Life Co.*, No. 08-cv-02346-LAB-WMC, 2010 WL 3341803, at *15 (S.D. Cal. Aug.

25, 2010) (noting fiduciary duties may be owed where broker is an agent of the

insured); *Cole v. Asurion Corp.*, No. 06-cv-06649-PSG-JTLx, 2008 WL 5423859,

at *8 (C.D. Cal. Dec. 30, 2008) (finding brokers owed a fiduciary duty where

plaintiffs alleged a special relationship with the broker).[10]   However, "[w]hether an

agency relationship that might incur fiduciary duties was ultimately created [] is a

---

[10]     The Hawaii Supreme Court often looks to California law on insurance
matters. *See Allstate Ins. Co. v. Kim*, 121 F. Supp. 2d 1301, 1307 n.3 (D. Haw.
2000).

question of fact better resolved at the summary judgment stage." *Starr Indem. & Liab. Co. v. JT2, Inc.*, No. 17-cv-00213-DAD-BAM, 2018 WL 1142207, at *5 (E.D. Cal. Mar. 2, 2018).

As a licensed surplus lines broker, Monarch had a relationship of trust and confidence with its customers in Hawaii, including Plaintiffs and the Class.  ¶32-33, 131-32.  By statute, surplus lines brokers are required to conduct a diligent search prior to placing surplus lines insurance to determine whether non-surplus lines insurance may be obtained.  HRS §431:8-301(a); ¶¶3-5, 44-46, 56-57.  As alleged, Monarch was involved in procuring the Lane and Aquilina Plaintiffs' surplus lines policies—which created a fiduciary relationship between Plaintiffs and Monarch. ¶¶15-16; *see Cole*, 2008 WL 5423859, at *8.  Monarch breached this fiduciary duty when it failed to comply with §431:8-301, disregarded Plaintiffs' interests in obtaining comprehensive homeowner's insurance, and steered Plaintiffs to purchase surplus lines insurance from Underwriters.  ¶¶47, 58, 67-68, 76.  By putting its own monetary gain in the form of kickbacks above its fiduciary responsibility to Plaintiffs, Monarch breached its fiduciary duty.

Monarch argues that it owes no fiduciary duty to Plaintiffs.  Br. at 22 (citing *Hough v. Pac. Ins. Co., Ltd.*, 927 P.2d 858, 870 (Haw. 1996)).  In *Hough*, the Supreme Court of Hawaii stated that "[i]n *Best Place*, we recognized that no fiduciary relationship existed between an insurer and an insured in a first-party

context." *Hough*, 927 P.2d at 870.   *Best Place* did not come to this conclusion. Instead, the portion of *Best Place* that *Hough* cites to discusses "[a] common argument used by courts that do not recognize first-party bad faith[,]" quoting a decision by a Kansas state court.  *Best Place*, 920 P.2d at 343 (citing *Spencer v. Aetna Life & Cas. Ins. Co.*, 611 P.2d 149, 155 (Kan. 1980)).  The *Best Place* court goes on to disregard the rationale used by those courts as "unpersuasive" and finds that "the fiduciary duty on the part of the insurer in the third-party context, albeit significant, is but one component of a broader duty to act in good faith and deal fairly with its insureds so as not to deprive the insured of the very benefits for which he or she has contracted."  *Best Place*, 920 P.2d at 343; *see also Vreekin*, 329 P.3d at \*3 (recognizing the duties of "'reasonable care, skill and diligence'" an agent owes to an insured established "'in carrying out the agent's duties in procuring insurance'").

Monarch's other cited case law is also inapplicable to the facts pleaded in the Complaint.  For example, in *Henry v. Associated Indem. Corp.*, 217 Cal. App. 3d 1405, 1418 (1990), the plaintiff brought his claim under a third-party beneficiary contract theory, not a first-party theory that Plaintiffs allege here against Monarch, as the party that issued the surplus lines insurance contract directly to Plaintiffs. Likewise, in *Thompson v. Cannon*, the court analyzed the duty owed to an insured by an independent adjuster, hired by an insurance company, that came into contact with the plaintiff after the insurance contract was entered into.  224 Cal. App. 3d

1413, 1418 (Ct. App. 1990). *Cannon* recognizes that cases in California have held that the relationship between the ***insurer*** and ***insured*** is unsettled, with some courts holding "the relationship is 'akin to' a fiduciary relationship" and others finding it is "'characterized by ... fiduciary responsibility.'" *Id.* (ellipsis in original). Further, *Cannon* stated that "it seems clear that any fiduciary duty existing between an insurer and its insured is governed by the terms of the insurance contract in effect between them[.]" *Id.* In sum, the Court should deny Monarch's Motion as to this claim.

