IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI'I

_____

| | |
|---|---|
| STEPHEN G. AQUILINA and LUCINA, J. AQUILINA, Individually and on Behalf of all Others Similarly Situated; AUDRA M. LANE and SCOTT L. LANE, Individually and as Trustees of the Lane Family Trust, dated March 28, 1998, and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. No. 18-00496-ACK-KJM ) |
| CERTAIN UNDERWRITERS AT LLOYD'S SYNDICATE #2003; LLOYD'S SYNDICATE #318; LLOYD'S SYNDICATE #4020; LLOYD'S SYNDICATE #2121; LLOYD'S SYNDICATE #2007; LLOYD'S SYNDICATE #1183; LLOYD'S SYNDICATE #1729; BORISOFF INSURANCE SERVICES, INC. d/b/a MONARCH E&S INSURANCE SERVICES; SPECIALTY PROGRAM GROUP, LLC d/b/a SPG INSURANCE SOLUTIONS, LLC; PYRAMID INSURANCE CENTRE, LTD.; ILIKEA LLC d/b/a MOA INSURANCE SERVICES HAWAII; and DOES 1-100, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

_____

**ORDER GRANTING DEFENDANT ILIKEA LLC d/b/a
MOA INSURANCE SERVICES HAWAII'S MOTION TO DISMISS**

Plaintiffs are residents of the Puna District of

Hawai'i Island who purchased surplus lines homeowner's insurance

policies brokered and underwritten by the various Defendants.

In the aftermath of the May 2018 eruption of Kilauea Volcano,

Plaintiffs sustained significant damages to their properties and sought coverage for the losses under their surplus lines policies. Such coverage was denied, primarily based on an exclusion precluding coverage for lava-related damage. Plaintiffs now allege that Defendants carried out a deceptive scheme by which they unlawfully "steered" Plaintiffs and other homeowners into purchasing, through the surplus lines market, what Plaintiffs call "essentially worthless" coverage, with the goal of increasing profits and commissions and lowering payouts for covered claims.

Defendant Ilikea LLC d/b/a Moa Insurance Services Hawaii ("Moa") has moved to dismiss the Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons explained in this Order, the Court GRANTS Moa's Motion to Dismiss, ECF No. 63, insofar as it seeks dismissal of all Plaintiffs' claims against Moa.

**FACTUAL BACKGROUND**

## I.  The Policies

Plaintiffs Stephen and Lucina Aquilina, and Audra and Scott Lane, individually and as Trustees of the Lane Family Trust (collectively, "Plaintiffs"), as well as a putative class of similarly-situated consumers (the "Class"),[1] purchased

---

[1]  The Court notes that the Class has not been certified. References to the "Class" are for purposes of convenience in addressing the allegations in the Complaint.

surplus lines homeowners insurance policies (the "Policies") to insure their residential properties in Hawai'i. Compl. ¶ 1. The Policies were purchased with the assistance of two retail brokers, Defendants Pyramid Insurance Centre, Ltd. ("Pyramid") and Ilikea LLC d/b/a Moa Insurance Services Hawaii ("Moa"), and one coverholder, Defendant Borisoff Insurance Services, Inc. d/b/a Monarch E&S Insurance Services ("Monarch"), whose assets are owned by Specialty Program Group, LLC d/b/a SPG Insurance Solutions, LLC ("SPG") (collectively, "Broker Defendants").[2] The Policies were underwritten by several syndicates of Defendants Certain Underwriters at Lloyd's London, including Syndicates #2003, #318, #4020, #2121, #2007, #1183, #1729 (collectively, "Underwriters"). Compl. ¶ 1.

Pyramid and Moa are both retail brokers who placed the Policies and worked on Plaintiffs' behalf to procure homeowner's insurance. See Compl. ¶¶ 35-36. Monarch is a licensed surplus lines broker, and coverholder to and authorized agent of Underwriters. See Compl. ¶¶ 29, 32-34. As the coverholder, Monarch is listed on the Policies as the point of contact for handling claim-related communications with Plaintiffs.

_____

[2] As will be discussed herein, the Complaint improperly groups the various Defendants together, often referring to them as "Defendants" or "Broker Defendants." The Court does its best to distinguish the allegations with respect to each individual party while still accurately describing the allegations as framed in the Complaint.

Compl. ¶¶ 29-34; <u>see also</u> ECF Nos. 30-3 & 30-4.[3/]  The Complaint also alleges that Monarch acted with the assistance of "its authorized agents, including Moa and Pyramid."  Compl. ¶ 29.

## II.  The Surplus Lines Insurance Market

Surplus lines insurance is available as a last resort when the traditional insurance market is "unable or unwilling to provide coverage due to risky characteristics."  Compl. ¶ 39, 46-47.  The surplus lines market exists to provide coverage for high-risk loss exposures when "admitted insurers in the standard market do not have the flexibility" to underwrite such risks.  Compl. ¶ 40.  Surplus lines insurance is provided by non-admitted insurers who are not licensed to operate in Hawai'i and who are not required to obtain approval for their rates, forms, and underwriting rules.  Compl. ¶ 41.  "[S]urplus lines insurers often fill the gap to provide insurance coverage for high-risk perils, but are only permitted to do so under specified circumstances."  Compl. ¶ 41.

The Hawai'i Insurance Code provides that surplus lines insurance may only be placed through a "licensed surplus lines broker."  Compl. ¶ 44 (citing Haw. Rev. Stat. § 431:8-301(a)).  The same provision requires that, "[b]efore placing a surplus

---

[3/]  Before 2017, the Policies listed "Monarch E & S Insurance Services" as the point of contact.  Compl. ¶ 31.  After SPG acquired Monarch in 2017, the Policies listed "Monarch E & S Insurance Services, Division of SPG Insurance Solutions."  Compl. ¶ 31; <u>see also</u> ECF Nos. 30-3 & 30-4.

lines policy, . . . a surplus lines broker must perform a
diligent search of the insurance market" to determine whether
the insurance can be obtained from authorized insurers; whether
the insurance is in addition to or in excess of the amount and
coverage that can be procured from authorized insurers; and
whether the insurance is procured at a rate "lower than the
lowest rate that is generally acceptable to authorized insurers
transacting that kind of business and providing insurance
affording substantially the same protection."  Compl. ¶ 45
(quoting Haw. Rev. Stat. § 431:8-301(a)(2)-(4)).

**III. The Steering Scheme**

The Complaint alleges a "steering scheme" through
which Defendants allegedly sold surplus lines policies to
Plaintiffs and the Class without complying with certain
obligations under Hawaiʻi law.  Compl. ¶ 47.  As a result, in
the devastating aftermath of the Kilauea Volcano eruption,
Plaintiffs were denied coverage under their Policies for
significant losses to their homes and properties.  Compl. ¶¶ 7-
8, 71-74.

The Complaint alleges that Defendants unlawfully
placed surplus lines insurance instead of more comprehensive
coverage, such as that available through the Hawaiʻi Property

Insurance Association ("HPIA").[4/]   Compl. ¶¶ 48-52.  According to

the Complaint, Plaintiffs' and the Class's properties qualified

for HPIA insurance, but Defendants were incentivized not to

place HPIA policies because Underwriters' policies were "more

lucrative."  Compl. ¶¶ 48-56, 62-66.

Defendants allegedly misrepresented to Plaintiffs that

the Policies were the only available insurance without having

performed the due diligence required under Hawai'i law to place

surplus lines insurance.  Compl. ¶ 3.  According to Plaintiffs,

Defendants "improperly steered" them into purchasing the

Policies, which contain several exclusions that render coverage

"essentially worthless."  Compl. ¶¶ 1-4.  Plaintiffs highlight

one exclusion in particular, which precludes coverage for "the

peril of lava and/or lava flow causing direct or indirect

physical damage or loss of use of the insured property" (the

"Lava Exclusion").  Compl. ¶ 1.

Plaintiffs allege that, since 2012, Broker Defendants

and Underwriters "steered" Plaintiffs and the Class to purchase

Lloyd's Policies.  Among other things, Defendants artificially

---

[4/]  HPIA coverage is "available to persons who are unable to obtain
basic property insurance in the private market from a licensed insurer."
Compl. ¶ 50 (citing HRS § 431:21-110).  The Hawai'i Legislature, in creating
HPIA, explained the policy underlying the program:  "The purpose of this Act
is to create an entity which will provide appropriately priced basic property
insurance for owners and occupants of property in high risk areas for major
natural disasters.  This extraordinary action is being taken to provide
limited relief to meet the unique and pressing needs of these persons who are
currently unable to obtain any property insurance."  1991 Haw. Sess. Laws Act
284 § 2.

inflated the insurance coverage amounts—such as the home value
or the personal liability coverage—beyond the HPIA coverage
limits so that they could place Plaintiffs and the Class with
Lloyd's surplus lines insurance policies." Compl. ¶¶ 4.
Defendants allegedly "knew that they were not allowed to place
Plaintiffs and the Class with surplus lines insurance unless the
insurance coverage amounts exceeded the coverage available
through traditional insurance carriers. Compl. ¶ 5. According
to Plaintiffs, the state's own HPIA insurance program could have
provided them with more comprehensive coverage, yet Broker
Defendants placed them with and Underwriters sold them surplus
lines policies anyway. Compl. ¶¶ 5, 56-57.

This scheme is repeated in similar form throughout the
Complaint to allege wrongdoing by Defendants in procuring the
Policies for Plaintiffs and the Class. Compl. ¶¶ 58, 61, 66-69.
The Complaint asserts that Defendants represented to Plaintiffs
and the Class that they could only purchase insurance through
the surplus lines market, thereby steering them into purchasing
the Policies subscribed by Underwriters. Compl. ¶¶ 58, 67-69.
The scheme in turn enabled Underwriters to increase their
revenues and profits and Broker Defendants to collect
"kickbacks" from Underwriters in the form of increased
commissions. Compl. ¶¶ 6, 59, 69. Plaintiffs allege that the
commissions were "directly tied to the amount of premium steered

to [Underwriters]" to incentivize Broker Defendants to "maximize the amount of surplus lines insurance placed with [Underwriters]." Compl. ¶ 59; see also Compl. ¶ 6.

As a result of the scheme, Plaintiffs were provided less comprehensive coverage because of "numerous exclusions inevitably associated with [Underwriters'] surplus lines homeowner's insurance"—in particular, the Lava Exclusion. Compl. ¶ 60. The Complaint alleges that, for a home located in a particularly risky Lava Zone, a homeowner's policy excluding lava coverage "amount[s] to no coverage at all." Compl. ¶ 1.

The Complaint frames the scheme this way:

> In furtherance of their undisclosed scheme to drive profits and commissions and lower payouts for claims, Defendants improperly steered Plaintiffs and the Class into Lloyd's surplus lines homeowner's insurance policies by: (a) failing to perform various duties and due diligence, including the duties and due diligence required under HRS §431:8-301(a); (b) omitting that non-surplus lines insurance was available; and/or (c) artificially inflating the amount of coverage beyond the coverage limits provided under non-surplus lines insurance, specifically through the government-established Hawaii Property Insurance Association ("HPIA").

Compl. ¶ 4; see also Compl. ¶¶ 93, 104, 119, 127, 138, 143.

Plaintiffs assert that, in the absence of the scheme, they would have insured their homes with more comprehensive insurance and would have had such coverage in the aftermath of the Kilauea eruption. Compl. ¶¶ 70-74. Now, because of the

Lava and other exclusions associated with the Policies,
Plaintiffs and the Class have received essentially worthless
insurance coverage, enabling Underwriters to deny coverage under
the Policies for resulting damages.  Compl. ¶¶ 75-76.

**PROCEDURAL BACKGROUND**

The named Plaintiffs, proceeding individually and on
behalf of the Putative Class, filed their Complaint on December
21, 2018.  See Compl. ECF No. 1.  Therein, Plaintiffs assert
seven causes of action:

1. *Count I*.  Violation of the Unfair and Deceptive Acts or
   Trade Practices Act ("UDAP"), Hawai'i Revised Statutes
   ("HRS") §§ 480-1 et seq., against all Defendants.
   Compl. ¶¶ 88-101.

