IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| STEPHEN G. AQUILINA and LUCINA, J. AQUILINA, Individually and on Behalf of all Others Similarly Situated; AUDRA M. LANE and SCOTT L. LANE, Individually and as Trustees of the Lane Family Trust, dated March 28, 1998, and on Behalf of All Others Similarly Situated, Plaintiffs, v. CERTAIN UNDERWRITERS AT LLOYD'S SYNDICATE #2003; LLOYD'S SYNDICATE #318; LLOYD'S SYNDICATE #4020; LLOYD'S SYNDICATE #2121; LLOYD'S SYNDICATE #2007; LLOYD'S SYNDICATE #1183; LLOYD'S SYNDICATE #1729; BORISOFF INSURANCE SERVICES, INC. d/b/a MONARCH E&S INSURANCE SERVICES; SPECIALTY PROGRAM GROUP, LLC d/b/a SPG INSURANCE SOLUTIONS, LLC; PYRAMID INSURANCE CENTRE, LTD.; ILIKEA LLC d/b/a MOA INSURANCE SERVICES HAWAII; and DOES 1-100, Defendants. | Civ. No. 18-00496-ACK-KJM |

ORDER GRANTING DEFENDANT PYRAMID INSURANCE
CENTRE, LTD.'S MOTION TO DISMISS

Plaintiffs are residents of the Puna District of Hawai'i Island who purchased surplus lines homeowner's insurance policies brokered and underwritten by the various Defendants. In the aftermath of the May 2018 eruption of Kilauea Volcano,

- 1 -

Plaintiffs sustained significant damages to their properties and sought coverage for the losses under their surplus lines policies. Such coverage was denied, primarily based on an exclusion precluding coverage for lava-related damage. Plaintiffs now allege that Defendants carried out a deceptive scheme by which they unlawfully "steered" Plaintiffs and other homeowners into purchasing, through the surplus lines market, what Plaintiffs call "essentially worthless" coverage, with the goal of increasing profits and commissions and lowering payouts for covered claims.

Defendant Pyramid Insurance Centre, Ltd. ("Pyramid") has moved to dismiss the Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons explained in this Order, the Court GRANTS Pyramid's Motion to Dismiss, ECF No. 64, insofar as it seeks dismissal of all Plaintiffs' claims against Pyramid.

**FACTUAL BACKGROUND**

## I.  The Policies

Plaintiffs Stephen and Lucina Aquilina, and Audra and Scott Lane, individually and as Trustees of the Lane Family Trust (collectively, "Plaintiffs"), as well as a putative class of similarly-situated consumers (the "Class"),[1] purchased

---

[1]  The Court notes that the Class has not been certified. References to the "Class" are for purposes of convenience in addressing the allegations in the Complaint.

surplus lines homeowners insurance policies (the "Policies") to insure their residential properties in Hawai'i.  Compl. ¶ 1. The Policies were purchased with the assistance of two retail brokers, Defendants Pyramid Insurance Centre, Ltd. ("Pyramid") and Ilikea LLC d/b/a Moa Insurance Services Hawaii ("Moa"), and one coverholder, Defendant Borisoff Insurance Services, Inc. d/b/a Monarch E&S Insurance Services ("Monarch"), whose assets are owned by Specialty Program Group, LLC d/b/a SPG Insurance Solutions, LLC ("SPG") (collectively, "Broker Defendants").[2/] The Policies were underwritten by several syndicates of Defendants Certain Underwriters at Lloyd's London, including Syndicates #2003, #318, #4020, #2121, #2007, #1183, #1729 (collectively, "Underwriters").  Compl. ¶ 1.

Pyramid and Moa are both retail brokers who placed the Policies and worked on Plaintiffs' behalf to procure homeowner's insurance.  See Compl. ¶¶ 35-36.  Monarch is a licensed surplus lines broker, and coverholder to and authorized agent of Underwriters.  See Compl. ¶¶ 29, 32-34.  As the coverholder, Monarch is listed on the Policies as the point of contact for handling claim-related communications with Plaintiffs.

---

[2/]  As will be discussed herein, the Complaint improperly groups the various Defendants together, often referring to them as "Defendants" or "Broker Defendants."  The Court does its best to distinguish the allegations with respect to each individual party while still accurately describing the allegations as framed in the Complaint.

Compl. ¶¶ 29-34; see also ECF Nos. 30-3 & 30-4.[3/]  The Complaint also alleges that Monarch acted with the assistance of "its authorized agents, including Moa and Pyramid."  Compl. ¶ 29.

## II.  The Surplus Lines Insurance Market

Surplus lines insurance is available as a last resort when the traditional insurance market is "unable or unwilling to provide coverage due to risky characteristics."  Compl. ¶ 39, 46-47.  The surplus lines market exists to provide coverage for high-risk loss exposures when "admitted insurers in the standard market do not have the flexibility" to underwrite such risks.  Compl. ¶ 40.  Surplus lines insurance is provided by non-admitted insurers who are not licensed to operate in Hawai'i and who are not required to obtain approval for their rates, forms, and underwriting rules.  Compl. ¶ 41.  "[S]urplus lines insurers often fill the gap to provide insurance coverage for high-risk perils, but are only permitted to do so under specified circumstances."  Compl. ¶ 41.

The Hawai'i Insurance Code provides that surplus lines insurance may only be placed through a "licensed surplus lines broker."  Compl. ¶ 44 (citing Haw. Rev. Stat. § 431:8-301(a)).  The same provision requires that, "[b]efore placing a surplus

---

[3/]  Before 2017, the Policies listed "Monarch E & S Insurance Services" as the point of contact.  Compl. ¶ 31.  After SPG acquired Monarch in 2017, the Policies listed "Monarch E & S Insurance Services, Division of SPG Insurance Solutions."  Compl. ¶ 31; see also ECF Nos. 30-3 & 30-4.

lines policy, . . . a surplus lines broker must perform a
diligent search of the insurance market" to determine whether
the insurance can be obtained from authorized insurers; whether
the insurance is in addition to or in excess of the amount and
coverage that can be procured from authorized insurers; and
whether the insurance is procured at a rate "lower than the
lowest rate that is generally acceptable to authorized insurers
transacting that kind of business and providing insurance
affording substantially the same protection." Compl. ¶ 45
(quoting Haw. Rev. Stat. § 431:8-301(a)(2)-(4)).

**III. The Steering Scheme**

The Complaint alleges a "steering scheme" through
which the Defendants allegedly sold surplus lines policies to
Plaintiffs and the Class without complying with certain
obligations under Hawai'i law. Compl. ¶ 47. As a result, in
the devastating aftermath of the Kilauea Volcano eruption,
Plaintiffs were denied coverage under their Policies for
significant losses to their homes and properties. Compl. ¶¶ 7-
8, 71-74.

The Complaint alleges that Defendants unlawfully
placed surplus lines insurance instead of more comprehensive
coverage, such as that available through the Hawai'i Property

Insurance Association ("HPIA").[4/]  Compl. ¶¶ 48-52.  According to

the Complaint, Plaintiffs' and the Class's properties qualified

for HPIA insurance, but Defendants were incentivized not to

place HPIA policies because Underwriters' policies were "more

lucrative."  Compl. ¶¶ 48-56, 62-66.

Defendants allegedly misrepresented to Plaintiffs that

the Policies were the only available insurance without having

performed the due diligence required under Hawai'i law to place

surplus lines insurance.  Compl. ¶ 3.  According to Plaintiffs,

Defendants "improperly steered" them into purchasing the

Policies, which contain several exclusions that render coverage

"essentially worthless."  Compl. ¶¶ 1-4.  Plaintiffs highlight

one exclusion in particular, which precludes coverage for "the

peril of lava and/or lava flow causing direct or indirect

physical damage or loss of use of the insured property" (the

"Lava Exclusion").  Compl. ¶ 1.

Plaintiffs allege that, since 2012, Broker Defendants

and Underwriters "steered" Plaintiffs and the Class to purchase

Lloyd's Policies.  Among other things, Defendants artificially

---

[4/]  HPIA coverage is "available to persons who are unable to obtain
basic property insurance in the private market from a licensed insurer."
Compl. ¶ 50 (citing HRS § 431:21-110).  The Hawai'i Legislature, in creating
HPIA, explained the policy underlying the program:  "The purpose of this Act
is to create an entity which will provide appropriately priced basic property
insurance for owners and occupants of property in high risk areas for major
natural disasters.  This extraordinary action is being taken to provide
limited relief to meet the unique and pressing needs of these persons who are
currently unable to obtain any property insurance."  1991 Haw. Sess. Laws Act
284 § 2.

inflated the insurance coverage amounts—such as the home value
or the personal liability coverage—beyond the HPIA coverage
limits so that they could place Plaintiffs and the Class with
Lloyd's surplus lines insurance policies." Compl. ¶¶ 4.
Defendants allegedly knew that they were not allowed to place
Plaintiffs and the Class with surplus lines insurance unless the
coverage amounts exceeded the coverage available through
traditional, non-surplus lines carriers. Compl. ¶ 5. According
to Plaintiffs, the state's own HPIA insurance program could have
provided them with more comprehensive coverage, yet Broker
Defendants placed them with and Underwriters sold them surplus
lines policies anyway. Compl. ¶¶ 5, 56-57.

        This scheme is repeated in similar form throughout the
Complaint to allege wrongdoing by Defendants in procuring the
Policies for Plaintiffs and the Class. Compl. ¶¶ 58, 61, 66-69.
The Complaint asserts that Defendants represented to Plaintiffs
and the Class that they could only purchase insurance through
the surplus lines market, thereby steering them into purchasing
the Policies subscribed by Underwriters. Compl. ¶¶ 58, 67-69.
The scheme in turn enabled Underwriters to increase their
revenues and profits and Broker Defendants to collect
"kickbacks" from Underwriters in the form of increased
commissions. Compl. ¶¶ 6, 59, 69. Plaintiffs allege that the
commissions were "directly tied to the amount of premium steered

to [Underwriters]" to incentivize Broker Defendants to "maximize the amount of surplus lines insurance placed with [Underwriters]." Compl. ¶ 59; see also Compl. ¶ 6.

As a result of the scheme, Plaintiffs were provided less comprehensive coverage because of "numerous exclusions inevitably associated with [Underwriters'] surplus lines homeowner's insurance"—in particular, the Lava Exclusion. Compl. ¶ 60. The Complaint alleges that, for a home located in a particularly risky Lava Zone, a homeowner's policy excluding lava coverage "amount[s] to no coverage at all." Compl. ¶ 1.

The Complaint frames the scheme this way:

> In furtherance of their undisclosed scheme to drive profits and commissions and lower payouts for claims, Defendants improperly steered Plaintiffs and the Class into Lloyd's surplus lines homeowner's insurance policies by: (a) failing to perform various duties and due diligence, including the duties and due diligence required under HRS §431:8-301(a); (b) omitting that non-surplus lines insurance was available; and/or (c) artificially inflating the amount of coverage beyond the coverage limits provided under non-surplus lines insurance, specifically through the government-established Hawaii Property Insurance Association ("HPIA").

Compl. ¶ 4; see also Compl. ¶¶ 93, 104, 119, 127, 138, 143.

Plaintiffs assert that, in the absence of the scheme, they would have insured their homes with more comprehensive insurance and would have had such coverage in the aftermath of the Kilauea eruption. Compl. ¶¶ 70-74. Now, because of the

Lava and other exclusions associated with the Policies,
Plaintiffs and the Class have received essentially worthless
insurance coverage, enabling Underwriters to deny coverage under
the Policies for resulting damages. Compl. ¶¶ 75-76.

### PROCEDURAL BACKGROUND

The named Plaintiffs, proceeding individually and on
behalf of the Putative Class, filed their Complaint on December
21, 2018. See Compl. ECF No. 1. Therein, Plaintiffs assert
seven causes of action:

1. *Count I*. Violation of the Unfair and Deceptive Acts or
   Trade Practices Act ("UDAP"), Hawai'i Revised Statutes
   ("HRS") §§ 480-1 et seq., against all Defendants.
   Compl. ¶¶ 88-101.

2. *Count II*. Violation of the Uniform Deceptive Trade
   Practices Act ("UDTPA") (together with Count I, the "UDAP
   Claims"), HRS §§ 481A-1 et seq., against all Defendants.
   Compl. ¶¶ 102-06.

3. *Count III*. Breach of the implied covenant of good faith
   and fair dealing ("bad faith") against Defendants
   Underwriters, Monarch, and SPG. Compl. ¶¶ 107-20.

4. *Count IV*. Unjust enrichment against all Defendants.
   Compl. ¶¶ 121-28.