## VII. Plaintiffs Are Entitled to Equitable Relief

To warrant the issuance of a declaratory judgment, there must be "'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Plaintiffs allege there is a continuing controversy between the parties relating to "Defendants' duties to act reasonably with respect to issuing homeowner's insurance policies to homeowners in Hawaii." ¶152. Plaintiffs further allege that Defendants, including Monarch, continue to act in a manner that is "inadequate and unreasonable" such that Defendants' scheme to steer Plaintiffs and the Class to essentially worthless insurance is ongoing. ¶¶76, 87, 152-53. Viewing the allegations in the light most favorable to Plaintiffs, there is a real, immediate, and substantial risk of future harm each time Plaintiffs and the Class pay premiums and have their insurance policies renewed. Thus, Plaintiffs seek a declaration that

Monarch's practices remain improper, which would serve to govern the ongoing interactions between the parties.  ¶¶11, 153-54; Prayer for Relief, ¶L.  Specifically, with the requested declaration, Class members can take measures to avoid continuing to pay for essentially worthless insurance.  Such allegations are sufficient at the pleading stage.  *See*, *e.g.*, *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1221 (N.D. Cal. 2014).

Monarch argues, however, that the requested equitable relief is duplicative of relief sought under other claims.  Br. at 25-26.  To reach this conclusion, Monarch mischaracterizes the nature of the declaratory relief sought as being retrospective.  Br. at 26 (claiming Plaintiffs seek "a determination that Defendants ***breached*** 'their required duties and due diligence'").  This is patently inaccurate.  As Monarch itself quotes in its brief, the Complaint alleges "'(ii) Broker Defendants ***continue*** to breach [their] legal duty by failing to perform their required duties and due diligence; and (iii) Broker Defendants' ***ongoing*** breach of this legal duty ***continues*** to cause harm.'"  Br. at 25 (quoting ¶153).  It is Monarch's continuing (not past) misconduct that underpins the request for declaratory relief.  This distinguishes *F.K. ex rel. A.K. v. Dep't of Educ.*, No. 12-cv-00136-ACK-RLP, 2012 WL 5438989, at *4 (D. Haw. Nov. 7, 2012), on which Monarch relies (Br. at 25-26), where the Court found the plaintiffs' requested declaratory relief was based only on allegations regarding the defendants' past wrongs.

"The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. Ultimately, a fundamental question is whether the declaratory relief "'will serve a useful purpose in clarifying and settling the legal relations in issue[.]'" *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966). While Plaintiffs' other claims seek retrospective relief—namely, damages—for the past harm Plaintiffs and the Class suffered, this claim seeks a determination about Plaintiffs' and the Class's rights under Hawaii law, which would govern future interactions between these parties. *See Servco Pac., Inc. v. SkyBridge Glob., Inc.*, No. 16-cv-00266-DKW-KSC, 2016 WL 6996987, at *10 (D. Haw. Nov. 29, 2016); *T.K. v. Adobe Sys. Inc.*, No. 17-cv-04595-LHK, 2018 WL 1812200, at *13 (N.D. Cal. Apr. 17, 2018). Monarch argues, however, that the requested relief is "vague and unspecific," and thus, will not "settle the legal relations at issue." Br. at 27. But this is not the case. *See Guccione v. JPMorgan Chase Bank, N.A.*, No. 14-cv-04587-LB, 2015 WL 1968114, at *21-22 (N.D. Cal. May 1, 2015) (finding allegations sufficient despite that plaintiffs "d[id] not state exactly what they want the court to declare"). With the requested declaration, Class members can take measures to avoid continuing to pay premiums for essentially worthless insurance, such as by canceling or renegotiating their insurance contracts. *See*, *e.g.*, HRS §431:8-203 ("A contract of insurance effectuated by an unauthorized insurer in violation of [Article 8] shall

36

be voidable."). Thus, the requested declaratory relief serves a distinct purpose and Monarch's Motion should be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Monarch's Motion.

Dated:  August 6, 2019  **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 */s/ Joseph P. Guglielmo*
Joseph P. Guglielmo (*pro hac vice*)
Erin Green Comite (*pro hac vice*)
Michelle E. Conston (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com
mconston@scott-scott.com

JEFFREY E. FOSTER #9857
**FOSTER LAW OFFICES, LLC**
PO Box 127
Captain Cook, HI 96704
Telephone: (808) 348-7800
Facsimile:  (808) 443-0277

E. Kirk Wood (*pro hac vice*)
**WOOD LAW FIRM, LLC**
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone: (205) 908-4906
Facsimile:  (866) 747-3905
ekirkwood1@bellsouth.net

*Counsel for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies that the foregoing uses a proportionally spaced Times New Roman typeface, 14-point, and that the text of the brief comprises 8,781 words (excluding the parts of the brief exempted by LR7.5(d)) according to the word count provided by Microsoft Word 2016 word processing software.

Dated:  August 6, 2019

　　　　　　　　　　　　　　　　　　 */s/ Joseph P. Guglielmo*　　　　

　　　　　　　　　　　　　　　　　Joseph P. Guglielmo (*pro hac vice*)

## **CERTIFICATION OF SERVICE**

I hereby certify that on August 6, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

　　　　　　　　　　　　　　　　　　 */s/ Joseph P. Guglielmo*　　　　

　　　　　　　　　　　　　　　　　Joseph P. Guglielmo (*pro hac vice*)