2. *Count II*.  Violation of the Uniform Deceptive Trade
   Practices Act ("UDTPA") (together with Count I, the "UDAP
   Claims"), HRS §§ 481A-1 et seq., against all Defendants.
   Compl. ¶¶ 102-06.

3. *Count III*.  Breach of the implied covenant of good faith
   and fair dealing ("bad faith") against Defendants
   Underwriters, Monarch, and SPG.  Compl. ¶¶ 107-20.

4. *Count IV*.  Unjust enrichment against all Defendants.
   Compl. ¶¶ 121-28.

5. *Count V*.  Breach of fiduciary duties against Broker
   Defendants.  Compl. ¶¶ 129-139.

6. *Count VI.*  Negligence against Broker Defendants.

   Compl. ¶¶ 140-49.

7. *Count VII.*  Declaratory judgment against all Defendants.

   Compl. ¶¶ 150-54.

On April 22, 2019, Moa filed a Motion to Dismiss.  ECF No. 63.  The Parties completed briefing on the Motion on August 27.  ECF Nos. 87 (Opposition Brief) & 96 (Reply Brief).  The Court heard oral arguments on the Motion on September 10, 2019.

**STANDARDS**

**I.  Rule 12(b)**

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

In resolving a Rule 12(b)(6) motion, the Court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff.  Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012).

The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Mere conclusory statements in a complaint or "formulaic recitation[s] of the elements of a cause of action" are not sufficient. Twombly, 550 U.S. at 555. Thus, the Court discounts conclusory statements, which are not entitled to a presumption of truth, before determining whether a claim is plausible. Iqbal, 556 U.S. at 678. However, "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." Harris v. Cty. of Orange, 682 F.3d 1126, 1131 (9th Cir. 2012) (citation omitted).

## II. Rule 9(b)

Where a party alleges fraud or mistake, the Rules require a heightened pleading standard. In particular, Rule 9(b) requires that, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Ninth Circuit has held that "[t]o satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" Cafasso, U.S. ex

rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th
Cir. 2011) (alteration in original) (quoting Ebeid ex rel.
United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir.
2010)); see also Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir.
2007) ("To comply with Rule 9(b), allegations of fraud must be
specific enough to give defendants notice of the particular
misconduct which is alleged to constitute the fraud charged so
that they can defend against the charge and not just deny that
they have done anything wrong." (quoting Bly-Magee v.
California, 236 F.3d 1014, 1019 (9th Cir. 2001))).

A motion to dismiss a claim grounded in fraud for
failure to plead with particularly under Rule 9(b) is the
functional equivalent of a motion to dismiss under Rule
12(b)(6). See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107
(9th Cir. 2003). "As with Rule 12(b)(6) dismissals, dismissals
for failure to comply with Rule 9(b) should ordinarily be
without prejudice. Leave to amend should be granted if it
appears at all possible that the plaintiff can correct the
defect." Id.

## DISCUSSION

Moa argues for dismissal on several grounds. The
Court will address each of these arguments in turn. First,
however, the Court holds that the Complaint as a whole is
subject to Rule 9(b). Because the allegations in the Complaint

fall short of meeting the heightened "particularity" standard, and because several causes of action are independently deficient, the Complaint is dismissed against Moa, with leave to amend.

## I. Rule 9(b) Heightened Pleading Standard

Although Moa does not initially argue for dismissal under Rule 9(b),[5/] the Court concludes that the heightened standard applies because the same fraudulent conduct underlies all the claims.  And because the pleading does not satisfy Rule 9(b)'s particularity requirement, the Complaint must be dismissed.

### a. Rule 9(b) Applies to the Complaint as a Whole Because the Allegations are Grounded in a Unified Course of Fraudulent Conduct

Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  When an "entire claim within a complaint[] is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim."  Vess, 317 F.3d at 1107.  Under established Ninth Circuit law, fraud need not be an essential element of a claim

---

[5/]  In the Reply Brief—after not raising it in the Motion to Dismiss—Moa argues that Rule 9(b) applies to the entire Complaint.  Reply Br. 3-6.  It purports to respond to Plaintiffs' concession in their Opposition that Rule 9(b) applies to certain claims.  Id. at 3.

to subject it to the heightened pleading standard of Rule 9(b):

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a <u>unified course of fraudulent conduct</u> and <u>rely entirely on that course of conduct as the basis of a claim</u>. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).

<u>Id.</u> at 1103-04 (emphasis added).

Here, Plaintiffs' claims are based on a single deceptive and fraudulent "scheme" to "steer" Plaintiffs into purchasing illusory surplus lines insurance that they otherwise would not have purchased. The primary allegations are as follows:

- Underwriters had a relationship with Broker Defendants;

- Broker Defendants engaged in a kickback scheme whereby they "wrongly steered" Plaintiffs into purchasing the Policies subscribed to by Underwriters;

- Broker Defendants received "unwarranted commissions" from Underwriters;

- Broker Defendants failed to perform duties and due diligence required under Section 301 of the Surplus Lines Act, HRS § 431:8-301 ("Section 301"), including by omitting that non-surplus lines insurance was available;

- Broker Defendants artificially inflated the amount of coverage beyond the limits provided under non-surplus lines insurance;

- Broker Defendants and Underwriters engaged in conduct of "misrepresenting, concealing, steering, or otherwise omitting" information to mislead Plaintiffs and the Class.

Compl. ¶¶ 82, 93, 104. Plaintiffs describe Defendants' conduct as an "integrated, misleading practice to homeowners in Hawaii that includes uniform misrepresentations that misled Plaintiffs and the other members of the Class." Compl. ¶ 82.

These allegations, which underly all seven claims against Moa, are based on "a unified course of fraudulent conduct." See Vess, 317 F.3d at 1103-04. Plaintiffs repeat the same allegations of the "scheme" throughout the Complaint and emphasize that they were "steered" into purchasing illusory Policies. The allegations are grounded in the same fraudulent conduct, and the Court must then review all the allegations under Rule 9(b)'s more stringent standard.

That each individual cause of action against Moa does not require fraud as an element cannot save those claims from the strict pleading requirements of Rule 9(b). See Vess, 317 F.3d at 1103-04. First, for example, bad faith and unjust

enrichment do not typically require a showing of fraud.[6/]  Yet

the Complaint frames the allegations as asserting one

underlying, fraudulent and "deceptive scheme."  See Compl. ¶ 119

(bad faith claim alleging "deceptive" scheme where Defendants

"artificially inflated coverage amounts" and "manipulate[ed] the

surplus lines market" to increase profits and commissions); ¶

124 (unjust enrichment claim alleging that "Defendants

deceptively marketed and sold surplus lines insurance to

Plaintiffs and the Class").  Doing so triggers Rule 9(b) with

respect to both these claims.  See Puri v. Khalsa, 674 F. App'x

679, 690 (9th Cir. 2017) (holding that where an "unjust

enrichment claim is based on fraud, it too is subject to Rule

9(b)" (citing Vess, 317 F.3d at 1103-04)); In re Arris Cable

Modem Consumer Litig., No. 17-CV-01834-LHK, 2018 WL 288085, at

*10 (N.D. Cal. Jan. 4, 2018) (applying Rule 9(b) to unjust

enrichment claim); Mostowfi v. I2 Telecom International, Inc.,

No. 03-5784 VRW, 2005 WL 8162717, at *11 (N.D. Cal. May 23,

2005) (same for breach of good faith and fair dealing claim).

        As for the UDAP Claims, allegations made under the

"unfair" prong do not ordinarily require compliance with the

---

[6/]  The Court notes that the Complaint does not appear to assert a bad
faith cause of action against Moa.  See Compl., Count III ("Against
Defendants Lloyd's, Monarch, and SPG").  However, because Moa addresses the
claim on the merits in its Motion to Dismiss, the Court includes it here to
clarify that it is indeed subject to Rule 9(b).

heightened pleading standard.[7/]  See Bald v. Wells Fargo Bank,
N.A., 688 F. App'x 472, 476 (9th Cir. 2017); Soule v. Hilton
Worldwide, Inc., 1 F. Supp. 3d 1084, 1090 (D. Haw. 2014).  But
that is only true when the claims are not grounded in fraudulent
conduct.  See Ryan v. Salisbury, 380 F. Supp. 3d 1031, 1049 (D.
Haw. 2019); Soule, 1 F. Supp. 3d at 1090.  Both the Ninth
Circuit and this Court have held that state-law UDAP claims must
be pleaded with particularity when the claims are based on
fraudulent conduct.  See Kearns v. Ford Motor Co., 567 F.3d
1120, 1122 (9th Cir. 2009) (holding that claims under
California's UDAP laws had to be pleaded with particularity);
Smallwood v. NCsoft Corp., 730 F. Supp. 2d 1213, 1232-33 (D.
Haw. 2010) (holding that claims under Hawai'i's UDAP laws were
based on "fraudulent concealment" and thus required pleading
with particularity); see also Long v. Deutsche Bank Nat'l Tr.
Co., No. 10-cv-00359 JMS/KSC, 2011 WL 2650219, at *7 (D. Haw.
July 5, 2011) ("[W]here a chapter 480 claim is based on
fraudulent acts, a plaintiff must plead with particularity.").

        Here, the only possible basis for liability under UDAP
that Plaintiffs have alleged sounds in fraud.  Plaintiffs have
pointed to no factual allegations in the Complaint—and none are

_____

        [7/]  It is well established in the Ninth Circuit that Rule 9(b)'s
particularity requirement applies to state-law causes of action.  See Vess,
317 F.3d at 1103; Smallwood v. NCsoft Corp., 730 F. Supp. 2d 1213, 1232 (D.
Haw. 2010).

evident to the Court—showing that they are alleging anything
other than an overarching deceptive scheme.  Nor have Plaintiffs
shown that the allegations of deceit can be separated from
allegations of resulting unfairness.  Thus, the allegations in
Counts I and II that Plaintiffs were "steered" or "deceived" are
the only possible basis for liability under the Hawai'i UDAP
Claims, as the Complaint is currently framed.  Cf. Long, 2011 WL
2650219 at *7 ("[A]t least part of Plaintiff's [UDAP] claim must
sound in fraud, but the actual allegations as to Defendants'
conduct are so vague that the court cannot determine what acts
Plaintiff alleges are fraudulent." (footnote omitted)).

        As to Count V, breach of fiduciary duties, the
underlying allegations also sound in fraud.  See, e.g.,
Compl. ¶¶ 133-35 (describing the "deceptive" and "fraudulent
scheme" carried out by Defendants "to collect secret
commissions, steer lucrative business to Lloyd's, charge
Plaintiffs and the Class improper and inflated premiums, and
misrepresent Plaintiffs' and the Class's insurance coverage").
Thus, to the extent that they "sound in fraud," the allegations
of Count V are also subject to the heightened Rule 9(b)
standard.  See Gibson v. Credit Suisse AG, No. 1:10 CV 001-EJL-
REB, 2012 WL 1253007, at *6 (D. Idaho Mar. 30, 2012) (holding
that plaintiff's breach of fiduciary duty claim "sounds in fraud

thereby necessitating that it satisfy Rule 9(b)'s heightened pleading standard" (citing <u>Kearns</u>, 567 F.3d at 1124)).

Finally, Count VI asserts a claim for negligence, alleging that Broker Defendants owed a duty to Plaintiffs and the Class stemming from Section 301 to perform "due diligence" to determine whether comparable non-surplus lines insurance was available. Compl. ¶ 142. Count VI asserts that Broker Defendants "failed to use ordinary care to understand the terms, conditions, and costs of the Lloyd's policy and were grossly negligent." Compl. ¶ 147. Plaintiffs again allege the same conduct and the same "deceptive scheme." Compl. ¶¶ 142-43.

Fraud is obviously not an essential element of a negligence claim. But the allegations in Count VI sound in fraud, bringing them within the scope of Rule 9(b). <u>See</u> <u>Vess</u>, 317 F.3d at 1103-04; <u>see also</u> <u>Waikiki Trader Corp. v. Rip Squeak Inc.</u>, No. 09-00344 ACK-BMK, 2010 WL 11530615, at *14 (D. Haw. Apr. 15, 2010) (striking "negligence allegations" because the negligence claim "does not allege any separate facts but rather is based on the <u>same</u> alleged misrepresentations by Plaintiff" and thus is "grounded in fraud and subject to Rule 9(b)"). While it might seem counterintuitive to apply Rule 9(b) to a claim for negligence, Ninth Circuit case law is clear that allegations of a "unified course of fraudulent conduct" may subject claims—even those that ordinarily would not require a

showing of fraud—to the heightened pleading standard.  See Vess, 317 F.3d at 1103-04.