5. *Count V*. Breach of fiduciary duties against Broker
   Defendants. Compl. ¶¶ 129-139.

6. *Count VI*.  Negligence against Broker Defendants.

   Compl. ¶¶ 140-49.

7. *Count VII*.  Declaratory judgment against all Defendants.

   Compl. ¶¶ 150-54.

On April 22, 2019, Pyramid filed a Motion to Dismiss. ECF No. 64.  The Parties completed briefing on the Motion on August 27.  ECF Nos. 88 (Opposition Brief) & 97 (Reply Brief). The Court heard oral arguments on the Motion on September 10, 2019.

## STANDARDS

## I.    Rule 12(b)

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

In resolving a Rule 12(b)(6) motion, the Court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff.  Sateriale v.

R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012).

The complaint "must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Mere

conclusory statements in a complaint or "formulaic recitation[s]

of the elements of a cause of action" are not sufficient.

Twombly, 550 U.S. at 555.  Thus, the Court discounts conclusory

statements, which are not entitled to a presumption of truth,

before determining whether a claim is plausible.  Iqbal, 556

U.S. at 678.  However, "[d]ismissal with prejudice and without

leave to amend is not appropriate unless it is clear . . . that

the complaint could not be saved by amendment."  Harris v. Cty.

of Orange, 682 F.3d 1126, 1131 (9th Cir. 2012) (citation

omitted).

**II.  Rule 9(b)**

Where a party alleges fraud or mistake, the Rules

require a heightened pleading standard. In particular, Rule 9(b)

requires that, "In alleging fraud or mistake, a party must state

with particularity the circumstances constituting fraud or

mistake." Fed. R. Civ. P. 9(b).  The Ninth Circuit has held

that "[t]o satisfy Rule 9(b), a pleading must identify 'the who,

what, when, where, and how of the misconduct charged,' as well

as 'what is false or misleading about [the purportedly

fraudulent] statement, and why it is false.'" _Cafasso, U.S. ex_
_rel. v. Gen. Dynamics C4 Sys., Inc._, 637 F.3d 1047, 1055 (9th
Cir. 2011) (alteration in original) (quoting _Ebeid ex rel._
_United States v. Lungwitz_, 616 F.3d 993, 998 (9th Cir.
2010)); _see also Swartz v. KPMG LLP_, 476 F.3d 756, 764 (9th Cir.
2007) ("To comply with Rule 9(b), allegations of fraud must be
specific enough to give defendants notice of the particular
misconduct which is alleged to constitute the fraud charged so
that they can defend against the charge and not just deny that
they have done anything wrong." (quoting _Bly-Magee v._
_California_, 236 F.3d 1014, 1019 (9th Cir. 2001))).

A motion to dismiss a claim grounded in fraud for
failure to plead with particularly under Rule 9(b) is the
functional equivalent of a motion to dismiss under Rule
12(b)(6). _See Vess v. Ciba-Geigy Corp. USA_, 317 F.3d 1097, 1107
(9th Cir. 2003). "As with Rule 12(b)(6) dismissals, dismissals
for failure to comply with Rule 9(b) should ordinarily be
without prejudice. Leave to amend should be granted if it
appears at all possible that the plaintiff can correct the
defect." _Id._

### DISCUSSION

Pyramid argues for dismissal on several grounds. The
Court will address each of these arguments in turn. First,
however, the Court holds that the Complaint as a whole is

subject to Rule 9(b).  Because the allegations in the Complaint
fall short of meeting the heightened "particularity" standard,
and because several causes of action are independently
deficient, the Complaint is dismissed against Pyramid, with
leave to amend.

## I.    Rule 9(b) Heightened Pleading Standard

Although Pyramid does not initially argue for
dismissal under Rule 9(b),[5/] the Court concludes that the
heightened standard applies because the same fraudulent conduct
underlies all the claims.  And because the pleading does not
satisfy Rule 9(b)'s particularity requirement, the Complaint
must be dismissed.

### a. Rule 9(b) Applies to the Complaint as a Whole Because the Allegations are Grounded in a Unified Course of Fraudulent Conduct

Rule 9(b) requires that, "[i]n alleging fraud or
mistake, a party must state with particularity the circumstances
constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  When an
"entire claim within a complaint[] is grounded in fraud and its
allegations fail to satisfy the heightened pleading requirements
of Rule 9(b), a district court may dismiss the complaint or
claim."  <u>Vess</u>, 317 F.3d at 1107.  Under established Ninth

---

[5/]    In the Reply Brief—after not raising it in the Motion to Dismiss—
Pyramid argues that Rule 9(b) applies to the entire Complaint.  Reply Br. 1-
2.  It purports to respond to Plaintiffs' concession in their Opposition that
rule 9(b) applies to certain claims.

Circuit law, fraud need not be an essential element of a claim to subject it to the heightened pleading standard of Rule 9(b):

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a <u>unified course of fraudulent conduct</u> and <u>rely entirely on that course of conduct as the basis of a claim</u>. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).

<u>Id.</u> at 1103-04 (emphasis added).

Here, Plaintiffs' claims are based on a single deceptive and fraudulent "scheme" to "steer" Plaintiffs into purchasing illusory surplus lines insurance that they otherwise would not have purchased. The primary allegations are as follows:

- Underwriters had a relationship with Broker Defendants;

- Broker Defendants engaged in a kickback scheme whereby they "wrongly steered" Plaintiffs into purchasing the Policies subscribed to by Underwriters;

- Broker Defendants received "unwarranted commissions" from Underwriters;

- Broker Defendants failed to perform duties and due diligence required under Section 301 of the Surplus Lines

Act, HRS § 431:8-301 ("Section 301"), including by

omitting that non-surplus lines insurance was available;

- Broker Defendants artificially inflated the amount of
  coverage beyond the limits provided under non-surplus
  lines insurance;

- Broker Defendants and Underwriters engaged in conduct of
  "misrepresenting, concealing, steering, or otherwise
  omitting" information to mislead Plaintiffs and the
  Class.

Compl. ¶¶ 82, 93, 104.  Plaintiffs describe Defendants' conduct
as an "integrated, misleading practice to homeowners in Hawaii
that includes uniform misrepresentations that misled Plaintiffs
and the other members of the Class."  Compl. ¶ 82.

      These allegations, which underly all seven claims
against Pyramid, are based on "a unified course of fraudulent
conduct."  See Vess, 317 F.3d at 1103-04.  Plaintiffs repeat the
same allegations of the "scheme" throughout the Complaint and
emphasize that they were "steered" into purchasing illusory
Policies.  The allegations are grounded in the same fraudulent
conduct, and the Court must then review all the allegations
under Rule 9(b)'s more stringent standard.

      That each individual cause of action against Pyramid
does not require fraud as an element cannot save those claims
from the strict pleading requirements of Rule 9(b).  See Vess,

317 F.3d at 1103-04.  First, for example, bad faith and unjust enrichment do not typically require a showing of fraud.[6/]  Yet the Complaint frames the allegations as asserting one underlying, fraudulent and "deceptive scheme."  See Compl. ¶ 119 (bad faith claim alleging "deceptive" scheme where Defendants "artificially inflated coverage amounts" and "manipulate[ed] the surplus lines market" to increase profits and commissions); ¶ 124 (unjust enrichment claim alleging that "Defendants deceptively marketed and sold surplus lines insurance to Plaintiffs and the Class").  Doing so triggers Rule 9(b) with respect to both these claims.  See Puri v. Khalsa, 674 F. App'x 679, 690 (9th Cir. 2017) (holding that where an "unjust enrichment claim is based on fraud, it too is subject to Rule 9(b)" (citing Vess, 317 F.3d at 1103-04)); In re Arris Cable Modem Consumer Litig., No. 17-CV-01834-LHK, 2018 WL 288085, at *10 (N.D. Cal. Jan. 4, 2018) (applying Rule 9(b) to unjust enrichment claim); Mostowfi v. I2 Telecom International, Inc., No. 03-5784 VRW, 2005 WL 8162717, at *11 (N.D. Cal. May 23, 2005) (same for breach of good faith and fair dealing claim).

---

[6/]  The Court notes that the Complaint does not appear to assert a bad faith cause of action against Pyramid.  See Compl., Count III ("Against Defendants Lloyd's, Monarch, and SPG").  However, because Pyramid addresses the claim on the merits in its Motion to Dismiss, the Court includes it here to clarify that it is indeed subject to Rule 9(b).

As for the UDAP Claims, allegations made under the "unfair" prong do not ordinarily require compliance with the heightened pleading standard.[7/] See Bald v. Wells Fargo Bank, N.A., 688 F. App'x 472, 476 (9th Cir. 2017); Soule v. Hilton Worldwide, Inc., 1 F. Supp. 3d 1084, 1090 (D. Haw. 2014). But that is only true when the claims do not assert fraudulent conduct. See Ryan v. Salisbury, 380 F. Supp. 3d 1031, 1049 (D. Haw. 2019); Soule, 1 F. Supp. 3d at 1090. Both the Ninth Circuit and this Court have held that state-law UDAP claims must be pleaded with particularity when the claims are based on fraudulent conduct. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1122 (9th Cir. 2009) (holding that claims under California's UDAP laws had to be pleaded with particularity); Smallwood v. NCsoft Corp., 730 F. Supp. 2d 1213, 1232-33 (D. Haw. 2010) (holding that claims under Hawai'i's UDAP laws were based on "fraudulent concealment" and thus required pleading with particularity); see also Long v. Deutsche Bank Nat'l Tr. Co., No. 10-cv-00359 JMS/KSC, 2011 WL 2650219, at *7 (D. Haw. July 5, 2011) ("[W]here a chapter 480 claim is based on fraudulent acts, a plaintiff must plead with particularity.").

---

[7/] It is well established in the Ninth Circuit that Rule 9(b)'s particularity requirement applies to state-law causes of action. See Vess, 317 F.3d at 1103; Smallwood v. NCsoft Corp., 730 F. Supp. 2d 1213, 1232 (D. Haw. 2010).

Here, the only possible basis for liability under UDAP that Plaintiffs have alleged sounds in fraud.  Plaintiffs have pointed to no factual allegations in the Complaint—and none are evident to the Court—showing that they are alleging anything other than an overarching deceptive scheme.  Nor have Plaintiffs shown that the allegations of deceit can be separated from allegations of resulting unfairness.  Thus, the allegations in Counts I and II that Plaintiffs were "steered" or "deceived" are the only possible basis for liability under the Hawai'i UDAP Claims, as the Complaint is currently framed.  Cf. Long, 2011 WL 2650219 at *7 ("[A]t least part of Plaintiff's [UDAP] claim must sound in fraud, but the actual allegations as to Defendants' conduct are so vague that the court cannot determine what acts Plaintiff alleges are fraudulent." (footnote omitted)).

As to Count V, breach of fiduciary duties, the underlying allegations also sound in fraud.  See, e.g., Compl. ¶¶ 133-35 (describing the "deceptive" and "fraudulent scheme" carried out by Defendants "to collect secret commissions, steer lucrative business to Lloyd's, charge Plaintiffs and the Class improper and inflated premiums, and misrepresent Plaintiffs' and the Class's insurance coverage").  Thus, to the extent that they "sound in fraud," the allegations of Count V are also subject to the heightened Rule 9(b) standard.  See Gibson v. Credit Suisse AG, No. 1:10 CV 001-EJL-

REB, 2012 WL 1253007, at *6 (D. Idaho Mar. 30, 2012) (holding that plaintiff's breach of fiduciary duty claim "sounds in fraud thereby necessitating that it satisfy Rule 9(b)'s heightened pleading standard" (citing Kearns, 567 F.3d at 1124)).

Finally, Count VI asserts a claim for negligence, alleging that Broker Defendants owed a duty to Plaintiffs and the Class stemming from Section 301 to perform "due diligence" to determine whether comparable non-surplus lines insurance was available.  Compl. ¶ 142.  Count VI asserts that Broker Defendants "failed to use ordinary care to understand the terms, conditions, and costs of the Lloyd's policy and were grossly negligent."  Compl. ¶ 147.  Plaintiffs again allege the same conduct and the same "deceptive scheme."  Compl. ¶¶ 142-43.