Here, the factual allegations in Count VI rest on a single deceptive and fraudulent scheme that was intentionally and willfully carried out by Defendants.  Plaintiffs do not allege conduct or facts to distinguish negligent activities from fraudulent activities.  Cf. Smallwood, 730 F. Supp. 2d at 1234-35 (declining to dismiss negligence claims for failing to comply with Rule 9(b) because the negligence claims were "separate and distinct from Plaintiff's fraud allegations").  In fact, the Complaint describes all the conduct alleged as intentional and willful, and as serving the same purpose:  to further the deceptive and fraudulent scheme.

The few paragraphs of the Complaint that use words associated with negligence—e.g., "ordinary care" or "grossly negligent"—would not pass muster under Rule 8(a) anyway.  See Compl. ¶¶ 146-49.  These allegations are conclusory at best and supported by only "formulaic recitation[s] of the elements of [the] cause of action."  Twombly, 550 U.S. at 555.  Neither Rule 8(a) nor Rule 9(b) allows such conclusory pleading.

To summarize, Rule 9(b) applies to all seven causes of action alleged against Moa, even those claims that independently do not require a fraudulent element.[8/]

### b. Applying the Heightened Standard of Rule 9(b), the Complaint Fails to Plead Facts With Adequate Particularity

Having decided that Rule 9(b) applies to the Complaint as a whole, the Court now turns to whether the allegations against Moa comply with the heightened pleading standard. For the reasons discussed below, they do not.

### i. Rule 9(b) Legal Standard

"Rule 9(b) requires particularized allegations of the circumstances constituting fraud." In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1547–48 (9th Cir. 1994) (en banc), superseded by statute on other grounds as recognized in Ronconi v. Larkin, 253 F.3d 423, 429 n.6 (9th Cir. 2001). The pleading must provide an "account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." See Swartz, 476 F.3d at 764 (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Vess, 317 F.3d at 1106. Plaintiffs may

---

[8/]  This includes Count VII for declaratory judgment, which merely seeks declaratory relief based on the same fraudulent conduct alleged throughout the Complaint. See Compl. ¶¶ 150–54.

not simply plead neutral facts to identify the transaction, but rather must also set forth what is false or misleading about a statement, and why it is false.  See GlenFed, 42 F.3d at 1548. Moreover, group pleading is improper under Rule 9(b):

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.  In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.

Swartz, 476 F.3d at 764-65 (alterations in original) (internal citations omitted).

Rule 9(b)'s requirements may be relaxed for matters that are exclusively within the opposing party's knowledge. Rubenstein v. Neiman Marcus Grp. LLC, 687 F. App'x 564, 567 (9th Cir. 2017) (quoting Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989)).  For those matters, "[a]llegations of fraud based on information and belief may suffice . . . so long as the allegations are accompanied by a statement of the facts upon which the belief is founded."  Puri, 674 F. App'x at 687 (citing Wool v. Tandem Computs. Inc., 818 F.2d 1433, 1439 (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3 (9th Cir. 2002)).

### ii. The Alleged "Scheme" is Not Pleaded with Adequate Particularity

The Complaint repeats a common refrain:  Defendants engaged in a scheme to "steer" Plaintiffs to purchase "virtually worthless" surplus lines insurance so Broker Defendants could collect unlawful commissions.  See gen. Compl.  Yet the Complaint fails to allege specific facts plausibly giving rise to Plaintiffs' suspicions of a "scheme," other than that they ended up with unsatisfactory coverage.  The Complaint contains almost no particulars—including the who, what, when, where, and how—of the alleged "scheme."  The allegations do not address who made what specific representations or statements to Plaintiffs and when; what representations or statements Plaintiffs relied on; how Underwriters' paying commissions to brokers constitutes "improper kickbacks"; and how Plaintiffs were "steered" into purchasing the Policies.  See Siegel v. Shell Oil Co., 480 F. Supp. 2d 1034, 1043 (N.D. Ill. 2007) (dismissing complaint because plaintiffs failed to allege "any of the particulars surrounding the[] averments of fraud").

Relevant to Moa, the Complaint says nothing about its specific acts or what it did or did not do.  For example, the Complaint alleges that, "[i]n reasonable reliance upon the representations made to Plaintiffs and the Class by Lloyd's, Monarch, and SPG, and their agents Moa and Pyramid, Plaintiffs

and the Class regularly paid valuable consideration in the form of a premium to bind coverage and be included as a named insured under that policy." Compl. ¶ 110. This allegation says nothing about which party made what representations to Plaintiffs, and what those representations were.

While the Court recognizes that Rule 9(b) is relaxed as to matters within the opposing party's knowledge, Opp. Br. 9, that does not excuse Plaintiffs from alleging some <u>facts</u> that inform their allegations. <u>See</u> <u>Puri</u>, 674 F. App'x at 687 (citing <u>Wool</u>, 818 F.2d at 1439). Here, Plaintiffs are grasping at straws to point to particularized "facts" giving rise to their conclusion that <u>Moa</u> participated in an alleged unlawful "scheme" to mislead Plaintiffs. While the Court acknowledges and is troubled by the allegations that Broker Defendants artificially inflated Plaintiffs' property values to preclude them from qualifying for HPIA coverage, Compl. ¶¶ 50-54, 62-68, Plaintiffs have not "identifie[d] the specific circumstances constituting fraud that put[] [Moa] on notice" so it can adequately respond to the allegations against it. <u>See</u> <u>Muriu v. W. Coast Life Ins.</u> <u>Co.</u>, No. CV 17-380-GW(SKx), 2017 WL 10592124, at *5 (C.D. Cal. May 25, 2017).

The Court is also not persuaded that at least some information surrounding the specific actions or representations by Moa is not within Plaintiffs' control. Plaintiffs allege

that they worked with their retail brokers—Pyramid and Moa—to
procure the at-issue Policies and other coverage for their
homes.  Part of the alleged "scheme" involved Broker Defendants'
apparent failure to make certain disclosures or perform due
diligence required under Rule 301.  Surely Plaintiffs can at
least allege what specific representations were made to them and
by whom, or who told Plaintiffs that they needed to purchase
surplus lines insurance and when.  As currently drafted, the
Complaint does not allege with particularity how Moa misled
Plaintiffs.  The Complaint is based on a theoretical "scheme"
but fails to provide the requisite factual basis.

To summarize, the Complaint has not pleaded facts with
specificity to satisfy Rule 9(b).  Plaintiffs' "faint sketch of
fraud is insufficient," Siegel, 480 F. Supp. 2d at 1043, and the
Complaint does not comply with the particularity requirement of
Rule 9(b).[9/]

### iii. The Complaint Engages in Impermissible "Group Pleading"

---

[9/]  Notwithstanding the Complaint's shortcomings under Rule 9(b), the
Court reiterates its statement made at the hearing that the circumstances
here are concerning.  It is difficult to understand how Plaintiffs—residents
of designated, high-risk lava zones—could have ended up with homeowner's
insurance policies expressly excluding the coverage that they presumably
sought.  It is equally troubling that Plaintiffs were allegedly not made
aware that they may have qualified for non-surplus lines insurance, including
under the HPIA program, which may have provided coverage for at least some of
the losses Plaintiffs now face.  This is particularly concerning with respect
to Moa, as the retail broker who worked closely with Plaintiffs in procuring
insurance coverage.  That said, these concerns are not enough under Rule
9(b), and any amended complaint must comply with the Federal Rules.

The Complaint also uses impermissible group pleading, which violates not only Rule 9(b), but also Rule 8(a). See Sollberger v. Wachovia Secs., LLC, No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *4-5 (C.D. Cal. June 30, 2010) (discussing pleading requirements of Rule 8(a), Rule 9(b), Iqbal, and Twombly to describe improper "shotgun pleading"). Thus, dismissal is warranted on that ground as well.

"Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Swartz, 476 F.3d at 764-65 (quoting Haskin v. R.J. Reynolds Tobacco Co., 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)); see also Wieck v. CIT Grp., Inc., 308 F. Supp. 3d 1093, 1126 (D. Haw. 2018). A complaint governed by Rule 9(b) must "detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991).

Here, the Complaint improperly lumps the various Broker Defendants together, without explaining each Defendant's— or group of similarly situated Defendants'—particular role in the steering scheme. See Destfino v. Reiswig, 630 F.3d 952,

958-59 (9th Cir. 2011) (discussing approvingly the district court's dismissals based on plaintiffs' "everyone did everything" allegations); Wieck, 308 F. Supp. 3d at 1126 (dismissing RICO claims because the complaint improperly lumped defendants together without explaining their roles in the enterprise).  The Complaint generally refers to "Broker Defendants," or it refers to "Defendants" collectively.  Doing so violates Rules 8(a) and 9(b) by failing to attribute specific misconduct to Moa.  See Swartz, 476 F.3d at 765 (dismissing complaint that was "shot through with general allegations that the 'defendants' engaged in fraudulent conduct but attribute[d] specific misconduct only to [some defendants]"); Wieck, 308 F. Supp. 3d at 1126 (holding that group pleading did not comply with Rule 9(b)); Ciuffitelli for Tr. of Ciuffitelli Revocable Tr. V. Deloitte & Touche LLP, No. 3:16-cv-580-AC, 2017 WL 2927481, at *14 (D. Or. Apr. 10, 2017) ("Plaintiffs fail to satisfy the requirements of either Rule 9(b) or Rule 8[(a)] by referring generally to [a group of different entities] making misrepresentations and omissions." (internal quotation marks omitted)).

The agency theories that Plaintiffs purport to rely on do not justify the Complaint's treatment of Defendants as interchangeable.  Agency relationships between Defendants do not exempt Plaintiffs from the federal pleading requirements,

especially when the facts underlying those relationships are not plausibly alleged in the Complaint. In fact, the only agency-related facts in the Complaint are general allegations of the business relationships between the parties. The relationships between insurance companies, syndicates, brokers, and the like are notoriously complex. While Plaintiffs need not specify facts beyond their purview, their allegations must at least describe the alleged "role of each defendant in the fraud." Comwest, Inc. v. Am. Operater Servs., Inc., 765 F. Supp. 1467, 1471 (C.D. Cal. 1991).

Regardless, conclusory allegations that do not identify the role of the defendants do not comply with Rule 8(a) or Rule 9(b). Id.; see also Twombly, 550 U.S. at 555. In Swartz, for example, the Ninth Circuit held that conclusory allegations and group pleading under purported agency theories failed to comply with Rule 9(b). 476 F.3d at 765. The complaint alleged that the "defendants" engaged in fraudulent misconduct; that some defendants were acting as agents of others; and that some defendants "knew" other defendants were making false statements to clients. Id. The Ninth Circuit held that, without any stated factual basis, these conclusory allegations were "insufficient as a matter of law." Id.

Likewise, in Comwest, a district court in this circuit dismissed fraud claims as deficient because the

complaint "made only conclusory allegations that

'defendants . . . , and each of them, directly and indirectly,

aiding and abetting each other, and acting in concert, and

through each other . . . fraudulently induced plaintiff [to

enter the sales contractor agreements]." 765 F. Supp. at 1471

(alterations in original). These allegations of overlapping

liability were "patently inadequate." Id. According to the

court, "[i]t is not enough for plaintiffs to make group

allegations . . . because collective responsibility is not self-

evident. Each defendant is entitled to know what

misrepresentations are attributable to them and what fraudulent

conduct they are charged with." Id.

    For the reasons stated, the Complaint engages in

impermissible group pleading and fails to comply with the

plausibility requirement of Rule 8(a) and the particularity

requirement under Rule 9(b). The Complaint is therefore

dismissed against Moa.

## II.  Analysis of Plausibility of Each Cause of Action

    As stated, dismissal is appropriate because the

Complaint does not plead with particularity allegations of Moa's

purported fraudulent conduct. Nonetheless, for the sake of

completeness, the Court will address each individual count based

on Moa's arguments for dismissal on the merits.