Fraud is obviously not an essential element of a negligence claim.  But the allegations in Count VI sound in fraud, bringing them within the scope of Rule 9(b).  See Vess, 317 F.3d at 1103-04; see also Waikiki Trader Corp. v. Rip Squeak Inc., No. 09-00344 ACK-BMK, 2010 WL 11530615, at *14 (D. Haw. Apr. 15, 2010) (striking "negligence allegations" because the negligence claim "does not allege any separate facts but rather is based on the same alleged misrepresentations by Plaintiff" and thus is "grounded in fraud and subject to Rule 9(b)").  While it might seem counterintuitive to apply Rule 9(b) to a claim for negligence, Ninth Circuit case law is clear that

allegations of a "unified course of fraudulent conduct" may subject claims—even those that ordinarily would not require a showing of fraud—to the heightened pleading standard. See Vess, 317 F.3d at 1103-04.

Here, the factual allegations in Count VI rest on a single deceptive and fraudulent scheme that was intentionally and willfully carried out by Defendants. Plaintiffs do not allege conduct or facts to distinguish negligent activities from fraudulent activities. Cf. Smallwood, 730 F. Supp. 2d at 1234-35 (declining to dismiss negligence claims for failing to comply with Rule 9(b) because the negligence claims were "separate and distinct from Plaintiff's fraud allegations"). In fact, the Complaint describes all the conduct alleged as intentional and willful, and as serving the same purpose: to further the deceptive and fraudulent scheme.

The few paragraphs of the Complaint that use words associated with negligence—e.g., "ordinary care" or "grossly negligent"—would not pass muster under Rule 8(a) anyway. See Compl. ¶¶ 146-49. These allegations are conclusory at best and supported by only "formulaic recitation[s] of the elements of [the] cause of action." Twombly, 550 U.S. at 555. Neither Rule 8(a) nor Rule 9(b) allows such conclusory pleading.

To summarize, Rule 9(b) applies to all seven causes of action alleged against Pyramid, even those claims that independently do not require a fraudulent element.[8/]

### b. Applying the Heightened Standard of Rule 9(b), the Complaint Fails to Plead Facts With Adequate Particularity

Having decided that Rule 9(b) applies to the Complaint as a whole, the Court now turns to whether the allegations against Pyramid comply with the heightened pleading standard. For the reasons discussed below, they do not.

### i. Rule 9(b) Legal Standard

"Rule 9(b) requires particularized allegations of the circumstances constituting fraud." In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1547–48 (9th Cir. 1994) (en banc), superseded by statute on other grounds as recognized in Ronconi v. Larkin, 253 F.3d 423, 429 n.6 (9th Cir. 2001). The pleading must provide an "account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." See Swartz, 476 F.3d at 764 (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Vess, 317 F.3d at 1106. Plaintiffs may

---

[8/] This includes Count VII for declaratory judgment, which merely seeks declaratory relief based on the same fraudulent conduct alleged throughout the Complaint. See Compl. ¶¶ 150-54.

not simply plead neutral facts to identify the transaction, but rather must also set forth what is false or misleading about a statement, and why it is false. <u>See</u> <u>GlenFed</u>, 42 F.3d at 1548. Moreover, group pleading is improper under Rule 9(b):

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud. In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.

<u>Swartz</u>, 476 F.3d at 764–65 (alterations in original) (internal citations omitted).

Rule 9(b)'s requirements may be relaxed for matters that are exclusively within the opposing party's knowledge. <u>Rubenstein v. Neiman Marcus Grp. LLC</u>, 687 F. App'x 564, 567 (9th Cir. 2017) (quoting <u>Moore v. Kayport Package Express, Inc.</u>, 885 F.2d 531, 540 (9th Cir. 1989)). For those matters, "[a]llegations of fraud based on information and belief may suffice . . . so long as the allegations are accompanied by a statement of the facts upon which the belief is founded." <u>Puri</u>, 674 F. App'x at 687 (citing <u>Wool v. Tandem Computs. Inc.</u>, 818 F.2d 1433, 1439 (9th Cir. 1987), <u>overruled on other grounds as stated in</u> <u>Flood v. Miller</u>, 35 F. App'x 701, 703 n.3 (9th Cir. 2002)).

### ii. The Alleged "Scheme" is Not Pleaded with Adequate Particularity

The Complaint repeats a common refrain: Defendants engaged in a scheme to "steer" Plaintiffs to purchase "virtually worthless" surplus lines insurance so Broker Defendants could collect unlawful commissions. See gen. Compl. Yet the Complaint fails to allege specific facts plausibly giving rise to Plaintiffs' suspicions of a "scheme," other than that they ended up with unsatisfactory coverage. The Complaint contains almost no particulars—including the who, what, when, where, and how—of the alleged "scheme." The allegations do not address who made what specific representations or statements to Plaintiffs and when; what representations or statements Plaintiffs relied on; how Underwriters' paying commissions to brokers constitutes "improper kickbacks"; and how Plaintiffs were "steered" into purchasing the Policies. See Siegel v. Shell Oil Co., 480 F. Supp. 2d 1034, 1043 (N.D. Ill. 2007) (dismissing complaint because plaintiffs failed to allege "any of the particulars surrounding the[] averments of fraud").

Relevant to Pyramid, the Complaint says nothing about its specific acts or what it did or did not do. For example, the Complaint alleges that, "[i]n reasonable reliance upon the representations made to Plaintiffs and the Class by Lloyd's, Monarch, and SPG, and their agents Moa and Pyramid, Plaintiffs

and the Class regularly paid valuable consideration in the form
of a premium to bind coverage and be included as a named insured
under that policy." Compl. ¶ 110. This allegation says nothing
about which party made what representations to Plaintiffs, and
what those representations were.

While the Court recognizes that Rule 9(b) is relaxed
as to matters within the opposing party's knowledge, Opp. Br. 9,
that does not excuse Plaintiffs from alleging some <u>facts</u> that
inform their allegations. <u>See Puri</u>, 674 F. App'x at 687 (citing
<u>Wool</u>, 818 F.2d at 1439). Here, Plaintiffs are grasping at
straws to point to particularized "facts" giving rise to their
conclusion that <u>Pyramid</u> participated in an alleged unlawful
"scheme" to mislead Plaintiffs. While the Court acknowledges
and is troubled by the allegations that Broker Defendants
artificially inflated Plaintiffs' property values to preclude
them from qualifying for HPIA coverage, Compl. ¶¶ 50-54, 62-68,
Plaintiffs have not "identifie[d] the specific circumstances
constituting fraud that put[] [Pyramid] on notice" so it can
adequately respond to the allegations against it. <u>See Muriu v.</u>
<u>W. Coast Life Ins. Co.</u>, No. CV 17-380-GW(SKx), 2017 WL 10592124,
at *5 (C.D. Cal. May 25, 2017).

The Court is also not persuaded that at least some
information surrounding the specific actions or representations
by Pyramid is not within Plaintiffs' control. Plaintiffs allege

that they worked with their retail brokers—Pyramid and Moa—to procure the at-issue Policies and other coverage for their homes.  Part of the alleged "scheme" involved Broker Defendants' apparent failure to make certain disclosures or perform due diligence required under Rule 301.  Surely Plaintiffs can at least allege what specific representations were made to them and by whom, or who told Plaintiffs that they needed to purchase surplus lines insurance and when.  As currently drafted, the Complaint does not allege with particularity how Pyramid misled Plaintiffs.  The Complaint is based on a theoretical "scheme" but fails to provide the requisite factual basis.

To summarize, the Complaint has not pleaded facts with specificity to satisfy Rule 9(b).  Plaintiffs' "faint sketch of fraud is insufficient," <u>Siegel</u>, 480 F. Supp. 2d at 1043, and the Complaint does not comply with the particularity requirement of Rule 9(b).[9/]

---

[9/]  Notwithstanding the Complaint's shortcomings under Rule 9(b), the Court reiterates its statement made at the hearing that the circumstances here are concerning.  It is difficult to understand how Plaintiffs—residents of designated, high-risk lava zones—could have ended up with homeowner's insurance policies expressly excluding the coverage that they presumably sought.  It is equally troubling that Plaintiffs were allegedly not made aware that they may have qualified for non-surplus lines insurance, including under the HPIA program, which may have provided coverage for at least some of the losses Plaintiffs now face.  This is particularly concerning with respect to Pyramid, as the retail broker who worked closely with Plaintiffs in procuring insurance coverage.  That said, these concerns are not enough under Rule 9(b), and any amended complaint must comply with the Federal Rules.

### iii. The Complaint Engages in Impermissible "Group Pleading"

The Complaint also uses impermissible group pleading, which violates not only Rule 9(b), but also Rule 8(a).  See Sollberger v. Wachovia Secs., LLC, No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *4-5 (C.D. Cal. June 30, 2010) (discussing pleading requirements of Rule 8(a), Rule 9(b), Iqbal, and Twombly to describe improper "shotgun pleading").  As Pyramid argues throughout its Motion, the Complaint improperly lumps Pyramid together with the other Broker Defendants and fails to plead specific acts by Pyramid to support the claims.  See, e.g., Mot. Dismiss 10, 19-21.  The Court agrees that Plaintiffs' failure to differentiate between the various Defendants is inadequate under both Rule 8(a) and Rule 9(b) and dismissal is warranted on that ground as well.

"Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  Swartz, 476 F.3d at 764-65 (quoting Haskin v. R.J. Reynolds Tobacco Co., 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)); see also Wieck v. CIT Grp., Inc., 308 F. Supp. 3d 1093, 1126 (D. Haw. 2018).  A complaint governed by Rule 9(b) must "detail with

particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." <u>Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.</u>, 940 F.2d 397, 405 (9th Cir. 1991).

Here, the Complaint improperly lumps the various Broker Defendants together, without explaining each Defendant's—or group of similarly situated Defendants'—particular role in the steering scheme.  <u>See</u> <u>Destfino v. Reiswig</u>, 630 F.3d 952, 958-59 (9th Cir. 2011) (discussing approvingly the district court's dismissals based on plaintiffs' "everyone did everything" allegations); <u>Wieck</u>, 308 F. Supp. 3d at 1126 (dismissing RICO claims because the complaint improperly lumped defendants together without explaining their roles in the enterprise).  The Complaint generally refers to "Broker Defendants," or it refers to the "Defendants" collectively.  Doing so violates Rules 8(a) and 9(b) by failing to attribute specific misconduct to Pyramid.  <u>See</u> <u>Swartz</u>, 476 F.3d at 765 (dismissing complaint that was "shot through with general allegations that the 'defendants' engaged in fraudulent conduct but attribute[d] specific misconduct only to [some defendants]"); <u>Wieck</u>, 308 F. Supp. 3d at 1126 (holding that group pleading did not comply with Rule 9(b)); <u>Ciuffitelli for Tr. of Ciuffitelli Revocable Tr. V. Deloitte & Touche LLP</u>, No. 3:16-cv-580-AC, 2017 WL 2927481, at *14 (D. Or. Apr. 10, 2017)

("Plaintiffs fail to satisfy the requirements of either Rule 9(b) or Rule 8[(a)] by referring generally to [a group of different entities] making misrepresentations and omissions." (internal quotation marks omitted)).

The agency theories that Plaintiffs purport to rely on do not justify the Complaint's treatment of the Defendants as interchangeable. Agency relationships between Defendants do not exempt Plaintiffs from the federal pleading requirements, especially when the facts underlying those relationships are not plausibly alleged in the Complaint. In fact, the only agency-related facts in the Complaint are general allegations of the business relationships between the parties. The relationships between insurance companies, syndicates, brokers, and the like are notoriously complex. While Plaintiffs need not specify facts beyond their purview, their allegations must at least describe the alleged "role of each defendant in the fraud." Comwest, Inc. v. Am. Operater Servs., Inc., 765 F. Supp. 1467, 1471 (C.D. Cal. 1991).

Regardless, conclusory allegations that do not identify the role of the defendants do not comply with Rule 8(a) or Rule 9(b). Id.; see also Twombly, 550 U.S. at 555. In Swartz, for example, the Ninth Circuit held that conclusory allegations and group pleading under purported agency theories failed to comply with Rule 9(b). 476 F.3d at 765. The

complaint alleged that the "defendants" engaged in fraudulent misconduct; that some defendants were acting as agents of others; and that some defendants "knew" other defendants were making false statements to clients.  Id.  The Ninth Circuit held that, without any stated factual basis, these conclusory allegations were "insufficient as a matter of law."  Id.

Likewise, in Comwest, a district court in this circuit dismissed fraud claims as deficient because the complaint "made only conclusory allegations that 'defendants . . . , and each of them, directly and indirectly, aiding and abetting each other, and acting in concert, and through each other . . . fraudulently induced plaintiff [to enter the sales contractor agreements]."  765 F. Supp. at 1471 (alterations in original).  These allegations of overlapping liability were "patently inadequate."  Id.  According to the court, "[i]t is not enough for plaintiffs to make group allegations . . . because collective responsibility is not self-evident.  Each defendant is entitled to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with."  Id.