### a. Whether Count I—UDAP, HRS § 480-2 Violation—States a Claim for Relief

Count I of the Complaint alleges that Defendants'

conduct and participation in the steering scheme violated

Hawai'i's UDAP statute, HRS § 480.  HRS § 480-2(a) provides that

"[u]nfair methods of competition and unfair or deceptive acts or

practices in the conduct of any trade or commerce are unlawful."

To state a UDAP claim, a consumer[10] must allege: (1) a violation

of HRS § 480-2; (2) injury to plaintiff's business or property

resulting from such violation; and (3) proof of the amount of

damages.  Lizza v. Deutsche Bank Nat. Trust Co., 1 F. Supp. 3d

1106, 1121 (D. Haw. 2014) (citing Haw. Med. Ass'n v. Haw. Med.

Serv. Ass'n, Inc., 113 Haw. 77, 113–14, 148 P.3d 1179, 1215–16

(2006)); see also HRS § 480-13(b)(1)); In re Kekauoha-Alisa, 674

F.3d 1083, 1092 (9th Cir. 2012).  A private cause of action

exists under the statute.  HRS § 480-2(e) ("Any person may bring

an action based on unfair methods of competition declared

unlawful by this section.").

### i. Whether Count I Fails to Comply With the Federal Pleading Standards

As an initial matter, the Court reiterates that Count

I is dismissed because it fails to comply with the federal

---

[10] HRS § 480-1 defines "consumer" as "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment."  Moa has not disputed that Plaintiffs are "consumers."

pleading standards set forth in Rules 8(a) and 9(b).  The
allegations underlying Count I fail to plead with particularity
facts to support a UDAP claim.  The allegations are nothing more
than a reiteration of certain legal elements and phrases, some
quoted directly from Hawai'i Supreme Court case law.  Such
"[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice [on a
12(b)(6) motion]."  <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550
U.S. at 557)).  And applying Rule 9(b), Count I fails to allege
with any particularity the "who, what, when, where, and how of
the misconduct charged."  <u>Vess</u>, 317 F.3d at 1106.  The Complaint
is otherwise devoid of any allegations (particularized or
otherwise) of misrepresentations, omissions, or deceptive
practices necessary to sustain a UDAP claim for deception.

      The Complaint also characterizes Underwriters' and
Broker Defendants' relationship as "unlawful" and part of the
"deceptive" "scheme."  Yet it alleges no facts to support those
characterizations, other than Plaintiffs' dissatisfaction with
their insurance coverage and suspicions that a scheme existed.
These suspicions are not sufficient for a claim to survive the
Rule 8(a) standard, let alone the heightened Rule 9(b) standard.
<u>See</u> <u>Twombly</u>, 550 U.S. at 555 ("[T]he pleading must contain
something more . . . than . . . a statement of facts that merely
creates a suspicion [of] a legally cognizable right of action"

(quoting 5 C. Wright & A. Miller Fed. Prac. & Proc. § 1216, pp. 235-36 (3d ed. 2004)) (alteration in original)).  Without more, broad allegations that Defendants misrepresented, concealed, steered, or omitted information fall short of alleging more than a "sheer possibility" of unlawful conduct, much less of meeting the heightened "particularity" requirement under Rule 9(b).  See Twombly, 550 U.S. at 555.

Accordingly, the vague and conclusory allegations of Count I fail to meet both the "particularity" standard of Rule 9(b) and the "plausibility" standard of Rule 8(a).  The Complaint is properly dismissed on that basis.

### ii.  Whether Count I is an Improper Attempt to Bring a Private Cause of Action Under the Insurance Code

Count I is properly dismissed on the sole ground that it fails to comply with the federal pleading standards.  The Court will nonetheless address Moa's alternative arguments on the merits of Count I, which relate to Plaintiffs' entitlement to sue for unfair and deceptive acts and practices in the insurance context.[11/]

Moa argues first that Count I is an improper attempt

---

[11/] Nothing in the forthcoming discussion should be construed as a final determination on the merits.  The Court is merely analyzing the legal issues raised by Moa's Motion to Dismiss and opining on these alternative arguments for dismissal.  By implication of the Court's ruling that the Complaint fails to comply with the federal pleading rules, additional factual allegations are needed to move forward with any claim.  Whether such claims are legally viable based upon facts that might eventually be alleged is a question the Court cannot answer today.

to bring a private right of action for alleged breaches of the Insurance Code. Mot. Dismiss 4-5. It argues that Plaintiffs' UDAP claim, while characterized as a claim under HRS § 480-2, is really predicated on violations of the Insurance Code—primarily, Section 301 of the Surplus Lines Act. See id. at 5.

It is well settled that there is no private right of action for violations of the Hawaiʻi Insurance Code. See The Best Place, Inc. v. Penn Am. Ins. Co., 82 Haw. 120, 126, 920 P.2d 334, 340 (1996) ("Article 13 of the Hawaiʻi Insurance Code does not authorize a private cause of action pursuant to its administrative remedies."); Hunt v. First Ins. Co. of Haw. Ltd., 82 Haw. 363, 372, 922 P.2d 976, 985 (Ct. App. 1996) (holding that "no private cause of action exists under HRS Chapter 431, Article 13"). None of the parties disputes this principle. Moa, however, implies that Count I is essentially a claim under Article 13 of the Insurance Code disguised as a general UDAP claim. See Mot. Dismiss 5; Reply Br. 8-10. Plaintiffs respond that the conduct alleged to constitute Section 301 violations was inherently unfair and deceptive, supportive of a claim under § 480-2. Opp. Br. 15-17. In other words, the parties disagree on whether conduct that allegedly violates the Insurance Code can support a valid cause of action under UDAP § 480-2. Hawaiʻi case law suggests that it can.

This circuit has held that the Hawai'i Insurance Code does not preempt a private right of action under HRS § 480-2. Jenkins v. Commonwealth Land Title Ins. Co., 95 F.3d 791, 796-98 (9th Cir. 1996) (citing Gonsalves v. First Ins. Co. of Haw., Ltd., 55 Haw. 155, 516 P.2d 720 (Haw. 1973), and Best Place, 82 Haw. 120, 920 P.2d 334). In Jenkins, the Ninth Circuit reasoned that the Hawai'i Supreme Court had reviewed insurance-related UDAP claims on the merits without any indication that the Insurance Code preempted liability. Id. at 797. Following the Ninth Circuit's guidance, this district has recognized private causes of action in the insurance context under Hawai'i's general UDAP statute. See, e.g., Wieck, 308 F. Supp. 3d at 1124 (denying motion to dismiss UDAP claim against Lloyd's); Donaldson v. Liberty Mut. Ins. Co., 947 F. Supp. 429, 432 (D. Haw. 1996) (holding that the Ninth Circuit's prediction that the Hawai'i Supreme Court would find UDAP claims not preempted by the Hawai'i Insurance Code "binds this court").

Moa's reliance on Hunt and Hough to undermine Jenkins is unpersuasive. See Reply Br. 9-10. Moa suggests that these cases call Jenkins into question and "support[] a finding by this Court that the Hawai'i Insurance Code preempts a claim under HRS § 480-2." Id. at 10. To the contrary, the three cases are consistent. If anything, Hunt and Hough cut against Moa's argument that § 480-2 claims are preempted by the

Insurance Code.  Both, after all, dismiss the § 480 claims on grounds other than preemption.

Hunt and Hough stand for the familiar proposition that no private cause of action exists under the Hawai'i Insurance Code.  Hough v. Pac. Ins. Co., Ltd., 83 Haw. 457, 470-71, 927 P.2d 858, 871-72 (1996); Hunt, 82 Haw. at 372, 922 P.2d at 985. This is not inconsistent with Jenkins, which recognized that same point.  See Jenkins, 95 F.3d at 797 n.4 (noting that plaintiff "would not be entitled to bring a private action . . . under § 431:13-102" because "the statute was intended as a regulatory one, enforceable by the insurance commissioner, and not one authorizing private remedies to aggrieved individuals"). In any event, the plaintiffs in Hough and Hunt also brought claims under HRS § 480.  See Hough, 83 Haw. at 470, 927 P.2d at 871; Hunt, 82 Haw. at 372-73, 922 P.2d at 985-86.  And the Hawai'i Supreme Court and the Intermediate Court of Appeals ("ICA") respectively dismissed those claims not because they amounted to private causes of action under or were preempted by the Insurance Code, but because the plaintiffs were not "consumers" with standing to assert a claim under § 480.  See Hough, 83 Haw. at 470, 927 P.2d at 871 ("Hough is not a consumer and therefore lacks standing to maintain a private cause of action pursuant to HRS § 480-13."); Hunt, 82 Haw. at 372-73, 922 P.2d at 985-86 (holding that plaintiff had not alleged that she

"purchased or attempted to purchase, or was solicited to purchase goods or services from First Insurance," and "[b]ecause she failed to allege the foregoing, Hunt is not a 'consumer' as defined by HRS Chapter 480 and, therefore, lacks standing to maintain a private cause of action pursuant to HRS § 480-13.").

In short, the Court is not convinced that Hawai'i does not recognize a private right of action under § 480-2 in the insurance context. Nor is it convinced that conduct violative of both the Insurance Code and § 480-2 cannot support a UDAP claim. The Court thus rejects Moa's argument that Count I is an improper attempt to bring a private cause of action under or preempted by the Insurance Code, and the Court would not dismiss Count I on this basis.

### iii. Whether Count I is Barred by HRS § 480-11(b)

Moa's final argument is that Plaintiffs' UDAP claim is barred by HRS § 480-11(b). Mot. Dismiss 5-7. HRS § 480-11(b) exempts from the scope of UDAP any "transaction in the business of insurance" if it is "expressly permitted" by the insurance laws of Hawai'i:

> [Chapter 480] shall not apply to any transaction in the business of insurance that is in violation of any section of this chapter if the transaction is expressly permitted by the insurance laws of this State; provided that nothing in this section shall render this chapter inapplicable to any agreement to boycott, coerce, or intimidate or any act of boycott, coercion, or intimidation.

HRS § 480-11(b).  Moa maintains that the insurance transactions here fall within the scope of § 480-11(b) because surplus lines insurance is generally permitted and regulated by Hawai'i law.  Mot. Dismiss 5; Reply Br. 6-7.  Plaintiffs respond by pointing to their allegations that the transactions violated the Surplus Lines Act, which is part of Hawai'i's Insurance Code.  Opp. Br. 12-15.  In other words, the transactions here were not "expressly permitted by the insurance laws of [Hawai'i]" because they technically violated those laws.  See id.

The Court begins by noting that neither party has offered any case—and the Court is not aware of any published state or federal court decision—applying § 480-11(b) at all, let alone to exempt an insurance broker from liability under UDAP.[12/]  To the contrary, claims under Hawai'i's general UDAP law often have been recognized in the insurance context.  See, e.g., Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1092-94 (9th Cir. 2010); Wieck, 308 F. Supp. 3d at 1124.  In addition, the Ninth Circuit has, for all intents and purposes, predicted that the Hawai'i Supreme Court would recognize that a private right of action exists under UDAP § 480-2 for claims arising out

_____

[12/]  The Ninth Circuit in Spinner Corp. v. Princeville Dev. Corp., 849 F.2d 388, 390 (9th Cir. 1988) noted in passing that UDAP "specifically exempts certain groups and activities from its coverage such as . . . insurance transactions."  But that is all the court had to say, and the case focused on whether securities transactions were similarly exempt.  See id.

of insurance transactions.[13/]  See Jenkins, 95 F.3d at 796-98.

Although Jenkins concluded that the Insurance Code would not preempt general UDAP liability and did not specifically mention HRS § 480-11(b), it would seem to this Court that prematurely dismissing Plaintiffs' UDAP claim because it involves insurance transactions would be "implicitly inconsistent with the treatment of § 480-2" under existing law.  Id.

With this backdrop in mind, the Court now turns to the interpretation and application of § 480-11(b) in these circumstances.  Having looked to the limited case law addressing similar statutes in other jurisdictions and having considered Hawai'i courts' prior treatment of UDAP claims in the insurance context, the Court predicts that the Hawai'i Supreme Court would find Plaintiffs' interpretation of § 480-11(b) persuasive. Accordingly, the Court would not dismiss Plaintiffs' UDAP claim as barred by § 480-11(b).