For the reasons stated, the Complaint engages in impermissible group pleading and fails to comply with the plausibility requirement of Rule 8(a) and the particularity requirement under Rule 9(b).  The Complaint is therefore

dismissed against Pyramid.

## II. Analysis of Plausibility of Each Cause of Action

As stated, dismissal is appropriate because the Complaint does not plead with particularity allegations of Pyramid's purported fraudulent conduct. Nonetheless, for the sake of completeness, the Court will address each individual count based on Pyramid's arguments for dismissal on the merits.

### a. Whether Count I—UDAP, HRS § 480-2 Violation—States a Claim for Relief

Count I of the Complaint alleges that Defendants' conduct and participation in the steering scheme violated Hawai'i's UDAP statute, HRS § 480. HRS § 480-2(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." To state a UDAP claim, a consumer[10] must allege: (1) a violation of HRS § 480-2; (2) injury to plaintiff's business or property resulting from such violation; and (3) proof of the amount of damages. <u>Lizza v. Deutsche Bank Nat. Trust Co.</u>, 1 F. Supp. 3d

---

[10] HRS § 480-1 defines "consumer" as "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." In its Reply Brief, Pyramid raises for the first time an argument that Plaintiffs are not "consumers" under Chapter 480. Reply Br. 6-7. The Court generally does not consider substantive arguments raised for the first time in a reply and it will not do so here. <u>See</u> <u>Hi-Tech Rockfall Constr. Inc. v. Cty. of Maui</u>, No. CV 08-00081 DAE-LEK, 2009 WL 529096, at *18 n.9 (D. Haw Feb. 26, 2009) (citing Local Rule 7.4). Regardless, Plaintiffs have sufficiently pleaded—for purposes of the motion to dismiss phase—that they are "consumers" under UDAP. <u>See</u> Compl. ¶¶ 1, 90, 124; <u>see also</u> <u>id.</u> ¶¶ 35-36 (alleging that Plaintiffs "bought" and Pyramid and Moa "sold" the Policies).

1106, 1121 (D. Haw. 2014) (citing <u>Haw. Med. Ass'n v. Haw. Med.</u>
<u>Serv. Ass'n, Inc.</u>, 113 Haw. 77, 113-14, 148 P.3d 1179, 1215-16
(2006)); <u>see also</u> HRS § 480-13(b)(1)); <u>In re Kekauoha-Alisa</u>, 674
F.3d 1083, 1092 (9th Cir. 2012).  A private cause of action
exists under the statute.  HRS § 480-2(e) ("Any person may bring
an action based on unfair methods of competition declared
unlawful by this section.").

### i. Whether Count I Fails to Comply With the Federal Pleading Standards

As an initial matter, the Court reiterates that Count
I is dismissed because it fails to comply with the federal
pleading standards set forth in Rules 8(a) and 9(b).  The
allegations underlying Count I fail to plead with particularity
facts to support a UDAP claim.  The allegations are nothing more
than a reiteration of certain legal elements and phrases, some
quoted directly from Hawai'i Supreme Court case law.  Such
"[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice [on a
12(b)(6) motion]." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550
U.S. at 557)).  And applying Rule 9(b), Count I fails to allege
with any particularity the "who, what, when, where, and how of
the misconduct charged." <u>Vess</u>, 317 F.3d at 1106.  The Complaint
is otherwise devoid of any allegations (particularized or
otherwise) of misrepresentations, omissions, or deceptive

practices necessary to sustain a UDAP claim for deception.

The Complaint also characterizes Underwriters' and Broker Defendants' relationship as "unlawful" and part of the "deceptive" "scheme." Yet it alleges no facts to support those characterizations, other than Plaintiffs' dissatisfaction with their insurance coverage and suspicions that a scheme existed. These suspicions are not sufficient for a claim to survive the Rule 8(a) standard, let alone the heightened Rule 9(b) standard. See Twombly, 550 U.S. at 555 ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" (quoting 5 C. Wright & A. Miller Fed. Prac. & Proc. § 1216, pp. 235-36 (3d ed. 2004)) (alteration in original)). Without more, broad allegations that Defendants misrepresented, concealed, steered, or omitted information fall short of alleging more than a "sheer possibility" of unlawful conduct, much less of meeting the heightened "particularity" requirement under Rule 9(b). See Twombly, 550 U.S. at 555.

Accordingly, the vague and conclusory allegations of Count I fail to meet both the "particularity" standard of Rule 9(b) and the "plausibility" standard of Rule 8(a). The Complaint is properly dismissed on that basis.

### ii. Whether Count I is an Improper Attempt to Bring a Private Cause of Action Under the Insurance Code

Count I is properly dismissed on the sole ground that it fails to comply with the federal pleading standards. The Court will nonetheless address Pyramid's alternative arguments on the merits of Count I, which relate to Plaintiffs' entitlement to sue for unfair and deceptive acts and practices in the insurance context.[11/]

Pyramid argues first that Count I is an improper attempt to bring a private right of action for alleged breaches of the Insurance Code. Mot. Dismiss 5-6. It argues that Plaintiffs' UDAP claim, while characterized as a claim under HRS § 480-2, is really predicated on violations of the Insurance Code—primarily, Section 301 of the Surplus Lines Act. See id. at 6.

It is well settled that there is no private right of action for violations of the Hawaiʻi Insurance Code. See The Best Place, Inc. v. Penn Am. Ins. Co., 82 Haw. 120, 126, 920 P.2d 334, 340 (Haw. 1996) ("Article 13 of the Hawaiʻi Insurance Code does not authorize a private cause of action pursuant to

---

[11/] Nothing in the forthcoming discussion should be construed as a final determination on the merits. The Court is merely analyzing the legal issues raised by Pyramid's Motion to Dismiss and opining on these alternative arguments for dismissal. By implication of the Court's ruling that the Complaint fails to comply with the federal pleading rules, additional factual allegations are needed to move forward with any claim. Whether such claims are legally viable based upon facts that might eventually be alleged is a question the Court cannot answer today.

its administrative remedies."); Hunt v. First Ins. Co. of Haw.
Ltd., 82 Haw. 363, 372, 922 P.2d 976, 985 (Ct. App. 1996)
(holding that "no private cause of action exists under HRS
Chapter 431, Article 13"). None of the parties disputes this
principle. Pyramid, however, implies that Count I is
essentially a claim under Article 13 of the Insurance Code
disguised as a general UDAP claim. See Mot. Dismiss 7.
Plaintiffs respond that the conduct alleged to constitute
Section 301 violations was inherently unfair and deceptive,
supportive of a claim under § 480-2. Opp. Br. 16-18. In other
words, the parties disagree on whether conduct that allegedly
violates the Insurance Code can support a valid cause of action
under UDAP § 480-2. Hawai'i case law suggests that it can.

This circuit has held that the Hawai'i Insurance Code
does not preempt a private right of action under HRS § 480-2.
Jenkins v. Commonwealth Land Title Ins. Co., 95 F.3d 791, 796-98
(9th Cir. 1996) (citing Gonsalves v. First Ins. Co. of Haw.,
Ltd., 55 Haw. 155, 516 P.2d 720 (Haw. 1973), and Best Place, 82
Haw. 120, 920 P.2d 334 (Haw. 1996)). In Jenkins, the Ninth
Circuit reasoned that the Hawai'i Supreme Court had reviewed
insurance-related UDAP claims on the merits without any
indication that the Insurance Code preempted liability. Id. at
797. Following the Ninth Circuit's guidance, this district has
recognized private causes of action in the insurance context

under Hawaiʻi's general UDAP statute.  See, e.g., Wieck, 308 F. Supp. 3d at 1124 (denying motion to dismiss UDAP claim against Lloyd's); Donaldson v. Liberty Mut. Ins. Co., 947 F. Supp. 429, 432 (D. Haw. 1996) (holding that the Ninth Circuit's prediction that the Hawaiʻi Supreme Court would find UDAP claims not preempted by the Hawaiʻi Insurance Code "binds this court").

Pyramid's reliance on Hunt and Hough to undermine Jenkins is unpersuasive.  See Mot. Dismiss 6; Reply Br. 5-7. Moa suggests that these cases call Jenkins into question and "support[] a finding by this Court that the Hawaiʻi Insurance Code preempts a claim under HRS § 480-2."  Id. at 10.  To the contrary, the three cases are consistent.  If anything, Hunt and Hough cut against Pyramid's argument that § 480-2 claims are preempted by the Insurance Code.  Both, after all, dismiss the § 480 claims on grounds other than preemption.

Hunt and Hough stand for the familiar proposition that no private cause of action exists under the Hawaiʻi Insurance Code.  Hough v. Pac. Ins. Co., Ltd., 83 Haw. 457, 470-71, 927 P.2d 858, 871-72 (1996); Hunt, 82 Haw. at 372, 922 P.2d at 985. This is not inconsistent with Jenkins, which recognized that same point.  See Jenkins, 95 F.3d at 797 n.4 (noting that plaintiff "would not be entitled to bring a private action . . . under § 431:13-102" because "the statute was intended as a regulatory one, enforceable by the insurance commissioner, and

not one authorizing private remedies to aggrieved individuals"). In any event, the plaintiffs in Hough and Hunt also brought claims under HRS § 480. See Hough, 83 Haw. at 470, 927 P.2d at 871; Hunt, 82 Haw. at 372-73, 922 P.2d at 985-86. And the Hawai'i Supreme Court and the Intermediate Court of Appeals ("ICA") respectively dismissed those claims not because they amounted to private causes of action under or were preempted by the Insurance Code, but because the plaintiffs were not "consumers" with standing to assert a claim under § 480. See Hough, 83 Haw. at 470, 927 P.2d at 871 ("Hough is not a consumer and therefore lacks standing to maintain a private cause of action pursuant to HRS § 480-13."); Hunt, 82 Haw. at 372-73, 922 P.2d at 985-86 (holding that plaintiff had not alleged that she "purchased or attempted to purchase, or was solicited to purchase goods or services from First Insurance," and "[b]ecause she failed to allege the foregoing, Hunt is not a 'consumer' as defined by HRS Chapter 480 and, therefore, lacks standing to maintain a private cause of action pursuant to HRS § 480-13.").

In short, the Court is not convinced that Hawai'i does not recognize a private right of action under § 480-2 in the insurance context. Nor is it convinced that conduct violative of both the Insurance Code and § 480-2 cannot support a UDAP claim. The Court thus rejects Pyramid's argument that Count I is an improper attempt to bring a private cause of action under

or preempted by the Insurance Code, and the Court would not dismiss Count I on this basis.

### iii. Whether Count I is Barred by HRS § 480-11(b)

Pyramid's final argument is that Plaintiffs' UDAP claim is barred by HRS § 480-11(b). Mot. Dismiss 8-10. HRS § 480-11(b) exempts from the scope of UDAP any "transaction in the business of insurance" if it is "expressly permitted" by the insurance laws of Hawai'i:

> [Chapter 480] shall not apply to any transaction in the business of insurance that is in violation of any section of this chapter if the transaction is expressly permitted by the insurance laws of this State; provided that nothing in this section shall render this chapter inapplicable to any agreement to boycott, coerce, or intimidate or any act of boycott, coercion, or intimidation.

HRS § 480-11(b). Pyramid maintains that the insurance transactions here fall within the scope of § 480-11(b) because surplus lines insurance is generally permitted and regulated by Hawai'i law. Mot. Dismiss 8; Reply Br. 7-9. Plaintiffs respond by pointing to their allegations that the transactions violated the Surplus Lines Act, which is part of Hawai'i's Insurance Code. Opp. Br. 13. In other words, the transactions here were not "expressly permitted by the insurance laws of [Hawai'i]" because they technically violated those laws. See id. at 13-15.

The Court begins by noting that neither party has offered any case—and the Court is not aware of any published

state or federal court decision—applying § 480-11(b) at all, let alone to exempt an insurance broker from liability under UDAP.[12/] To the contrary, claims under Hawaiʻi's general UDAP law often have been recognized in the insurance context. See, e.g., Yokoyama v. Midland Natʼl Life Ins. Co., 594 F.3d 1087, 1092-94 (9th Cir. 2010); Wieck, 308 F. Supp. 3d at 1124. In addition, the Ninth Circuit has, for all intents and purposes, predicted that the Hawaiʻi Supreme Court would recognize that a private right of action exists under UDAP § 480-2 for claims arising out of insurance transactions.[13/] See Jenkins, 95 F.3d at 796-98. Although Jenkins concluded that the Insurance Code would not preempt general UDAP liability and did not specifically mention HRS § 480-11(b), it would seem to this Court that prematurely dismissing Plaintiffs' UDAP claim because it involves insurance transactions would be "implicitly inconsistent with the treatment of § 480-2" under existing law. Id.