Appellate courts in several states—including Arkansas, Tennessee, and Colorado—have addressed their state's own respective statutes that operate much like HRS § 480-11(b) purports to operate.  See, e.g., Air Evac EMS, Inc. v. USAble Mut. Ins. Co., 533 S.W.3d 572, 573-76 (Ark. 2017) (interpreting safe-harbor provision exempting "[a]ctions or transactions

---

[13/]  The court in Jenkins did not expressly address the possible effect of § 480-11(b) on a UDAP cause of action in the insurance context, even though the statutory language was identical to the language in effect today.

permitted under laws administered by the Insurance Commissioner
. . ." (emphasis added)); Showpiece Homes Corp. v. Assurance Co.
of Am., 38 P.3d 47, 56-57 (Colo. 2001) (same for provision
exempting "[c]onduct in compliance with the orders or rules of,
or a statute administered by, a federal, state, or local
governmental agency" (emphasis added)); Skinner v. Steele, 730
S.W.2d 335, 337-38 (Tenn. Ct. App. 1987) (same for provision
exempting "[a]cts or transactions required or specifically
authorized under the laws . . .").

In each case, the courts applied the so-called
"specific-conduct rule" to hold that the exemptions precluded
claims only when the conduct or transactions were "specifically
permitted or authorized under laws administered by a state or
federal regulatory body or officer." Air Evac EMS, 533 S.W.3d
at 575-76; see also Showpiece Homes, 38 P.3d at 56 (holding that
provision "exempts only those actions that are 'in compliance'
with other laws" and "[c]onduct amounting to deceptive or unfair
trade practices . . . would not appear to be 'in compliance with
other laws"); Skinner, 730 S.W.2d at 338 (applying the specific-
conduct rule and holding that authorization to engage in the
business of selling annuities "is not specific authorization to
employ unfair or deceptive practices in that activity"); see
also Nathan Price Chaney, The Arkansas Deceptive Trade Practices
Act: the Arkansas Supreme Court Should Adopt the Specific-

Conduct Rule, 67 Ark. L. Rev. 299, 326-46 (2014) (analyzing the "specific conduct" and "general activity" approaches and surveying all fifty states' approaches to the same).

The specific-conduct approach is one of two approaches to interpreting safe-harbor provisions in deceptive trade practices statutes:

> (1) the majority "specific conduct" rule, which looks to whether state law permits or prohibits the conduct at issue and only exempts permitted conduct from [deceptive trade practices act] claims; and (2) the minority "general activity" rule, which looks to whether a state agency regulates the conduct, in which case a regulated party enjoys a full exemption from the [deceptive trade practices statute].

Air EVAC EMS, 533 S.W.3d at 574 (citing Cheney, supra at 300). In Skinner, the Tennessee Court of Appeals described the rationale of safe-harbor provisions exempting acts or transactions "required or specifically authorized" under state or federal law:

> The purpose of the exemption is to insure that a business is not subjected to a lawsuit under the Act when it does something required by law, or does something that would otherwise be a violation of the Act, but which is allowed under other statutes or regulations. It is intended to avoid conflict between laws, not to exclude from the Act's coverage every activity that is authorized or regulated by another statute or agency. Virtually every activity is regulated to some degree. The defendant's interpretation of the exemption would deprive consumers of a meaningful remedy in many situations.

730 S.W.2d at 337 (emphasis added).

The Court is aware of one case in this district implicitly using the specific-conduct rule to apply an exemption under the UDTPA, HRS § 481A-5(a)(1). See Paragon Metals, Inc. v. Schnitzer Steel Haw. Corp., No. 08-00292 DAE-LEK, 2009 WL 2700278, at *6 n.9 (D. Haw. Aug. 24, 2009). Under that exemption, § 481A of the UDTPA does not apply to "conduct in compliance with the orders or rules of, or a statute administered by, a federal, State, or local governmental agency." HRS § 481A-5(a)(1). After holding that the plaintiff failed to allege facts to state a claim under the UDTPA, the judge observed, in a footnote, that the exemption would also preclude liability because the defendant was "engaging in conduct in compliance with the rules of the [state environmental agency]."[14/] Paragon, 2009 WL 2700278 at *6 n.9.

The Ninth Circuit also implicitly applied the specific-conduct rule when deciding whether the California "safe harbor" doctrine exempted liability for various bank entities under California's unfair competition law ("UCL"). See Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1164 (9th Cir. 2012). In

_____

[14/] In addressing an additional claim brought under HRS § 480-2, the court noted that the defendants' conduct had "complie[d] with state and federal hazardous waste laws." Paragon, 2009 WL 2700278 at *6. This, among other findings, led the court to reject the plaintiff's UDAP claim. See id. Paragon did not involve insurance transactions such to implicate HRS § 480-11(b), but the observation that the defendant had complied with state and federal law is indicative of the specific-conduct approach.

Davis, the plaintiff alleged that the defendant banks had made inadequate disclosures of the annual fee in their credit-card application and advertising materials, in violation of the UCL. Id. The banks argued that their disclosures "complied with, and w[ere] required by" TILA and an associated regulation. Id. Therefore, the banks argued, their conduct fell within a "safe harbor," precluding UCL liability. Id.

The Ninth Circuit held that certain of the disclosures fell within the "safe harbor" while others did not. Id. First, disclosures made in the online application created a safe harbor because they fully complied with TILA and the regulation. Id. at 1165. TILA and regulation required the banks to disclose any annual fee in the credit-card application in a specified way, and the banks' complied with those specifications. Accordingly, the banks' disclosure "clearly was permitted by federal law" and could not serve as the basis for UCL liability. Id.

As to the advertising materials, however, the court held that the banks' conduct could not "be swept into the ambit of this safe harbor." Id. at 1166. Unlike the online application, the advertisements lacked any disclosure of the annual fee. Id. at 1166. Importantly, the advertisements were not subject to the same disclosure requirement as the online application. Id. at 1167 (holding that the advertisements were not "solicitations" requiring a disclosure under TILA or the

regulation).  This led the court to ask whether the "omission of the annual fee is permitted by some statute or regulation."  Id. at 1167.  To fall under a safe harbor, the court explained, "the omission of the annual disclosure from the advertisements must be expressly permitted by some other provision."  Id. (emphasis added).  It was not enough that TILA and the regulation "merely fail[ed] to prohibit such an omission."  Id. (emphasis added). Because no provision in TILA, the regulation, or elsewhere clearly permitted the omission of the annual fee disclosure, the omission could not exempt the defendants from liability.  See id. at 1167-68.

In both Paragon and Davis, the courts implied that the defendants' specific conduct—not just the general transaction— must be authorized, permitted, or required by law.  Here, Plaintiffs allege that Moa placed surplus lines insurance with non-admitted insurers—which is expressly permitted by Hawai'i law.  But the specific conduct alleged is the failure to perform duties and due diligence specifically required by Section 301 of the Surplus Lines Act.  Compl. ¶ 93.  So Moa's alleged omission or inaction violated a statute.  It follows that Moa's conduct was not specifically "permitted by some statute or regulation." Cf. Davis, 691 F.3d at 1166.  Indeed, by alleging that Broker Defendants failed to perform the due diligence required by Section 301, Plaintiffs, in effect, allege that Moa's specific

- 43 -

conduct is _prohibited by_ a statute or regulation.  _Davis_

provides a helpful backdrop:

First, looking to the online applications, TILA and

the regulation both _required_ that the applications include

specified fee disclosures.  See _Davis_, 691 F.3d at 1165.

Because the applications complied with those requirements, the

banks' conduct was "permitted by federal law" and could not

serve as the basis for UCL liability.  _Id._ Disclosures in the

advertisements, on the other hand, were not required by TILA,

the regulation, or any other provision.  _Id._ at 1167.  At the

same time, no provision of law "affirmatively permit[ted] the

absence of the annual fee disclosure from the advertisements."

_Id._  Thus, safe harbor did not apply to preclude UCL liability.

_Id._

Here, it is without question that Section 301 permits

the procurement of surplus lines insurance from unauthorized

insurers.  See HRS § 431:8-301 (titled, "Insurance placed with

unauthorized insurer permitted").  But it also imposes several

conditions on the placement of such insurance.  _Id._ § 431:8-

301(a).  Applying a similar analysis to _Davis_, Moa would only be

entitled to safe harbor if its due diligence and conduct in the

surplus-lines transactions complied with—and was therefore

"permitted by"—Section 301 or another provision of law.  See

_Davis_, 691 F.3d at 1165.  Or, alternatively, safe harbor would

apply if the law expressly permitted surplus lines transactions
without the due diligence and coverage comparisons.  The
allegations in the Complaint certainly do not suggest that Moa
complied Section 301's requirements.  And Moa has not offered
any other provision of law clearly permitting its alleged
failure to conduct due diligence when placing surplus-lines
policies.  Cf. id. ("[T]he parties have not provided, and we
have not located, any provision in TILA, Regulation Z, or
elsewhere that clearly permits the omission of the annual fee
disclosure from such advertisements.").  Following the rationale
in Davis—as well as the majority specific-conduct approach—HRS §
480-11(b) would not exempt Moa from liability here, where
Plaintiffs have alleged that Moa's specific conduct was not
permitted—and indeed was prohibited—by Hawai'i law.

Moa argues that applying the specific-conduct rule
would render HRS § 480-11(b) a nullity, such that it would never
apply.  Reply Br. 7; see also E&J Lounge Operating Co., Inc. v.
Liquor Comm'n of City & Cty. of Honolulu, 118 Haw. 320, 349, 189
P.3d 432, 461 (2008) (discussing the "well-established tenet of
statutory construction that 'an interpreting court should not
fashion a construction of statutory text that effectively
renders the statute a nullity or creates an absurd or unjust
result").  The Court rejects this argument.  Cf. Showpiece

Homes, 38 P.3d at 56 (rejecting argument that specific-conduct interpretation "renders the statutory exclusion a nullity").

As other states have recognized, the purpose of an exemption like § 480-11(b) is to avoid conflicts and preclude lawsuits "based on practices that are 'in compliance' with other laws." See id. So, for example, § 480-11(b) might create a safe harbor from a lawsuit alleging that the placement or sale of surplus lines insurance underwritten by unauthorized insurers—even with the requisite due diligence and rate comparisons having been performed— is itself an unfair or deceptive act or practice. It is undisputed that surplus lines insurance is "expressly permitted" by Section 301, subject to certain conditions. So § 480-11(b) would presumably exempt Moa from a lawsuit alleging that transactions in compliance with those conditions violates UDAP. Such a lawsuit would be "based on practices that are 'in compliance' with other laws." See Showpiece Homes, 38 P.3d at 56. Or, to borrow a different example offered by Plaintiffs' counsel at the motions hearing, § 480-11(b) could apply if a policyholder were to bring a UDAP claim alleging that a traditional insurance carrier's rates of insurance were "unfair." Because rates of insurance are regulated and indeed specifically established by the Insurance Commissioner, a lawsuit taking issue with those rates would involve conduct "expressly permitted by the insurance laws of

[Hawaiʻi]."[15/]  Accordingly, to the extent that § 480-11(b) might, under some circumstances, excuse a defendant from liability in the insurance context, those circumstances do not exist here.

Because Plaintiffs have alleged that Moa's conduct did not comply with and was not "expressly permitted by" the Insurance Code, § 480-11(b) would not apply.  The Court, then, would not dismiss Count I as barred by § 480-11(b).

### b. Whether Count II—UDTPA § 481A-3 Violation—States a Claim for Relief

HRS § 481A-3 sets forth eleven categories that constitute deceptive trade practices, and the list ends with a catch-all provision for "any other conduct which similarly creates a likelihood of confusion or of misunderstanding."  HRS § 481A-3(a)(1)-(12).  To prevail in an action under the UDTPA, "a complainant need not prove . . . actual confusion or misunderstanding."  Id. § 481A-3(b).  And "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity that the court considers reasonable.  Proof of monetary damage, loss of profits, or intent to deceive is not required."  Id. §

_____

[15/]  Of course, this example is only relevant to admitted insurers transacting in the traditional, non-surplus lines market.  As discussed, surplus lines insurance is not regulated in the same way and is provided by non-admitted insurers who need not obtain approval for the rates, forms, and underwriting rules.  See Compl. ¶ 41; see also HRS § 431:8-301 (allowing surplus lines insurance to be placed with unauthorized insurers under certain conditions).