      With this backdrop in mind, the Court now turns to the interpretation and application of § 480-11(b) in these circumstances. Having looked to the limited case law addressing similar statutes in other jurisdictions and having considered

---

[12/] The Ninth Circuit in Spinner Corp. v. Princeville Dev. Corp., 849 F.2d 388, 390 (9th Cir. 1988) noted in passing that UDAP "specifically exempts certain groups and activities from its coverage such as . . . insurance transactions." But that is all the court had to say, and the case focused on whether securities transactions were similarly exempt. See id.

[13/] The court in Jenkins did not expressly address the possible effect of § 480-11(b) on a UDAP cause of action in the insurance context, even though the statutory language was identical to the language in effect today.

Hawai'i courts' prior treatment of UDAP claims in the insurance context, the Court predicts that the Hawai'i Supreme Court would find Plaintiffs' interpretation of § 480-11(b) persuasive. Accordingly, the Court would not dismiss Plaintiffs' UDAP claim as barred by § 480-11(b).

Appellate courts in several states—including Arkansas, Tennessee, and Colorado—have addressed their state's own respective statutes that operate much like HRS § 480-11(b) purports to operate. See, e.g., Air Evac EMS, Inc. v. USAble Mut. Ins. Co., 533 S.W.3d 572, 573-76 (Ark. 2017) (interpreting safe-harbor provision exempting "[a]ctions or transactions permitted under laws administered by the Insurance Commissioner . . ." (emphasis added)); Showpiece Homes Corp. v. Assurance Co. of Am., 38 P.3d 47, 56-57 (Colo. 2001) (same for provision exempting "[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency" (emphasis added)); Skinner v. Steele, 730 S.W.2d 335, 337-38 (Tenn. Ct. App. 1987) (same for provision exempting "[a]cts or transactions required or specifically authorized under the laws . . .").

In each case, the courts applied the so-called "specific-conduct rule" to hold that the exemptions precluded claims only when the conduct or transactions were "specifically permitted or authorized under laws administered by a state or

federal regulatory body or officer." <u>Air Evac EMS</u>, 533 S.W.3d
at 575-76; <u>see also</u> <u>Showpiece Homes</u>, 38 P.3d at 56 (holding that
provision "exempts only those actions that are 'in compliance'
with other laws" and "[c]onduct amounting to deceptive or unfair
trade practices . . . would not appear to be 'in compliance with
other laws"); <u>Skinner</u>, 730 S.W.2d at 338 (applying the specific-
conduct rule and holding that authorization to engage in the
business of selling annuities "is not specific authorization to
employ unfair or deceptive practices in that activity"); <u>see
also</u> Nathan Price Chaney, <u>The Arkansas Deceptive Trade Practices
Act: the Arkansas Supreme Court Should Adopt the Specific-
Conduct Rule</u>, 67 Ark. L. Rev. 299, 326-46 (2014) (analyzing the
"specific conduct" and "general activity" approaches and
surveying all fifty states' approaches to the same).

The specific-conduct approach is one of two approaches
to interpreting safe-harbor provisions in deceptive trade
practices statutes:

> (1) the majority "specific conduct" rule,
> which looks to whether state law permits or
> prohibits the conduct at issue and only
> exempts permitted conduct from [deceptive
> trade practices act] claims; and (2) the
> minority "general activity" rule, which looks
> to whether a state agency regulates the
> conduct, in which case a regulated party
> enjoys a full exemption from the [deceptive
> trade practices statute].

Air EVAC EMS, 533 S.W.3d at 574 (citing Cheney, supra at 300).

In Skinner, the Tennessee Court of Appeals described the

rationale of safe-harbor provisions exempting acts or

transactions "required or specifically authorized" under state

or federal law:

> The purpose of the exemption is to insure that
> a business is not subjected to a lawsuit under
> the Act when it does something required by
> law, or does something that would otherwise be
> a violation of the Act, but which is allowed
> under other statutes or regulations. It is
> intended to avoid conflict between laws, not
> to exclude from the Act's coverage every
> activity that is authorized or regulated by
> another statute or agency. Virtually every
> activity is regulated to some degree. The
> defendant's interpretation of the exemption
> would deprive consumers of a meaningful remedy
> in many situations.

Skinner, 730 S.W.2d at 337 (emphasis added).

The Court is aware of one case in this district

implicitly using the specific-conduct rule to apply an exemption

under the UDTPA, HRS § 481A-5(a)(1). See Paragon Metals, Inc.

v. Schnitzer Steel Haw. Corp., No. 08-00292 DAE-LEK, 2009 WL

2700278, at *6 n.9 (D. Haw. Aug. 24, 2009). Under that

exemption, § 481A of the UDTPA does not apply to "conduct in

compliance with the orders or rules of, or a statute

administered by, a federal, State, or local governmental

agency." HRS § 481A-5(a)(1). After holding that the plaintiff

failed to allege facts to state a claim under the UDTPA, the

judge observed, in a footnote, that the exemption would also preclude liability because the defendant was "engaging in conduct in compliance with the rules of the [state environmental agency]."[14/]  Paragon, 2009 WL 2700278 at *6 n.9.

The Ninth Circuit also implicitly applied the specific-conduct rule when deciding whether the California "safe harbor" doctrine exempted liability for various bank entities under California's unfair competition law ("UCL").  See Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1164 (9th Cir. 2012).  In Davis, the plaintiff alleged that the defendant banks had made inadequate disclosures of the annual fee in their credit-card application and advertising materials, in violation of the UCL. Id.  The banks argued that their disclosures "complied with, and w[ere] required by" TILA and an associated regulation.  Id. Therefore, the banks argued, their conduct fell within a "safe harbor," precluding UCL liability.  Id.

The Ninth Circuit held that certain of the disclosures fell within the "safe harbor" while others did not.  Id.  First, disclosures made in the online application created a safe harbor because they fully complied with TILA and the regulation.  Id.

---

[14/]  In addressing an additional claim brought under HRS § 480-2, the court noted that the defendants' conduct had "complie[d] with state and federal hazardous waste laws."  Paragon, 2009 WL 2700278 at *6.  This, among other findings, led the court to reject the plaintiff's UDAP claim.  See id. Paragon did not involve insurance transactions such to implicate HRS § 480-11(b), but the observation that the defendant had complied with state and federal law is indicative of the specific-conduct approach.

at 1165.  TILA and regulation <u>required</u> the banks to disclose any annual fee in the credit-card application in a specified way, and the banks' complied with those specifications.  Accordingly, the banks' disclosure "clearly was permitted by federal law" and could not serve as the basis for UCL liability."  <u>Id.</u>

As to the advertising materials, however, the court held that the banks' conduct could not "be swept into the ambit of this safe harbor."  <u>Id.</u> at 1166.  Unlike the online application, the advertisements lacked any disclosure of the annual fee.  <u>Id.</u> at 1166.  Importantly, the advertisements were not subject to the same disclosure requirement as the online application.  <u>Id.</u> at 1167 (holding that the advertisements were not "solicitations" requiring a disclosure under TILA or the regulation).  This led the court to ask whether the "omission of the annual fee is permitted by some statute or regulation."  <u>Id.</u> at 1167.  To fall under a safe harbor, the court explained, "the <u>omission</u> of the annual disclosure from the advertisements must be <u>expressly permitted by</u> some other provision."  <u>Id.</u> (emphasis added).  It was not enough that TILA and the regulation "merely fail[ed] to prohibit such an omission."  <u>Id.</u> (emphasis added).  Because no provision in TILA, the regulation, or elsewhere clearly permitted the omission of the annual fee disclosure, the omission could not exempt the defendants from liability.  <u>See</u> <u>id.</u> at 1167-68.

In both Paragon and Davis, the courts implied that the defendants' specific conduct—not just the general transaction—must be authorized, permitted, or required by law. Here, Plaintiffs allege that Pyramid placed surplus lines insurances with non-admitted insurers—which is expressly permitted by Hawaiʻi law. But the specific conduct alleged is the failure to perform duties and due diligence specifically required by Section 301 of the Surplus Lines Act. Compl. ¶ 93. So Pyramid's alleged omission or inaction violated a statute. It follows that Pyramid's conduct was not specifically "permitted by some statute or regulation." Cf. Davis, 691 F.3d at 1166. Indeed, by alleging that Broker Defendants failed to perform the due diligence required by Section 301, Plaintiffs, in effect, allege that Pyramid's specific conduct is prohibited by a statute or regulation. Davis provides a helpful backdrop:

First, looking to the online applications, TILA and the regulation both required that the applications include specified fee disclosures. See Davis, 691 F.3d at 1165. Because the applications complied with those requirements, the banks' conduct was "permitted by federal law" and could not serve as the basis for UCL liability. Id. Disclosures in the advertisements, on the other hand, were not required by TILA, the regulation, or any other provision. Id. at 1167. At the same time, no provision of law "affirmatively permit[ted] the

absence of the annual fee disclosure from the advertisements."
_Id._  Thus, safe harbor did not apply to preclude UCL liability.
_Id._

          Here, it is without question that Section 301 permits
the procurement of surplus lines insurance from unauthorized
insurers.  _See_ HRS § 431:8-301 (titled, "Insurance placed with
unauthorized insurer permitted").  But it also imposes several
conditions on the placement of such insurance.  _Id._ § 431:8-
301(a).  Applying a similar analysis to _Davis_, Pyramid would
only be entitled to safe harbor if its due diligence and conduct
in the surplus-lines transactions complied with—and was
therefore "permitted by"—Section 301 or another provision of
law.  _See_ _Davis_, 691 F.3d at 1165.  Or, alternatively, safe
harbor would apply if the law expressly permitted surplus lines
transactions _without_ the due diligence and coverage comparisons.
The allegations in the Complaint certainly do not suggest that
Pyramid complied with Section 301's requirements.  And Pyramid
has not offered any other provision of law clearly permitting
its alleged failure to conduct due diligence when placing
surplus-lines policies.  _Cf._ _id._ ("[T]he parties have not
provided, and we have not located, any provision in TILA,
Regulation Z, or elsewhere that clearly permits the omission of
the annual fee disclosure from such advertisements.").
Following the rationale in _Davis_—as well as the majority

specific-conduct approach—HRS § 480-11(b) would not exempt Pyramid from liability here, where Plaintiffs have alleged that Pyramid's specific conduct was not permitted—and indeed was prohibited—by Hawai'i law.

Pyramid argues that applying the specific-conduct rule would render HRS § 480-11(b) a nullity, such that it would never apply. Mot. Dismiss 8; see also E&J Lounge Operating Co., Inc. v. Liquor Comm'n of City & Cty. of Honolulu, 118 Haw. 320, 349, 189 P.3d 432, 461 (2008) (discussing the "well-established tenet of statutory construction that 'an interpreting court should not fashion a construction of statutory text that effectively renders the statute a nullity or creates an absurd or unjust result"). The Court rejects this argument. Cf. Showpiece Homes, 38 P.3d at 56 (rejecting argument that specific-conduct interpretation "renders the statutory exclusion a nullity").

As other states have recognized, the purpose of an exemption like § 480-11(b) is to avoid conflicts and preclude lawsuits "based on practices that are 'in compliance' with other laws." See id. So, for example, § 480-11(b) might create a safe harbor from a lawsuit alleging that the placement or sale of surplus lines insurance underwritten by unauthorized insurers—even with the requisite due diligence and rate comparisons having been performed—is itself an unfair or deceptive act or practice. It is undisputed that surplus lines

insurance is "expressly permitted" by Section 301, subject to certain conditions. So § 480-11(b) would presumably exempt Pyramid from a lawsuit alleging that transactions in compliance with those conditions violates UDAP. Such a lawsuit would be "based on practices that are 'in compliance' with other laws." See Showpiece Homes, 38 P.3d at 56. Or, to borrow a different example offered by Plaintiffs' counsel at the motions hearing, § 480-11(b) could apply if a policyholder were to bring a UDAP claim alleging that a traditional insurance carrier's rates of insurance were "unfair." Because rates of insurance are regulated and indeed specifically established by the Insurance Commissioner, a lawsuit taking issue with those rates would involve conduct "expressly permitted by the insurance laws of [Hawai'i]."[15] Accordingly, to the extent that § 480-11(b) might, under some circumstances, excuse a defendant from liability in the insurance context, those circumstances do not exist here.