481A-4(a).  The Hawai'i Supreme Court has defined "the meaning

of deceptive practice by citing the definition employed by

federal courts with respect to 'an act causing, as a natural and

probable result, a person to do that which he [or she] would not

otherwise do.'"  Balthazar v. Verizon Haw., Inc., 109 Haw. 69,

77, 123 P.3d at 194, 202 (2005) (quoting Haw. Cmty. Fed. Credit

Union v. Keka, 94 Haw. 213, 228, 11 P.3d 1, 16 (2000))

(alteration in original).

Moa argues that Count II does not allege conduct of

the type actionable under the UDTPA.  Mot. Dismiss 7-10.

Practically speaking, it would be impossible to decide that

Plaintiffs have alleged actionable conduct under the UDTPA when

the Court has already decided that the allegations are

insufficiently pleaded.  Assuming the Complaint had complied

with the federal pleading requirements, the Court notes that it

disagrees with Moa's narrow reading of the UDTPA and would not

necessarily dismiss Count II as failing to allege conduct within

the catch-all provision.

Plaintiffs' UDTPA claim is plainly alleged under the

catch-all provision, HRS § 481A-3(a)(12).  Compl. ¶ 104 ("Broker

Defendants' and Lloyd's conduct of misrepresenting, concealing,

steering, or otherwise omitting the foregoing created the

likelihood of confusion or of misunderstanding under HRS §481A-

3(a)(12).").  Count II alleges that the same conduct underlying

Count I also constitutes deceptive trade practices in violation of Chapter 481A.  Compl. ¶¶ 102-06.

The catch-all clause is a "sweeping provision" that encompasses "any other conduct which similarly creates a likelihood of confusion or of misunderstanding."  Gas Co., LLC v. Amerigas Propane, L.P., No. 16-00366 LEK-KSC, 2017 WL 3613986, at *4 (D. Haw. Jan. 27, 2017) (discussing HRS § 481A-3(a)(12)).  Moa would have the Court ignore the "sweeping" nature of the catch-all clause and recognize as actionable only conduct that falls within one of the eleven enumerated categories.  See Mot. Dismiss 9-10.  The Court does not read the catch-all clause in those narrow terms.

Moa's reliance on True Value Co. v. Hills, No. 16-cv-00237 JMS-RLP, 2016 WL 7191540 (D. Haw. Nov. 16, 2016), adopted by 2016 WL 7191562 (D. Haw. Dec. 12, 2016), to limit the scope of HRS § 481A-3 is also misplaced.  See Mot. Dismiss 8-9; Opp. Br. 17.  Moa accurately describes the True Value holding that the plaintiff stated a plausible claim under HRS § 481A-3 by alleging that the defendant's actions resulted in confusion "as to the source, sponsorship, or affiliation" of its website. True Value, 2016 WL 7191540 at *5.  But that holding does not imply that confusion as to the "source, sponsorship, or affiliation" is the only context for liability under the UDTPA. To the contrary, the quoted language is straight from one of the

eleven enumerated categories of conduct. <u>See</u> HRS § 481A-3(a)(2). That is, the catch-all provision was not implicated because the conduct fell squarely within one of the enumerated categories. Thus, <u>True Value</u> is not useful here insofar as it merely held that a claim existed within the scope of subsection (2). Moa has not cited any cases to show that the scope of the UDTPA § 481A-3 is limited in the way it suggests.

Still, for many of the same reasons they were insufficient to state a claim under Count I, the allegations in Count II are insufficient to state a claim under the UDTPA. The allegations are in superficial and conclusory terms, and Plaintiffs add no facts to flesh out their allegation that Moa's and other Defendants' conduct created a likelihood of confusion or misunderstanding. <u>See</u> <u>Bank of N.Y. Mellon v. Sakala</u>, CV No. 11-00618 DAE-BMK, 2012 WL 12892444, at *8 (D. Haw. Aug. 13, 2012) ("[V]ague and conclusory allegations cannot, in and of themselves, state a claim for relief."). The Court acknowledges Plaintiffs' allegation in the Complaint that they did something that they would not otherwise do—<u>i.e.</u>, purchase surplus lines insurance policies. But this allegation alone, without any non-conclusory facts to show wrongful conduct on the part of <u>Moa</u>, cannot support a claim for relief under the UDTPA.

As to Moa's second argument, that injunctive relief is unworkable and inadequate, Mot. Dismiss 10-11, the Court holds

that any injunctive relief is necessarily derivative of
Plaintiffs' claims under the UDTPA.  Because they have not
adequately pleaded those claims, Plaintiffs are likewise not
entitled to injunctive relief.[16]

Plaintiffs have failed to state a claim under HRS §
481A.  Insofar as it seeks dismissal of Count II against Moa,
the Motion to Dismiss is granted.  The Court grants leave to
Plaintiffs to amend their Complaint to plead a cause of action
under the UDTPA, including under the catch-all provision.

### c. Whether Count III—Breach of the Implied Covenant of Good Faith and Fair Dealing—Fails to State a Claim for Relief

The Hawai'i Supreme Court first recognized a "bad
faith cause of action in the first-party insurance context" in
Best Place.  The court held that "there is a legal duty,
implied in a first- and third-party insurance contract, that the
insurer must act in good faith in dealing with its insured, and
a breach of that duty of good faith gives rise to an independent
tort cause of action."  Best Place, 82 Haw. at 132, 920 P.2d at
347 (emphasis added).  In 2013, the Supreme Court expanded its

---

[16] To the extent that Plaintiffs intend to pursue injunctive relief in
an amended complaint, the Court reminds them that "Rule 65(d) requires the
language of injunctions to be reasonably clear so that ordinary persons will
know precisely what action is proscribed."  United States v. Holtzman, 762
F.2d 720, 726 (9th Cir. 1985); see also Civil Rights Educ. & Enj't Ctr. V.
Hosp. Props. Tr., 317 F.R.D. 91, 105 (N.D. Cal. 2016) (denying class
certification in part because the proposed injunction was nothing more than a
"bare injunction to follow the law").

recognition of the bad faith tort to claims brought pursuant to unlawful claims practices in Hawaiʻi's Joint Underwriting Plan ("JUP"), where no express contract is formed between the insurers and assignees.[17/] <u>Willis v. Swain</u>, 129 Haw. 478, 486, 304 P.3d 619, 627 (2013). In both <u>Willis</u> and <u>Best Place</u>, the Hawaiʻi Supreme Court emphasized the "special relationship between the insurers and their insureds," which justified a tort cause of action for bad faith. <u>Id.</u>; <u>Best Place</u>, 82 Haw. at 132, 920 P.2d at 347.

The Court notes initially that it is not clear from the Complaint whether Count III is even alleged against Moa.[18/] The bad faith claim identifies "Defendants, Lloyd's, Monarch and SPG," but later in Count III, Moa and Pyramid are referenced as playing some role as "agents." <u>See</u> Compl. ¶¶ 107-120. In their Opposition Brief, Plaintiffs confirm their position that Count III is "alleged only against Underwriters and Monarch," but that "Moa played a dual agency role in the alleged steering scheme." Opp. Br. 19. Based on the framing of the Complaint and Plaintiffs' clarification that Count III is alleged "only against Underwriters and Monarch," it appears that Plaintiffs

---

[17/] The JUP provides public assistance to individuals who cannot otherwise obtain insurance. <u>Willis</u>, 129 Haw. at 482-83, 304 P.3d at 623-24. It operates in the form of a risk-pooling arrangement and was created by statute, HRS § 431:10c-401.

[18/] Moa raises this argument for the first time in its Reply Brief, in response to Plaintiffs' statement in the Opposition Brief that Count III is alleged "only against Underwriters and Monarch." <u>See</u> Reply Br. 11-12 (citing Opp. Br. 19).

have not stated a claim against Moa.  Either way, Plaintiffs

have failed to state a bad faith claim against Moa for other

reasons.

First, as discussed supra, Count III is subject to

Rule 9(b) and fails to plead particularized facts.  Second, as

Moa argues, the Complaint does not plead the existence of any

insurance contract between Moa and Plaintiffs to establish an

implied duty of good faith and fair dealing.  Mot. Dismiss 12-

13.

Plaintiffs read Hawai'i law broadly to argue that

contractual privity is not a prerequisite to a bad faith claim,

and that a duty of good faith and fair dealing extends to an

insurer's agent pursuant to sections in the Insurance Code.

Opp. Br. 19-21 (discussing Section 301 (surplus lines) and HRS

§§ 431:13-103(a)(1)(A) and (8) (unfair competition and unfair or

deceptive acts or practices)).

There are two problems with Plaintiffs' argument.

First, this district has recognized that a tort claim for bad

faith is predicated on the existence of a contract:

> "In Best Place, the Hawaii Supreme Court
> noted that although Hawaii law imposes a duty
> of good faith and fair dealing in all
> contracts, whether a breach of this duty will
> give rise to a bad faith tort cause of action
> depends on the duties inherent in a particular
> type of contract."  . . . "The court concluded
> that special characteristics distinguished
> insurance contracts from other contracts and

> justified the recognition of a bad faith tort
> cause of action for the insured in the context
> of first- and third-party insurance
> contracts." . . . Indeed, "the Hawaii Supreme
> Court emphasized that the tort of bad faith,
> as adopted in _Best Place_, requires
> a contractual relationship between an
> insurer and an insured." . . .

_Mier v. Lordsman Inc._, Civ. No. 10-00584 JMS-KSC, 2011
WL 285862, at *5 (D. Haw. Jan. 27, 2011) (quoting _Jou v. Nat'l
Interstate ins. Co. of Haw._, 114 Haw. 122, 129, 157 P.3d 561,
568 (Ct. App. 2007)) (internal citations omitted); _see also_
_Lynch v. Fed. Nat'l Mortg. Ass'n_, No. 16-00213 DKW-KSC, 2016 WL
6776283, at *9 (D. Haw. Nov. 15, 2016) (citing _Jou_, 114 Haw. at
129, 157 P.3d at 568, for its holding that bad faith "requires a
contractual relationship between an insurer and insured").
_Willis_ admittedly diverges from this rule in the context of the
Hawai'i JUP program, where no actual contract is formed. But
the JUP operates under a statute that expressly imposes
obligations on the insurer "as if it had" issued a policy to the
assignees. _See Willis_, 129 Haw. 478 at 484, 304 P.3d at 624,
631-34 ("The assigned claims plan under the JUP creates an
insurer-insured relationship, and under that plan, no underlying
contract is necessary to give rise to that relationship and its
concomitant rights and obligations because that relationship is
created by statute."). No such statute is at play here;

Plaintiffs' claims are purely based on the relationship formed by the Policies.

Here, Plaintiffs have not pleaded that Moa was a party to any insurance contract or that any statutory scheme creates an insurer-insured relationship between a retail broker and its policyholder client. Instead, they reason that Moa not only served as an agent to Plaintiffs, but that it also served as an agent to Monarch and Underwriters. Opp. Br. 20. According to Plaintiffs, this dual-agency capacity imposed a duty of good faith and fair dealing on Moa as well.

Plaintiffs have not provided—and the Court is not aware of—any reported Hawai'i decisions holding that an agent of an insurer owes a duty of good faith and fair dealing to the insured. See Mot. Dismiss 16; Opp. Br. 22-23. Cases in this district interpreting Hawai'i law suggest that no such duty exists. See, e.g., Casados v. Drury, No. 13-00283 LEK-RLP, 2014 WL 2968221, at *3 (D. Haw. June 30, 2014) (holding that "Hawai'i law does not permit a bad faith claim against claim examiners"); Haw. Isle Adventures v. N. Am. Capacity Ins. Co., Civ. No. 08-00574 SOM, 2009 WL 330211, at *3 (D. Haw. Feb. 10, 2009) (holding that third parties to insurance contracts, including adjuster-agents, cannot be the subject of an insurance bad faith claim); CIM Ins. Corp. v. Masamitsu, 74 F. Supp. 2d 975, 994 (D. Haw. 1999) (citing Gruenberg v. Aetna Ins. Co., 510 P.2d 1032,

1038-39 (Cal. 1973), and <u>Moore v. Allstate Ins. Co.</u>, 6 Haw. App.