Because Plaintiffs have alleged that Pyramid's conduct did not comply with and was not "expressly permitted by" the

---

[15] Of course, this example is only relevant to admitted insurers transacting in the traditional, non-surplus lines market. As discussed, surplus lines insurance is not regulated in the same way and is provided by non-admitted insurers who need not obtain approval for the rates, forms, and underwriting rules. See Compl. ¶ 41; see also HRS § 431:8-301 (allowing surplus lines insurance to be placed with unauthorized insurers under certain conditions).

Insurance Code, § 480-11(b) would not apply.  The Court, then, would not dismiss Count I as barred by § 480-11(b).

### b. Whether Count II—UDTPA § 481A-3 Violation—States a Claim for Relief

HRS § 481A-3 sets forth eleven categories that constitute deceptive trade practices, and the list ends with a catch-all provision for "any other conduct which similarly creates a likelihood of confusion or of misunderstanding."  HRS § 481A-3(a)(1)-(12).  To prevail in an action under the UDTPA, "a complainant need not prove . . . actual confusion or misunderstanding."  Id. § 481A-3(b).  And "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity that the court considers reasonable.  Proof of monetary damage, loss of profits, or intent to deceive is not required."  Id. § 481A-4(a).  The Hawai'i Supreme Court has defined "the meaning of deceptive practice by citing the definition employed by federal courts with respect to 'an act causing, as a natural and probable result, a person to do that which he [or she] would not otherwise do.'"  Balthazar v. Verizon Haw., Inc., 109 Haw. 69, 77, 123 P.3d at 194, 202 (2005) (quoting Haw. Cmty. Fed. Credit Union v. Keka, 94 Haw. 213, 228, 11 P.3d 1, 16 (2000)) (alteration in original).

Pyramid argues that Count II does not allege conduct of the type actionable under the UDTPA. Mot. Dismiss 11-12. Practically speaking, it would be difficult to decide that Plaintiffs have alleged actionable conduct under the UDTPA when the Court has already decided that the allegations are insufficiently pleaded. Assuming the Complaint had complied with the federal pleading requirements, the Court notes that it disagrees with Pyramid's narrow reading of the UDTPA and would not necessarily dismiss Count II as failing to allege conduct within the catch-all provision.

Plaintiffs' UDTPA claim is plainly alleged under the catch-all provision, HRS § 481A-3(a)(12). Compl. ¶ 104 ("Broker Defendants' and Lloyd's conduct of misrepresenting, concealing, steering, or otherwise omitting the foregoing created the likelihood of confusion or of misunderstanding under HRS §481A-3(a)(12)."). Count II alleges that the same conduct underlying Count I also constitutes deceptive trade practices in violation of Chapter 481A. Compl. ¶¶ 102-06.

The catch-all clause is a "sweeping provision" that encompasses "any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Gas Co., LLC v. Amerigas Propane, L.P., No. 16-00366 LEK-KSC, 2017 WL 3613986, at *4 (D. Haw. Jan. 27, 2017) (discussing HRS § 481A-3(a)(12)). Pyramid would have the Court ignore the "sweeping"

nature of the catch-all clause and recognize as actionable only conduct that falls within one of the eleven enumerated categories. See Mot. Dismiss 8-9; Opp Br. 17. The Court does not read the catch-all clause in those narrow terms.

Pyramid's reliance on True Value Co. v. Hills, No. 16-cv-00237 JMS-RLP, 2016 WL 7191540 (D. Haw. Nov. 16, 2016), adopted by 2016 WL 7191562 (D. Haw. Dec. 12, 2016), to limit the scope of HRS § 481A-3 is also misplaced. See Mot. Dismiss 8-9; Opp. Br. 17. Pyramid accurately describes the True Value holding that the plaintiff stated a plausible claim under HRS § 481A-3 by alleging that the defendant's actions resulted in confusion "as to the source, sponsorship, or affiliation" of its website. True Value, 2016 WL 7191540 at *5. But that holding does not imply that confusion as to the "source, sponsorship, or affiliation" is the only context for liability under the UDTPA. To the contrary, the quoted language is straight from one of the eleven enumerated categories of conduct. See HRS § 481A-3(a)(2). That is, the catch-all provision was not implicated because the conduct fell squarely within one of the enumerated categories. Thus, True Value is not useful here insofar as it merely held that a claim existed within the scope of subsection (2). Pyramid has not cited any cases to show that the scope of the UDTPA § 481A-3 is limited in the way it suggests.

Still, for many of the same reasons they were insufficient to state a claim under Count I, the allegations in Count II are insufficient to state a claim under the UDTPA. The allegations are in superficial and conclusory terms, and Plaintiffs add no facts to flesh out their allegation that Pyramid's and other Defendants' conduct created a likelihood of confusion or misunderstanding. See Bank of N.Y. Mellon v. Sakala, CV No. 11-00618 DAE-BMK, 2012 WL 12892444, at *8 (D. Haw. Aug. 13, 2012) ("[V]ague and conclusory allegations cannot, in and of themselves, state a claim for relief."). The Court acknowledges Plaintiffs' allegation in the Complaint that they did something that they would not otherwise do—i.e., purchase surplus lines insurance policies. But this allegation alone, without any non-conclusory facts to show wrongful conduct on the part of Pyramid, cannot support a claim for relief under the UDTPA.

As to Pyramid's second argument, that injunctive relief is unworkable and inadequate, Mot. Dismiss 12, the Court holds that any injunctive relief is necessarily derivative of Plaintiffs' claims under the UDTPA. Because they have not adequately pleaded those claims, Plaintiffs are likewise not entitled to injunctive relief.[16/]

---

[16/] To the extent that Plaintiffs intend to pursue injunctive relief in
(Continued . . . )

Plaintiffs have failed to state a claim under HRS § 481A.  Insofar as it seeks dismissal of Count II against Pyramid, the Motion to Dismiss is granted.  The Court grants leave to Plaintiffs to amend their Complaint to plead a cause of action under the UDTPA, including under the catch-all provision.

### c. Whether Count III—Breach of the Implied Covenant of Good Faith and Fair Dealing—Fails to State a Claim for Relief

The Hawai'i Supreme Court first recognized a "bad faith cause of action in the first-party insurance context" in Best Place.  The court held that "there is a legal duty, implied in a first- and third-party insurance contract, that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort cause of action."  Best Place, 82 Haw. at 132, 920 P.2d at 347.  In 2013, the Supreme Court expanded its recognition of the bad faith tort to claims brought pursuant to unlawful claims practices in Hawai'i's Joint Underwriting Plan ("JUP"), where no express contract is formed between the insurers and assignees.[17]

---

an amended complaint, the Court reminds them that "Rule 65(d) requires the language of injunctions to be reasonably clear so that ordinary persons will know precisely what action is proscribed."  United States v. Holtzman, 762 F.2d 720, 726 (9th Cir. 1985); see also Civil Rights Educ. & Enj't Ctr. V. Hosp. Props. Tr., 317 F.R.D. 91, 105 (N.D. Cal. 2016) (denying class certification in part because the proposed injunction was nothing more than a "bare injunction to follow the law").

[17]  The JUP provides public assistance to individuals who cannot otherwise obtain insurance.  Willis, 129 Haw. at 482-83, 304 P.3d at 623-24. It operates in the form of a risk-pooling arrangement and was created by statute, HRS § 431:10c-401.

<u>Willis v. Swain</u>, 129 Haw. 478, 486, 304 P.3d 619, 627 (2013).
In both <u>Willis</u> and <u>Best Place</u>, the Hawaiʻi Supreme Court
emphasized the "special relationship between the insurers and
their insureds," which justified a tort cause of action for bad
faith.  <u>Id.</u>; <u>Best Place</u>, 82 Haw. at 132, 920 P.2d at 347.

        Pyramid first notes that it is not clear from the
Complaint whether Count III is alleged against Pyramid.  Mot.
Dismiss 14-15.  The bad faith claim identifies "Defendants,
Lloyd's, Monarch and SPG," but later in Count III, Pyramid and
Moa are referenced as playing some role as "agents."  <u>Id.</u> at 15;
<u>see also</u> Compl. ¶¶ 107-120.  In their Opposition Brief,
Plaintiffs confirm their position that Count III is "alleged
only against Underwriters and Monarch," but that "Pyramid played
a dual agency role in the alleged steering scheme."  Opp. Br.
21.  The Court agrees that Count III is not clear as to the role
of Pyramid with respect to the bad faith claim.  Plaintiffs'
Opposition Brief argues that "Pyramid owes duties both as
Monarch's/Underwriters' agent and as Plaintiffs' and the Class'
agent."  <u>Id.</u>  Based on the framing of the Complaint and
Plaintiffs' clarification that Count III is alleged "only
against Underwriters and Monarch," it appears that Plaintiffs
have not stated a claim against <u>Pyramid</u>.

        Either way, Plaintiffs have failed to state a bad
faith claim against Pyramid for other reasons.  First, as

discussed _supra_, Count III is subject to Rule 9(b) and fails to plead particularized facts.  Second, as Pyramid argues, the Complaint does not plead the existence of any insurance contract between Pyramid and Plaintiffs to establish an implied duty of good faith and fair dealing.  _See_ Mot. Dismiss 16-17. Plaintiffs read Hawaiʻi law broadly to argue that contractual privity is not a prerequisite to a bad faith claim and that a duty of good faith and fair dealing extends to an insurer's agent pursuant to sections in the Insurance Code.  Opp. Br. 21-23 (discussing Section 301 (surplus lines) and HRS §§ 431:13-103(a)(1)(A) and (8) (unfair competition and unfair or deceptive acts or practices)).

There are two problems with Plaintiffs' argument. First, this district has recognized that a tort claim for bad faith is predicated on the existence of a contract:

> "In _Best Place_, the Hawaii Supreme Court noted that although Hawaii law imposes a duty of good faith and fair dealing in all contracts, whether a breach of this duty will give rise to a bad faith tort cause of action depends on the duties inherent in a particular type of contract."  . . . "The court concluded that special characteristics distinguished insurance contracts from other contracts and justified the recognition of a bad faith tort cause of action for the insured in the context of first- and third-party insurance contracts."  . . . Indeed, "the Hawaii Supreme Court emphasized that the tort of bad faith, as adopted in _Best Place_, requires a contractual relationship between an insurer and an insured." . . .

- 54 -

_Mier v. Lordsman Inc._, Civ. No. 10-00584 JMS-KSC, 2011 WL
285862, at *5 (D. Haw. Jan. 27, 2011) (quoting _Jou v. Nat'l
Interstate ins. Co. of Haw._, 114 Haw. 122, 129, 157 P.3d 561,
568 (Ct. App. 2007)) (internal citations omitted); _see also
Lynch v. Fed. Nat'l Mortg. Ass'n_, No. 16-00213 DKW-KSC, 2016 WL
6776283, at *9 (D. Haw. Nov. 15, 2016) (citing _Jou_, 114 Haw. at
129, 157 P.3d at 568, for its holding that bad faith "requires a
contractual relationship between an insurer and insured").
_Willis_ admittedly diverges from this rule in the context of the
Hawai'i JUP program, where no actual contract is formed.  But
the JUP operates under a statute that expressly imposes
obligations on the insurer "as if it had" issued a policy to the
assignees.  _See_ _Willis_, 129 Haw. 478 at 484, 304 P.3d at 624,
631-34 ("The assigned claims plan under the JUP creates an
insurer-insured relationship, and under that plan, no underlying
contract is necessary to give rise to that relationship and its
concomitant rights and obligations because that relationship is
created by statute.").  No such statute is at play here;
Plaintiffs' claims are purely based on the relationship formed
by the Policies.

Here, Plaintiffs have not pleaded that Pyramid was a
party to any insurance contract or that any statutory scheme
creates an insurer-insured relationship between a retail broker

and its policyholder client. Instead, they reason that Pyramid not only served as an agent of Plaintiffs, but that it also served as an agent of Monarch and Underwriters. Opp. Br. 20-22. According to Plaintiffs, this dual-agency capacity imposed a duty of good faith and fair dealing on Pyramid as well.