646, 650, 736 P.2d 73, 77 (Ct. App. 1987) to hold that a claims

handler for insurer did not have a contract with and could not

be liable to the insured in bad faith).

And this is all assuming that Moa can even be

considered an agent of Underwriters.  This brings the Court to

the second problem with Plaintiffs' rationale:  The Complaint

alleges that Moa was an agent to Plaintiffs but does not

plausibly allege that Moa was acting as Underwriters' agent.  In

their Opposition Brief, Plaintiffs assert a dual-agency theory,

whereby Moa allegedly acted as an agent to both.  Opp. Br. 20-

21.  The Court is not persuaded by this theory.  For one, to the

extent that the Complaint contains any allegations to support an

agency relationship between Moa and Underwriters, those

allegations are vague and conclusory.  More substantively, the

Ninth Circuit has predicted that the Hawai'i Supreme Court would

hold that insurance brokers are agents of the insured, not of

the insurer.  <u>See</u> <u>Healy Tibbitts Builders, Inc. v. Mannering</u>,

308 F. App'x 115, 116 (9th Cir. 2009) ("Although the Hawaii

Supreme Court has not directly addressed the issue, we are

confident that it would follow the general rule that insurance

brokers are presumed to act as agents of the insured, not of the

insurer . . . ."); <u>Healy Tibbitts Builders, Inc. v. Mannering</u>

<u>Constr. Co.</u>, No. 02-00146 SOM/BMK, 2004 WL 7333224, at *4 (D.

Haw. Mar. 8, 2004) (noting that brokers are "not agents of the insurance companies" (quoting <u>Marsh & McLennan of Cal., Inc. v. City of Los Angeles</u>, 62 Cal. App. 3d 108, 117-118 (1976))), <u>aff'd in part, rev'd in part on other grounds</u>, 308 F. App'x 115.

The cases cited by Plaintiffs do not support their legal theory either. First, citing <u>Arch Specialty Ins. Co. v. Skandia Constr. Servs., Inc.</u>, No. 10-cv-01764-BTM-BLM, 2011 WL 3055267, at *2 (S.D. Cal. July 25, 2011), Plaintiffs describe the possibility of rebutting the "presumption that an insurance broker does not work on behalf of the insurer." Opp. Br. 22. In that case, however, the court held that a "threadbare statement" that the broker was "acting as the agent for" the insurance company was "insufficient to establish agency status." <u>Skandia Constr.</u>, 2011 WL 3055267 at *2. And <u>Barth v. Coleman</u>, 878 P.2d 319, 326 (N.M. 1994) says only that a broker's actions may sometimes be "imputed to the insurer." It says nothing about the broker being held liable for insurer bad faith. The unpublished Second Circuit case Plaintiffs cite does not help their position either. See <u>Gold Star, Inc. v. Lloyds of London Ins. Underwriters</u>, 113 F.3d 1229 (2d Cir. 1997). The court there framed the presumption that a broker is the agent of the <u>insured</u> as one that can be rebutted only in "exceptional circumstances," none of which were present.

Simply put, Plaintiffs have failed to plausibly allege that Moa was an agent of Underwriters.  And they have offered no cases to support their theory that an agent of an insured can even be the subject of a bad faith claim under Hawaiʻi law.  The Hawaiʻi Supreme Court was clear in <u>Best Place</u> that the bad faith tort rests on the relationship between an "insurer and an insured."  <u>Mier</u>, 2011 WL 285862 at *5 (citing <u>Best Place</u>, 82 Haw. at 127, 920 P.2d at 341).  Moa is not an insurer.  Notably, the Supreme Court in <u>Best Place</u> adopted the bad faith standards set forth in the California case, <u>Gruenberg</u>.  See <u>Best Place</u>, 82 Haw. at 133, 920 P.2d at 347.  In <u>Gruenberg</u>, the court affirmed the dismissal of bad faith claims against "non-insurer defendants," including the insurance adjusting firm and its employee.  510 P.2d at 576.  Thus, even if Plaintiffs could plausibly allege that Moa acted as an agent to Underwriters, the Court is not convinced that the Hawaiʻi Supreme Court would diverge from the concept that an agent of an insured may not be the subject of a claim for bad faith.

At minimum, the Complaint lacks adequate factual allegations to support an agency relationship between Moa and Underwriters.  Nor is the Court convinced that, under Hawaiʻi law, Moa may be liable to the insureds for insurer bad faith.  Accordingly, in addition to the pleading inadequacies discussed throughout this Order, Plaintiffs fail to state a plausible bad

faith claim against Moa.  Count III is thus dismissed without prejudice.

### d. Whether Count IV—Unjust Enrichment—States a Claim for Relief

The Complaint pleads unjust enrichment "in the alternative" to Plaintiffs' "contract-based claim." Compl. ¶ 122.  To recover on an unjust enrichment claim, a plaintiff must show that (1) the defendant received a benefit without adequate legal basis; and (2) the defendant unjustly retained the benefit at the expense of the plaintiff.  Chapman v. Journal Concepts, Inc., No. 27-00002 JMS/LEK, 2008 WL 5381353, at *21 (D. Haw. Dec. 24, 2008) (citing Small v. Badenhop, 67 Haw. 626, 635, 701 P.2d 647, 654 (1985)); see also Durrette v. Aloha Plastic Recycling, Inc., 105 Haw. 490, 502-04, 100 P.3d 60, 72-74 (2004).  Unjust enrichment is a "broad and imprecise term." Durrette, 105 Haw. at 502, 100 P.3d at 72 (internal citation and quotation marks omitted).  In reviewing unjust enrichment claims, courts must be guided by the "underlying conception of restitution, the prevention of injustice." Id.

Moa argues that Plaintiffs' unjust enrichment claim is based on an "indirect" benefit and thus requires a showing of a "clear legal entitlement." Mot. Dismiss 16-17.  Its rationale is, the Complaint alleges that Broker Defendants received

unwarranted commissions from Lloyd's, not from Plaintiffs. See id. at 15-16. Whereas Plaintiffs argue that they directly "conferred an unjust benefit on Defendants that inured to the benefit of Moa as kickbacks in the form of commissions that were based on a percentage of the insurance premiums Plaintiffs would not have paid, but for Moa's role in the [scheme]." See Opp. Br. 21-22. According to Plaintiffs, "[o]nly Defendants know the exact money flow," and Plaintiffs paid "one lump sum as a premium," which contributed in some way to the resulting commissions paid to Moa and the other Broker Defendants. See Opp. Br. 23.

A review of Hawai'i law suggests that courts tend to apply unjust enrichment broadly and flexibly. See Lumford v. Yoshio Ota, 144 Haw. 20, 26-27, 434 P.3d 1215, 1221-22 (Ct. App. 2018). In Lumford, the ICA adopted the rationale of the Restatement 3d, which narrows the relief for "indirect" unjust enrichment claims where a third party makes a payment to the defendant. Id. The ICA held that, "in limited circumstances, a claim for unjust enrichment may be stated by allegations that a third party has conferred a benefit upon a defendant to which the plaintiff claims he or she has a superior legal or equitable right." Id. at 27, 434 P.3d at 1222.

According to Moa, the Complaint pleads no such superior legal or equitable right, regardless of whether the

alleged benefit was direct or indirect.  The Court agrees.  This is unsurprising given the other shortcomings of the Complaint. Without more particularized allegations, Defendants can only speculate as to what benefit was conferred on what Defendant, and as to what "superior legal or equitable right" Plaintiffs apparently have.

What is more, "Hawai'i law has approved 'the principle, long-invoked in the federal courts, that equity has always acted only when legal remedies were inadequate.'" Swartz v. City Mortg., Inc., 911 F. Supp. 2d 916, 938 (D. Haw. 2012) (quoting Porter v. Hu, 116 Haw. 42, 55, 169 P.3d 994, 1007 (Ct. App. 2007)) (internal quotation marks omitted), abrogated on other grounds as stated in Compton v. Countrywide Fin. Corp., 761 F.3d 1046 (9th Cir. 2014)).  Thus, the absence of an adequate remedy at law is a "necessary prerequisite" to maintaining an equitable claim.  Soule, 1 F. Supp. at 1102 (citing Swartz, 911 F. Supp. 2d at 938).

Here, Plaintiffs allege in the Complaint that they have a legal remedy in the form of the UDAP Claims.  See Compl., Counts I-II; see also Compl., Prayer For Relief.  Thus, following this Court's decision in Soule, Plaintiffs' unjust enrichment claim would not survive a motion to dismiss for the additional reason that the Complaint fails to plead that the legal claims are inadequate.  See Soule, 1 F. Supp. 3d at 1102-

03.  Plaintiffs' unjust enrichment claim "merely incorporates
the other facts of the [Complaint] by reference and makes a
conclusory allegation" that Plaintiffs and the Class conferred
upon Defendants the benefit of non-gratuitous payments for
insurance.  Id.; see also Compl. ¶ 125.  In short, Plaintiffs do
not explain how their UDAP claims "do[] not fully address [the]
injustice' [they] allegedly suffered at the hands of [Moa]."
Soule, 1 F. Supp. 3d at 1103 (quoting Porter, 116 Haw. at 55,
169 P.3d at 1007).

     None of this is to say that Plaintiffs cannot allege
an unjust enrichment claim in the alternative to their legal
claims.  The Federal Rules certainly allow them to do so.  See
Rule 8(a)(3) (requiring "a demand for the relief sought, which
may include relief in the alternative or different types of
relief"); Rule 8(d) (allowing alternative statements of a claim
or defense)[19/]; see also Soule, 1 F. Supp. 3d at 1103 (discussing
Rule 8's alternative pleading rules in the context of unjust
enrichment).  But even an alternative equitable claim must plead
any "necessary prerequisite" to such a claim.  Put another way,
for their unjust enrichment claim to survive a motion to
dismiss, Plaintiffs must at least plead that their equitable
claim would provide a remedy in the event that their legal

---

[19/]  Although, as discussed, Rule 9(b) is the relevant standard here for
factual allegations of fraud, Rule 8 contains the general rules of pleading,
which includes permitting pleading in the alternative.

claims or remedies are found to be inadequate.  As currently pleaded, the Complaint fails to allege, even in the alternative, the inadequacy of the legal remedies.

The unjust enrichment claim is dismissed against Moa without prejudice.

### e. Whether Count V—Breach of Fiduciary Duties—States a Claim for Relief

In Count V, the Complaint alleges that Broker Defendants breached fiduciary duties by participating in the deceptive "steering" scheme.  Compl. ¶¶ 132-38.  The Complaint describes the fiduciary relationship as follows:

> At all relevant times, Broker Defendants were Plaintiffs' and the Class's agent for the procurement of insurance.  Plaintiffs and the Class relied on Broker Defendants to identify the types and amounts of coverage required and the insurance companies who could provide that coverage.  Plaintiffs and the Class also relied on Broker Defendants for advice regarding which insurance programs to select and to negotiate premiums with insurance companies.

Compl. ¶ 132.  Count V alleges a fiduciary duty owed by the collective "Broker Defendants."  See Compl. ¶¶ 131-39.

"In general, '[t]he elements of a cause of action for breach of fiduciary duty are: 1) the existence of a fiduciary duty; 2) a breach of the fiduciary duty; and 3) resulting damage.'"  Seo Kyoung Won v. England, Civ. No. 07-00606 JMS/LEK, Civ. No. 08-00158 JMS/LEK, 2009 WL 10677756, at

*7 (D. Haw. Aug. 13, 2009) (quoting Pellegrini v. Weiss, 165 Cal

App. 4th 515, 524 (Cal. Ct. App. 2008)); see also Swift v.

Swift, No. CAAP-13-0000101, 2016 WL 3573970, at *3 (Ct. App.

June 30, 2016).  Whether a fiduciary duty exists is generally a

question of law.  Lahaina Fashions, Inc. v. Bank of Haw., 131

Haw. 437, 453–54, 319 P.3d 356, 372–73 (2014).