Plaintiffs have not provided—and the Court is not aware of any—reported Hawai'i decisions holding that an agent of an insurer owes a duty of good faith and fair dealing to the insured. See Mot. Dismiss 16; Opp. Br. 22-23. Cases in this district interpreting Hawai'i law suggest that no such duty exists. See, e.g., Casados v. Drury, No. 13-00283 LEK-RLP, 2014 WL 2968221, at *3 (D. Haw. June 30, 2014) (holding that "Hawai'i law does not permit a bad faith claim against claim examiners"); Haw. Isle Adventures v. N. Am. Capacity Ins. Co., Civ. No. 08-00574 SOM, 2009 WL 330211, at *3 (D. Haw. Feb. 10, 2009) (holding that third parties to insurance contracts, including adjuster-agents, cannot be the subject of an insurance bad faith claim); CIM Ins. Corp. v. Masamitsu, 74 F. Supp. 2d 975, 994 (D. Haw. 1999) (citing Gruenberg v. Aetna Ins. Co., 510 P.2d 1032, 1038-39 (Cal. 1973), and Moore v. Allstate Ins. Co., 6 Haw. App. 646, 650, 736 P.2d 73, 77 (Ct. App. 1987) to hold that a claims handler for insurer did not have a contract with and could not be liable to the insured in bad faith).

And this is all assuming that Pyramid can even be considered an agent of Underwriters. This brings the Court to the second problem with Plaintiffs' rationale: The Complaint alleges that Pyramid was an agent to Plaintiffs but does not plausibly allege that Pyramid was acting as Underwriters' agent. In their Opposition Brief, Plaintiffs assert a dual-agency theory, whereby Pyramid allegedly acted as an agent to both. Opp. Br. 20-21. The Court is not persuaded by this theory. For one, to the extent that the Complaint contains any allegations to support an agency relationship between Pyramid and Underwriters, those allegations are vague and conclusory. More substantively, the Ninth Circuit has predicted that the Hawai'i Supreme Court would hold that insurance brokers are agents of the insured, not of the insurer. See Healy Tibbitts Builders, Inc. v. Mannering, 308 F. App'x 115, 116 (9th Cir. 2009) ("Although the Hawaii Supreme Court has not directly addressed the issue, we are confident that it would follow the general rule that insurance brokers are presumed to act as agents of the insured, not of the insurer . . . ."); Healy Tibbitts Builders, Inc. v. Mannering Constr. Co., No. 02-00146 SOM/BMK, 2004 WL 7333224, at *4 (D. Haw. Mar. 8, 2004) (noting that brokers are "not agents of the insurance companies" (quoting Marsh & McLennan of Cal., Inc. v. City of Los Angeles, 62 Cal. App. 3d

108, 117–118 (1976))), <u>aff'd in part, rev'd in part on other</u>
<u>grounds</u>, 308 F. App'x 115.

Τhe cases cited by Plaintiffs do not support their
legal theory either.  First, citing <u>Arch Specialty Ins. Co. v.</u>
<u>Skandia Const. Servs., Inc.</u>, No. 10-cv-01764-BTM-BLM, 2011 WL
3055267, at *2 (S.D. Cal. July 25, 2011), Plaintiffs describe
the possibility of rebutting the "presumption that an insurance
broker does not work on behalf of the insurer."  Opp. Br. 22.
In that case, however, the court held that a "threadbare
statement" that the broker was "acting as the agent for" the
insurance company was "insufficient to establish agency status."
<u>Skandia Constr.</u>, 2011 WL 3055267 at *2.  And <u>Barth v. Coleman</u>,
878 P.2d 319, 326 (N.M. 1994) says only that a broker's actions
may sometimes be "imputed to the insurer."  It says nothing
about the broker being held liable for insurer bad faith.  The
unpublished Second Circuit case Plaintiffs cite does not help
their position either.  <u>See</u> <u>Gold Star, Inc. v. Lloyds of London</u>
<u>Ins. Underwriters</u>, 113 F.3d 1229 (2d Cir. 1997).  The court
there framed the presumption that a broker is the agent of the
<u>insured</u> as one that can be rebutted only in "exceptional
circumstances," none of which were present.

Simply put, Plaintiffs have failed to plausibly allege
that Pyramid was an agent of Underwriters.  And they have
offered no cases to support their theory that an agent of an

insured can even be the subject of a bad faith claim under
Hawai'i law.  The Hawai'i Supreme Court was clear in Best Place
that the bad faith tort rests on the relationship between an
"insurer and an insured."  Mier, 2011 WL 285862 at *5 (citing
Best Place, 82 Haw. at 127, 920 P.2d at 341).  Pyramid is not an
insurer.  Notably, the Supreme Court in Best Place adopted the
bad faith standards set forth in the California case, Gruenberg.
See Best Place, 82 Haw. at 133, 920 P.2d at 347.  In Gruenberg,
the court affirmed the dismissal of bad faith claims against
"non-insurer defendants," including the insurance adjusting firm
and its employee.  510 P.2d at 576.  Thus, even if Plaintiffs
could plausibly allege that Pyramid acted as an agent to
Underwriters, the Court is not convinced that the Hawai'i
Supreme Court would diverge from this concept—that an agent of
an insured may not be the subject of a claim for bad faith.

        At minimum, the Complaint lacks adequate factual
allegations to support an agency relationship between Pyramid
and Underwriters.  Nor is the Court convinced that, under
Hawai'i law, Pyramid may be liable to the insureds for insurer
bad faith.  Accordingly, in addition to the pleading
inadequacies discussed throughout this Order, Plaintiffs fail to
state a plausible bad faith claim against Pyramid.  Insofar as
Count III is alleged against Pyramid, it is dismissed without
prejudice.

### d. **Whether Count IV—Unjust Enrichment—States a Claim for Relief**

The Complaint pleads unjust enrichment "in the alternative" to Plaintiffs' "contract-based claim." Compl. ¶ 122. To recover on an unjust enrichment claim, a plaintiff must show that (1) the defendant received a benefit without adequate legal basis; and (2) the defendant unjustly retained the benefit at the expense of the plaintiff. Chapman v. Journal Concepts, Inc., No. 27-00002 JMS/LEK, 2008 WL 5381353, at *21 (D. Haw. Dec. 24, 2008) (citing Small v. Badenhop, 67 Haw. 626, 635, 701 P.2d 647, 654 (1985)); see also Durrette v. Aloha Plastic Recycling, Inc., 105 Haw. 490, 502-04, 100 P.3d 60, 72-74 (2004). Unjust enrichment is a "broad and imprecise term." Durrette, 105 Haw. at 502, 100 P.3d at 72 (internal citation and quotation marks omitted). In reviewing unjust enrichment claims, courts must be guided by the "underlying conception of restitution, the prevention of injustice." Id.

Pyramid argues that Plaintiffs' unjust enrichment claim is based on an "indirect" benefit and thus requires a showing of a "clear legal entitlement." Mot. Dismiss 17-18. Its rationale is, the Complaint alleges that Broker Defendants received unwarranted commissions from Lloyd's, not from Plaintiffs. See id. Whereas Plaintiffs argue that they

directly conferred an unjust benefit on Defendants and Pyramid, but that "[o]nly Defendants know the exact money flow." Plaintiffs allege that they paid "one lump sum as a premium," which contributed in some way to the resulting commissions paid to Pyramid and the other Broker Defendants. See Opp. Br. 25.

A review of Hawai'i law suggests that courts tend to apply unjust enrichment broadly and flexibly. See Lumford v. Yoshio Ota, 144 Haw. 20, 26-27, 434 P.3d 1215, 1221-22 (Ct. App. 2018). In Lumford, the ICA adopted the rationale of the Restatement 3d, which narrows the relief for "indirect" unjust enrichment claims, where a third party makes a payment to the defendant. Id. The court held that, "in limited circumstances, a claim for unjust enrichment may be stated by allegations that a third party has conferred a benefit upon a defendant to which the plaintiff claims he or she has a superior legal or equitable right." Id. at 27, 434 P.3d at 1222.

According to Pyramid, the Complaint pleads no such superior legal or equitable right, regardless of whether the alleged benefit was direct or indirect. The Court agrees. This is unsurprising given the other shortcomings of the Complaint. Without more particularized allegations, Defendants can only speculate as to what benefit was conferred on what Defendant, and as to what "superior legal or equitable right" Plaintiffs apparently have. Even though, as Plaintiffs note, a motion to

dismiss is not the appropriate vehicle for deciding who has the superior right, Opp. Br. 28, the facts as pleaded in the Complaint do not support a plausible claim for relief.

What is more, "Hawai'i law has approved 'the principle, long-invoked in the federal courts, that equity has always acted only when legal remedies were inadequate.'" Swartz v. City Mortg., Inc., 911 F. Supp. 2d 916, 938 (D. Haw. 2012) (quoting Porter v. Hu, 116 Haw. 42, 55, 169 P.3d 994, 1007 (Ct. App. 2007)) (internal quotation marks omitted), abrogated on other grounds as stated in Compton v. Countrywide Fin. Corp., 761 F.3d 1046 (9th Cir. 2014)). Thus, the absence of an adequate remedy at law is a "necessary prerequisite" to maintaining an equitable claim. Soule, 1 F. Supp. at 1102 (citing Swartz, 911 F. Supp. 2d at 938).

Here, Plaintiffs allege in the Complaint that they have a legal remedy in the form of the UDAP Claims. See Compl., Counts I-II; see also Compl., Prayer For Relief. Thus, following this Court's decision in Soule, Plaintiffs' unjust enrichment claim would not survive a motion to dismiss for the additional reason that the Complaint fails to plead that the legal claims are inadequate. See Soule, 1 F. Supp. 3d at 1102-03. Like in Soule, Plaintiffs' unjust enrichment claim "merely incorporates the other facts of the [Complaint] by reference and makes a conclusory allegation" that Plaintiffs and the Class

conferred upon Defendants the benefit of non-gratuitous payments for insurance.  Id.; see also Compl. ¶ 125.  In short, Plaintiffs do not explain how their UDAP claims "do[] not fully address [the] injustice' [they] allegedly suffered at the hands of [Pyramid]."  Soule, 1 F. Supp. 3d at 1103 (quoting Porter, 116 Haw. at 55, 169 P.3d at 1007).

        None of this is to say that Plaintiffs cannot allege an unjust enrichment claim in the alternative to their legal claims.  The Federal Rules certainly allow them to do so.  See Rule 8(a)(3) (requiring "a demand for the relief sought, which may include relief in the alternative or different types of relief"); Rule 8(d) (allowing alternative statements of a claim or defense)[18]; see also Soule, 1 F. Supp. 3d at 1103 (discussing Rule 8's alternative pleading rules in the context of unjust enrichment).  But even an alternative equitable claim must plead any "necessary prerequisite" to such a claim.  Put another way, for their unjust enrichment claim to survive a motion to dismiss, Plaintiffs must at least plead that their equitable claim would provide a remedy in the event that their legal claims or remedies are found to be inadequate.  As currently pleaded, the Complaint fails to allege, even in the alternative, the inadequacy of the legal remedies.

---

        [18] Although, as discussed, Rule 9(b) is the relevant standard here for factual allegations of fraud, Rule 8 contains the general rules of pleading, which includes permitting pleading in the alternative.

The unjust enrichment claim is dismissed against
Pyramid without prejudice.

### e. Whether Count V—Breach of Fiduciary Duties—States a Claim for Relief

In Count V, the Complaint alleges that Broker
Defendants breached fiduciary duties by participating in the
deceptive "steering" scheme. Compl. ¶¶ 132-38. The Complaint
describes the fiduciary relationship as follows:

> At all relevant times, Broker Defendants were
> Plaintiffs' and the Class's agent for the
> procurement of insurance. Plaintiffs and the
> Class relied on Broker Defendants to identify
> the types and amounts of coverage required and
> the insurance companies who could provide that
> coverage. Plaintiffs and the Class also
> relied on Broker Defendants for advice
> regarding which insurance programs to select
> and to negotiate premiums with insurance
> companies.

Compl. ¶ 132. Count V alleges a fiduciary duty owed by the
collective "Broker Defendants." See Compl. ¶¶ 131-39.

"In general, '[t]he elements of a cause of action
for breach of fiduciary duty are: 1) the existence of a
fiduciary duty; 2) a breach of the fiduciary duty; and 3)
resulting damage.'" Kyoung Won v. England, Civ. No. 07-00606
JMS/LEK, Civ. No. 08-00158 JMS/LEK, 2009 WL 10677756, at *7 (D.
Haw. Aug. 13, 2009) (quoting Pellegrini v. Weiss, 165 Cal App.
4th 515, 524 (Cal. Ct. App. 2008)); see also Swift v. Swift, No.
CAAP-13-0000101, 2016 WL 3573970, at *3 (Ct. App. June 30,

2016).  Whether a fiduciary duty exists is generally a question of law.  Lahaina Fashions, Inc. v. Bank of Haw., 131 Haw. 437, 453–54, 319 P.3d 356, 372–73 (2014).