Moa contends that Count V fails because it is not a

fiduciary to Plaintiffs.  Mot. Dismiss 18.  Moa relies on

Hawaiʻi law holding that an insurer owes no fiduciary duty

toward its insured.  It reasons that, by extension, a broker

would not be imputed with fiduciary duties.  Id.  The Court

disagrees with this logic.  The relationship between an insurer

and an insured is not the same as the relationship between a

retail broker and the insured client.  For one, an insurer is

not an agent of the insured, so it would follow that no

fiduciary relationship exists.  Moa, however, was the retail

broker and Plaintiffs' "agent for the procurement of insurance."

Compl. ¶ 132.  Plaintiffs and the Class "placed great trust and

confidence in Broker Defendants and relied on them for their

judgment, expertise, and integrity."  Compl. ¶ 136-137; see also

Opp. Br. 31.  As the retail broker and agent, there very well

may have been a "special relationship" between Moa and

Plaintiffs such to establish at least some fiduciary duties.

See, e.g., Advanced Salon Visions Inc. v. Lincoln Benefit Life

Co., No. 08-cv-2346-LAB (WMc), 2010 WL 3341803, at *15 (S.D. Cal. Aug. 25, 2010) (noting that a broker may owe a fiduciary duty when it is an agent of the insured).

Hawaiʻi courts have not addressed this precise issue, but California courts have acknowledged the possibility of certain fiduciary duties owed by a broker to the insured. See, e.g., Starr Indem. & Liability Co. v. JT2, Inc., No. 1:17-cv-00213-DAD-BAM, 2018 WL 1142207, at *4-5 (E.D. Cal. Mar. 2, 2018) (collecting cases). In Starr, a federal district court in California declined to decide as a general matter whether brokers have a fiduciary relationship with or owe fiduciary duties to insureds. Id. But the court held that, regardless, an agency relationship may create certain fiduciary duties. Id. It held that "[w]hether an agency relationship that might incur fiduciary duties was ultimately created here is a question of fact better resolved at the summary judgment stage." Id. at *5.

All of this said, conclusory allegations and impermissible group pleading cannot support a claim for relief, especially on a claim subject to the heightened pleading standard under Rule 9(b). Accordingly, Count V is dismissed against Moa without prejudice.

### f. Whether Count VI—Negligence—States a Claim for Relief

Plaintiffs' sixth cause of action asserts a claim for negligence. The Complaint alleges that "Broker Defendants owed a

duty to Plaintiffs and the Class to perform the due diligence required under HRS §431:8-301(a) to ascertain whether comparable non-surplus lines insurance was available." Compl. ¶ 142. The Complaint asserts that Broker Defendants breached this duty by participating in the steering scheme, failing to "appropriately survey the market to see if non-surplus lines insurance was available," and generally failing to perform due diligence under Section 301 of the Surplus Lines Act. Compl. ¶¶ 143-147.

Moa argues that the negligence claim should be dismissed because, in substance, it is actually a claim for breach of the Insurance Code. Mot. Dismiss 21. The Court is not prepared to dismiss Count VI on this ground. Even ignoring the pleading inadequacies, the Court would not dismiss the negligence claim merely because the common-law duty of care in some ways parallels duties imposed by the Insurance Code. Compare Am. Auto. Ins. Co. v. Haw. Nut & Bolt, Inc., No. 15-00245 ACK-KSC, 2017 WL 4079522, at *4-5 (D. Haw. Sept. 14, 2017) (recognizing Hawai'i law that an insurance agent owes a duty of reasonable care, skill, and diligence in procuring insurance, and holding that the extent of these duties and responsibilities "turns on the fact of each case" (citing Quality Furniture, Inc. v. Hay, 61 Haw. 89, 93, 595 P.2d 1066, 1068-69 (1979))), with HRS § 431:1-102 (requiring "insurer, the insured and their

representatives" to act with "good faith"); id. § 431:8-301
(imposing duties of due diligence on surplus-lines brokers).

The Court is also not persuaded by Moa's argument
that, "[s]imply because Plaintiffs chose a particular policy
that was offered by Moa, in addition to other policies offered
by Moa, does not give rise to a claim for negligence under
[Section 301]." Mot. Dismiss 23 (citing Fick v. Unum Life Ins.
Co. of Am., No. 2:12-cv-01851-MCE-CKD, 2012 WL 5214346, at *6
(E.D. Cal. Oct. 22, 2012)). Moa's discussion of Fick is
incomplete. The case indeed recognizes that—under California
law—an insurance agent normally does not have a duty to
volunteer to the insured that it should procure additional or
different coverage. Fick, 2012 WL 5214346 at *6. But the case
goes on to provide for three exceptions to that rule: when an
agent misrepresents the coverage, when the insured requests a
particular type of coverage, or when the agent assumes an
additional duty by holding him or herself out as an expert in
the field. Id. In those circumstances, an agent may in fact be
liable to the insured for breaching a duty. Id. At present,
there are simply not enough facts alleged for the Court to fully
consider the merits on this point.

The Court does agree, however, with Moa's suggestion
that Plaintiffs have not adequately alleged any negligent breach
of a duty of care owed to Plaintiffs. See Mot. Dismiss 22;

Reply Br. 17-18.  Count VI repeats the same allegations of a "deceptive scheme to collect secret commissions, steer lucrative business to Lloyd's, charge Plaintiffs and the Class improper and inflated premiums, and misrepresent Plaintiffs' and the Class's insurance coverage."  Compl. ¶ 143.  These allegations frame Moa's and Defendants' conduct as scheming, intentional, willful, and deliberate.  There is no allegation, as the Complaint is currently framed, asserting that Moa or Defendants committed any <u>negligent</u> act by breaching a duty of care.  <u>Cf. Pancakes of Haw. Inc. v. Pomare Props. Corp.</u>, 85 Haw. 286, 293, 944 P.2d 83, 90 (1997) (explaining how "[a] willful act differs essentially from a negligent act," as "one is positive and the other negative").  Rather, the Complaint reflects an intentional choice on the part of Defendants to disregard their statutory and common-law duties, not a negligent or careless failure to comply with those duties.  <u>See, e.g.</u>, Compl. ¶¶ 142-44.  Accordingly, the negligence claim fails for the additional reason that its allegations of an intentional, fraudulent, and deceptive scheme fail to support a claim for ordinary negligence.

Likewise, the Court agrees that Plaintiffs have not adequately alleged sufficient facts as to what conduct is attributable to Moa.  <u>See</u> Mot. Dismiss 23.  The Complaint asserts broad allegations of a deceptive scheme and lumps

together the various Broker Defendants without specifying what actions Moa or any individual Defendants took.  In sum, for many of the same reasons Plaintiffs' other claims fail, the allegations against Moa do not support a plausible claim for relief under Count VI.  The Complaint does not allege with particularity facts to support a breach of any duty of care owed by Moa to Plaintiffs.  Accordingly, the Court concludes that Plaintiffs' factual allegations as currently framed are insufficient to support a negligence claim against Moa.  Count VI is dismissed against Moa without prejudice.

### g. Whether Count VII—Declaratory Judgment—States a Claim for Relief

Finally, Plaintiffs seek declaratory relief in the form of a declaration that "(i) Broker Defendants owe a legal duty to perform their required duties and due diligence required under Hawaii law to place surplus lines insurance; (ii) Broker Defendants continue to breach this legal duty by failing to perform their required duties and due diligence; and (iii) Broker Defendants' ongoing breach of this legal duty continues to cause harm."  Compl. ¶ 153.  Under the same cause of action, Plaintiffs ask the Court to "issue corresponding injunctive relief requiring Defendants to cease the unlawful practices alleged herein."  Compl. ¶ 154.

Moa argues that Plaintiffs' declaratory judgment claim "is merely a duplication of their preceding claims and an unnecessary request for the Court to instruct Defendants to follow the law."  Mot. Dismiss 25.  The Court agrees with Moa and holds that Count VII fails to state a claim.

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that in "a case of actual controversy," a court may "declare the rights and other legal relations of any interest party seeking such declaration, whether or not further relief is or could be sought."  McGraw-Edison Co. v. Preformed Line Products Co., 362 F.2d 339, 342 (9th Cir. 1966).  In deciding whether to hear a claim for declaratory relief, courts consider (1) whether the judgment "will serve a useful purpose in clarifying and settling the legal relations at issue" and (2) whether the judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  Id.  As for injunctive relief, this district "follows the well-settled rule that a claim for 'injunctive relief' standing alone is not a cause of action.  Phillips v. Bank of Am., Civ. No. 10-00551 JMS-KSC, 2011 WL 240813, at *4 (D. Haw. Jan. 21, 2011) (collecting cases).  Injunctive relief may be available only as a remedy on an independent cause of action.  Id.

Count VII is deficient for several reasons.  First, "because Plaintiffs' claims are based on allegations regarding

Defendants' past wrongs, a claim under the Declaratory Relief Act is improper and in essence duplicates Plaintiffs' other causes of action." Phillips, 2011 WL 240813 at *4 (collecting cases and dismissing claims for injunctive and declaratory relief). Count VII essentially incorporates by reference the other allegations of the Complaint and identifies "Defendants' actions (and inaction)" as "inadequate and unreasonable." Compl. ¶ 152. These allegations cannot support a cognizable claim for relief under the Declaratory Relief Act. See Phillips, 2011 WL 240813 at *4 (collecting cases holding that declaratory relief is unnecessary when adequate remedies exist under other causes of action).

Second, Count VII does not allege any entitlement to relief for "future interactions between these parties," nor does it purport to seek different relief from that sought through other causes of action. See TK v. Adobe Sys. Inc., No. 17-cv-04595-LHK, 2018 WL 1812200, at *13 (N.D. Cal. Apr. 17, 2018); Servco Pac., Inc. v. SyBridge Global, Inc., Civ. No. 16-00266 DKW-KSC, 2016 WL 6996987, at *10 (D. Haw. Nov. 29, 2016). The only allegations in the Complaint that could remotely be construed as alleging future harm are in ¶ 152 (alleging that Defendants' actions "upon information and belief, remain inadequate and unreasonable") and ¶ 153 (noting "Broker Defendants' ongoing breach of this legal duty"). Neither of

these pleads sufficient facts to support a cognizable,
independent claim for declaratory relief.  See Isagawa v.
Homestreet Bank, 769 F. Supp. 2d 1225, 1231-32 (D. Haw. 2011)
(dismissing claims for declaratory and injunctive relief where
plaintiffs alleged they "suffered and will continue to suffer in
the future unless Defendants wrongful conduct is restrained and
enjoined").

Servco Pacific, cited by Plaintiffs, Opp. Br. 36, does
not compel a different conclusion.  In that case, the
declaratory relief claim was "plainly not duplicative" of a
breach of contract claim because the two sought different
remedies:  one sought damages for material breaches of a
statement of work and the other sought a declaration that the
non-breaching party was not required to compensate the breaching
party for services rendered.  Servco Pac., 2016 WL 6996987 at
*10.  Likewise, Plaintiffs' arguments about a declaration
governing "future interactions between these parties," which
they base on TK v. Adobe Systems, Opp. Br. 35, are not
adequately alleged in the Complaint.

As for injunctive relief, Plaintiffs have likewise not
pleaded sufficient factual allegations to support entitlement to
relief.[20]  Regardless, injunctive relief is not an independent

---

[20]  To be entitled to injunctive relief, a plaintiff must show "(1) that
(Continued . . . )

cause of action and, "if injunctive relief is proper, it will be because Plaintiffs prevail . . . on an independent cause of action." <u>Phillips</u>, 2011 WL 240813 at *5; <u>see also</u> HRS § 481A-4(a) (providing for relief under the UDTPA in the form of an injunction).

For these reasons, Count VII is dismissed against Moa without prejudice.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court GRANTS Moa's Motion to Dismiss, ECF No. 30, insofar as it seeks dismissal of all Plaintiffs' claims against Moa.  Because Plaintiffs may be able to cure some of the pleading defects via amendment, leave to amend is granted and the Complaint is dismissed against Moa without prejudice.  Any amended complaint must be filed within thirty days of the issuance of this Order and should comply with the guidance and standards set forth herein.

---

it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006).

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, September 26, 2019.



Alan C. Kay
Sr. United States District Judge

Aquilina v. Certain Underwriters at Lloyd's, Civ. No. 18-0496-ACK-KJM, Order Granting Defendant Ilikea LLC d/b/a Moa Insurance Services Hawaii's Motion to Dismiss.