Pyramid contends that Count V fails because Plaintiffs have failed to identify specific facts to show a fiduciary relationship.  Mot. Dismiss 19.  It alleges first that Plaintiffs engage in "shotgun pleading" by grouping Pyramid together with the other Broker Defendants, and second that the Complaint fails to allege "specific facts regarding how a fiduciary duty is imposed upon Pyramid by statute or special relationship."  Id. at 19-21.

Having already addressed the improper group pleading evident throughout the Complaint, the Court simply notes its agreement that the pleading does not comply with the federal pleading standards.  Individual pleading is particularly critical to the fiduciary duty claim, because it turns on the relationship between Plaintiffs and each Defendant.

As to Pyramid's argument that the Complaint fails to plead any "special relationship" between Plaintiffs and Pyramid, the Court is skeptical.  Putting aside the general pleading inadequacies, the Complaint alleges that Pyramid was the retail broker and Plaintiffs' "agent for the procurement of insurance." Compl. ¶ 132.  Plaintiffs and the Class "placed great trust and confidence in Broker Defendants and relied on them for their

judgment, expertise, and integrity." Compl. ¶ 136-137; see also Opp. Br. 31. As the retail broker and agent assisting in the procurement of insurance coverage, there very well may have been a "special relationship" between Pyramid and Plaintiffs such to establish at least some fiduciary duties. See Advanced Salon Visions Inc. v. Lincoln Benefit Life Co., No. 08-cv-2346-LAB (WMc), 2010 WL 3341803, at *15 (S.D. Cal. Aug. 25, 2010) (noting that a broker may owe a fiduciary duty when it is an agent of the insured).

Hawai'i courts have not addressed this precise issue, but California courts have acknowledged the possibility of certain fiduciary duties owed by a broker to the insured. See, e.g., Starr Indem. & Liability Co. v. JT2, Inc., No. 1:17-cv-00213-DAD-BAM, 2018 WL 1142207, at *4-5 (E.D. Cal. Mar. 2, 2018) (collecting cases). In Starr, a federal district court in California declined to decide as a general matter whether brokers have a fiduciary relationship with or owe fiduciary duties to insureds. Id. But the court held that, regardless, an agency relationship may create certain fiduciary duties. Id. It held that "[w]hether an agency relationship that might incur fiduciary duties was ultimately created here is a question of fact better resolved at the summary judgment stage." Id. at *5.

All of this said, conclusory allegations and impermissible group pleading cannot support a claim for relief,

especially on a claim subject to the heightened standard under Rule 9(b).  Accordingly, Count V is dismissed against Pyramid without prejudice.

### f. Whether Count VI—Negligence—States a Claim for Relief

Plaintiffs' sixth cause of action asserts a claim for negligence. The Complaint alleges that "Broker Defendants owed a duty to Plaintiffs and the Class to perform the due diligence required under HRS §431:8-301(a) to ascertain whether comparable non-surplus lines insurance was available."  Compl. ¶ 142.  The Complaint asserts that Broker Defendants breached this duty by participating in the steering scheme, failing to "appropriately survey the market to see if non-surplus lines insurance was available," and generally failing to perform due diligence under Section 301 of the Surplus Lines Act.  Compl. ¶¶ 143-147.

Pyramid argues that Count VI should be dismissed because it fails to identify specific facts to show that Pyramid breached any duty of care and because it lumps Pyramid together with the other Broker Defendants.  Mot. Dismiss 22-23.  Again, the Court agrees that Count VI must be dismissed based on the Complaint's failure to comply with federal pleading standards.

Pyramid asserts an additional basis for dismissal: that the negligence claim is "an attempt by Plaintiffs to bring a private right of action against Pyramid for alleged breaches of the Insurance Code."  Mot. Dismiss 23 (citing Compl. ¶ 146).

The Court is not prepared to dismiss Count VI on this ground.

Even ignoring the Complaint's shortcomings, the Court would not

dismiss the negligence claim merely because the asserted duty of

care parallels duties imposed by the Insurance Code.[19/] Compare

Am. Auto. Ins. Co. v. Haw. Nut & Bolt, Inc., No. 15-00245 ACK-

KSC, 2017 WL 4079522, at *4-5 (D. Haw. Sept. 14, 2017)

(recognizing Hawai'i law that an insurance agent owes a duty of

reasonable care, skill, and diligence in procuring insurance,

and holding that the extent of these duties and responsibilities

"turns on the fact of each case" (citing Quality Furniture, Inc.

v. Hay, 61 Haw. 89, 93, 595 P.2d 1066, 1068-69 (1979))), with

HRS § 431:1-102 (requiring "insurer, the insured and their

representatives" to act with "good faith"); id. § 431:8-301

(imposing duties of due diligence on surplus-lines brokers).

The Court does agree, however, with Pyramid's

suggestion that Plaintiffs have not adequately alleged any

negligent breach of a duty of care owed to Plaintiffs. See

Reply Br. 17-18. Count VI repeats the same allegations of a

"deceptive scheme to collect secret commissions, steer lucrative

---

[19/] Pyramid appears to admit in its Reply Brief that it does in fact owe
a common-law duty of care as the insurance agent to its clients. See Reply
Br. 14 (discussing fiduciary duty and arguing that no facts alleged show that
"Pyramid owed the Plaintiffs duties over and above the general duty of care
owed by insurance agents to their clients" (emphasis added)); see also Haw.
Nut & Bolt, 2017 WL 4079522 at *3 ("[I]n Hawaii, '[a]n insurance agent owes a
duty to the insured to exercise reasonable care, skill, and diligence in
carrying out the agent's duties in procuring insurance.'" (quoting Quality
furniture, Inc. v. Hay, 61 Haw. 89, 93, 595 P.2d 1066, 1068 (Haw. 1979))).

business to Lloyd's, charge Plaintiffs and the Class improper and inflated premiums, and misrepresent Plaintiffs' and the Class's insurance coverage." Compl. ¶ 143. These allegations frame Pyramid's and Defendants' conduct as scheming, intentional, willful, and deliberate. There is no allegation, as the Complaint is currently framed, asserting that Pyramid or Defendants committed any <u>negligent</u> act by breaching a duty of care. <u>Cf.</u> <u>Pancakes of Haw. Inc. v. Pomare Props. Corp.</u>, 85 Haw. 286, 293, 944 P.2d 83, 90 (1997) (explaining how "[a] willful act differs essentially from a negligent act," as "one is positive and the other negative"). Rather, the Complaint reflects an intentional choice on the part of Defendants to disregard their statutory and common-law duties, not a negligent or careless failure to comply with those duties. <u>See, e.g.</u>, Compl. ¶¶ 142-44. Accordingly, the negligence claim fails for the additional reason that its allegations of an intentional, fraudulent, and deceptive scheme fail to support a claim for ordinary negligence.

In sum, for many of the same reasons Plaintiffs' other claims fail, the allegations against Pyramid do not support a plausible claim for relief under Count VI. The Complaint does not allege with particularity facts to support a breach of any duty of care owed by Pyramid to Plaintiffs. Accordingly, the Court concludes that Plaintiffs' factual allegations as

currently framed are insufficient to support a negligence claim against Pyramid. Count VI is dismissed against Pyramid without prejudice.

### g. Whether Count VII—Declaratory Judgment—States a Claim for Relief

Finally, Plaintiffs seek declaratory relief in the form of a declaration that "(i) Broker Defendants owe a legal duty to perform their required duties and due diligence required under Hawaii law to place surplus lines insurance; (ii) Broker Defendants continue to breach this legal duty by failing to perform their required duties and due diligence; and (iii) Broker Defendants' ongoing breach of this legal duty continues to cause harm." Compl. ¶ 153. Under the same cause of action, Plaintiffs ask the Court to "issue corresponding injunctive relief requiring Defendants to cease the unlawful practices alleged herein." Compl. ¶ 154.

Pyramid argues that Plaintiffs' declaratory judgment claim "improperly and needlessly duplicates their claims for negligence, as well as other claims," and asks for "a vague and unspecific declaration that Defendants have to comply with the law in performing their duties and due diligence." Mot. Dismiss 25. The Court agrees with Pyramid and holds that Count VII fails to state a claim.

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that in "a case of actual controversy," a court may "declare the rights and other legal relations of any interest party seeking such declaration, whether or not further relief is or could be sought." McGraw-Edison Co. v. Preformed Line Products Co., 362 F.2d 339, 342 (9th Cir. 1966). In deciding whether to hear a claim for declaratory relief, courts consider (1) whether the judgment "will serve a useful purpose in clarifying and settling the legal relations at issue" and (2) whether the judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Id. As for injunctive relief, this district "follows the well-settled rule that a claim for 'injunctive relief' standing alone is not a cause of action. Phillips v. Bank of Am., Civ. No. 10-00551 JMS-KSC, 2011 WL 240813, at *4 (D. Haw. Jan. 21, 2011) (collecting cases). Injunctive relief may be available only as a remedy on an independent cause of action. Id.

Count VII is deficient for several reasons. First, "because Plaintiffs' claims are based on allegations regarding Defendants' past wrongs, a claim under the Declaratory Relief Act is improper and in essence duplicates Plaintiffs' other causes of action." Phillips, 2011 WL 240813 at *4 (collecting cases and dismissing claims for injunctive and declaratory relief). Count VII essentially incorporates by reference the

other allegations of the Complaint and identifies "Defendants'
actions (and inaction)" as "inadequate and unreasonable."
Compl. ¶ 152. These allegations cannot support a cognizable
claim for relief under the Declaratory Relief Act. See
Phillips, 2011 WL 240813 at *4 (collecting cases holding that
declaratory relief is unnecessary when adequate remedies exist
under other causes of action).

Second, Count VII does not allege any entitlement to
relief for "future interactions between these parties," nor does
it purport to seek different relief from that sought through
other causes of action. See TK v. Adobe Sys. Inc., No. 17-cv-
04595-LHK, 2018 WL 1812200, at *13 (N.D. Cal. Apr. 17, 2018);
Servco Pac., Inc. v. SyBridge Global, Inc., Civ. No. 16-00266
DKW-KSC, 2016 WL 6996987, at *10 (D. Haw. Nov. 29, 2016). The
only allegations in the Complaint that could remotely be
construed as alleging future harm are in ¶ 152 (alleging that
Defendants' actions "upon information and belief, remain
inadequate and unreasonable") and ¶ 153 (noting "Broker
Defendants' ongoing breach of this legal duty"). Neither of
these pleads sufficient facts to support a cognizable,
independent claim for declaratory relief. See Isagawa v.
Homestreet Bank, 769 F. Supp. 2d 1225, 1231-32 (D. Haw. 2011)
(dismissing claims for declaratory and injunctive relief where
plaintiffs alleged they "suffered and will continue to suffer in

the future unless Defendants wrongful conduct is restrained and enjoined").

Servco Pacific, cited by Plaintiffs, Opp. Br. 35, does not compel a different conclusion.  In that case, the declaratory relief claim was "plainly not duplicative" of a breach of contract claim because the two sought different remedies:  one sought damages for material breaches of a statement of work and the other sought a declaration that the non-breaching party was not required to compensate the breaching party for services rendered.  Servco Pac., 2016 WL 6996987 at *10.  Likewise, Plaintiffs' arguments about a declaration governing "future interactions between these parties," which they base on TK v. Adobe Systems, Opp. Br. 35, are not adequately alleged in the Complaint.

As for injunctive relief, Plaintiffs have likewise not pleaded sufficient factual allegations to support entitlement to relief.[20]  Regardless, injunctive relief is not an independent cause of action and, "if injunctive relief is proper, it will be because Plaintiffs prevail . . . on an independent cause of action."  Phillips, 2011 WL 240813 at *5; see also HRS § 481A-

---

[20]  To be entitled to injunctive relief, a plaintiff must show "(1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

4(a) (providing for relief under the UDTPA in the form of an injunction).

For these reasons, Count VII is dismissed against Pyramid without prejudice.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS Pyramid's Motion to Dismiss, ECF No. 64, insofar as it seeks dismissal of all Plaintiffs' claims against Pyramid.  Because Plaintiffs may be able to cure some of the pleading defects via amendment, leave to amend is granted and the Complaint is dismissed against Pyramid, without prejudice.  Any amended complaint must be filed within thirty days of the issuance of this Order and should comply with the guidance and standards set forth herein.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, September 26, 2019.



Alan C. Kay
Sr. United States District Judge

Aquilina v. Certain Underwriters at Lloyd's, Civ. No. 18-0496-ACK-KJM, Order Granting Defendant Pyramid Insurance Centre, Ltd.'s Motion to Dismiss.