IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| STEPHEN G. AQUILINA and LUCINA, J. AQUILINA, Individually and on Behalf of all Others Similarly Situated; and DONNA J. CORRIGAN and TODD L. CORRIGAN, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>  v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S SYNDICATE #2003; LLOYD'S SYNDICATE #318; LLOYD'S SYNDICATE #4020; LLOYD'S SYNDICATE #2121; LLOYD'S SYNDICATE #2007; LLOYD'S SYNDICATE #1183; LLOYD'S SYNDICATE #1729; BORISOFF INSURANCE SERVICES, INC. d/b/a MONARCH E&S INSURANCE SERVICES; SPECIALTY PROGRAM GROUP, LLC d/b/a SPG INSURANCE SOLUTIONS, LLC; ALOHA INSURANCE SERVICES INC.; ILIKEA LLC d/b/a MOA INSURANCE SERVICES HAWAII; and DOES 1-100,<br><br>          Defendants. | Civ. No. 18-00496-ACK-KJM |

ORDER DENYING DEFENDANTS MOA'S AND ALOHA'S
MOTIONS TO DISMISS OR IN THE ALTERNATIVE STAY

Defendants Ilikea LLC d/b/a Moa Insurance Services Hawaii ("Moa") and Aloha Insurances Services, Inc. ("Aloha," together with Moa, the "Retail Brokers") seek dismissal or a stay of this case under the "Colorado River" doctrine pending three parallel proceedings in state court.  When there exists

- 1 -

concurrent state and federal jurisdiction over a dispute, district courts must exercise jurisdiction except in "exceptional circumstances." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). The Supreme Court and the Ninth Circuit have identified several factors relevant to deciding whether abstention is appropriate. Applying those factors here, the Court finds that this case is devoid of the requisite "exceptional circumstances." Thus, the Court declines to abstain under Colorado River. The Court DENIES Defendant Moa's Motion to Dismiss or in the Alternative Stay Proceedings, ECF No. 120, and DENIES Defendant Aloha's Motion to Dismiss and/or Stay First Amended Complaint, ECF No. 121.

## **BACKGROUND**

The Court recounts only the factual and procedural history pertinent to considering whether abstention is appropriate.[1/] Plaintiffs are residents of the Puna District of Hawaiʻi Island (the "Big Island") who purchased surplus lines

---

[1/] In a separate order filed concurrently with this one, the Court provides a detailed account of the general factual allegations Plaintiffs have made against the various Defendants. See Order Granting in Part and Denying in Part Defendants Underwriters' and Monarch's Motions to Dismiss, ECF No. 159. That order addresses motions filed by the two other Defendants—Certain Underwriters at Lloyd's and Monarch—in which they sought dismissal for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6). Neither Underwriters nor Monarch joined the Retail Brokers in asking this Court to abstain under Colorado River.

homeowner's insurance policies brokered and underwritten by the various Defendants.  In the aftermath of the May 2018 eruption of Kilauea Volcano, Plaintiffs allegedly sustained significant damage to their properties and sought coverage for the losses under their surplus lines policies.  Such coverage was apparently denied based on an exclusion precluding coverage for lava-related damage.

## I.  The Federal Lawsuit

This case began as a putative class action brought by lead Plaintiffs Stephen and Lucina Aquilina and Audra and Scott Lane.  The original complaint was filed on December 21, 2018.  Compl., ECF No. 1.  Plaintiffs named as Defendants Certain Underwriters at Lloyd's London, including Syndicates #2003, #318, #4020, #2121, #2007, #1183, #1729 (collectively, "Underwriters"); Borisoff Insurance Services, Inc. d/b/a Monarch E&S Insurance Services, whose assets are owned by SPG (collectively "Monarch"); Pyramid Insurance Centre, Ltd. ("Pyramid"); and Moa.  Id.  The complaint alleged that the various Defendants had engaged in a deceptive "scheme" to defraud Plaintiffs and deprive them of meaningful insurance coverage.  All four Defendants moved to dismiss—primarily for failure to meet the heightened pleading standard under Rule 9(b)—which the Court granted without prejudice on September 26, 2019.  ECF Nos. 106-09.

The now-operative First Amended Complaint, ECF No. 114, was filed on December 12, 2019.  It replaces the Lanes with Donna and Todd Corrigan, and Pyramid (the Lanes' retail broker) with Aloha (the Corrigans' retail broker).  See Am. Compl.  The Aquilinas and the Corrigans (together, "Plaintiffs") again purport to assert claims on behalf of themselves and a putative class of similarly-situated consumers (the "Class").[2/]  Id.  This time, however, they abandon their previous allegations of a deceptive or fraudulent scheme and reframe them to allege "unfair" practices under Hawai`i's Unfair and Deceptive Acts or Trade Practices ("UDAP") law and breaches of other statutory and common-law duties.  Id. ¶¶ 1-6.

The Amended Complaint otherwise alleges that the policies at issue were underwritten by Underwriters; sold by Underwriters' agent and coverholder, Monarch; and brokered by Moa and Aloha (Moa assisted the Aquilinas and Aloha assisted the Corrigans).  Am. Compl. ¶¶ 16-31.  Plaintiffs allege in the First Amended Complaint that the Defendants in their various capacities committed unfair business practices and breached certain duties owed toward Plaintiffs in regard to their procurement of property insurance coverage.  Id. ¶¶ 105-13, 118-19.  Specifically, they allege that Defendants failed to procure

---

[2/]  The Court notes that the Class has not been certified.  References to the "Class" are for purposes of convenience in addressing the allegations in the Complaint.

adequate and appropriate insurance coverage and that they failed
to comply with certain state regulations, including requirements
for placing surplus lines coverage.  Id.

As against the Retail Brokers, the Amended Complaint
asserts three causes of action:

1. *Count I*.  Violation of UDAP law, Hawai`i Revised
   Statutes ("HRS") § 480-2.  Am. Compl. ¶¶ 144-55.

2. *Count III*.  Negligence.  Id. ¶¶ 178-88.

3. *Count IV*.  Unjust enrichment.  Id. ¶¶ 211-20.

## II.  State Court Lawsuits

There are three relevant lawsuits pending in state
court, one brought by the Aquilinas against Moa and two brought
by the Corrigans against Aloha.

### a. Lawsuit Brought by the Aquilinas Against Moa

On May 17, 2019, the Aquilinas sued several defendants
in state court, including their retail broker Moa.  See Ex. A.
to Moa's Mot., ECF No. 120-3, Aquilina v. Certain Underwriters
at Lloyd's London, Civ. No. 19-1-144.  They allege that, in the
aftermath of the Kilauea eruption in 2018, their home sustained
significant damage and destruction.  With respect to Moa, the
Aquilinas allege that they submitted claims to Moa, yet an
investigation into the claims was never conducted.  They argue
that their losses are covered by the scope of the policy, but
that the various defendants wrongfully relied solely on the

policies' lava exclusion to deny the Aquilinas' claims.  The state-court complaint also alleges that the Defendants acted wrongfully in the procurement of the insurance policies by failing to comply with state regulations for the placement of surplus lines coverage and by failing to advise Plaintiffs of all their insurance options.

The Aquilinas assert four causes of action against Moa:

1. Violation of Hawai`i's UDAP Law, § 480-2;
2. Breach of the Implied Covenant of Good Faith & Fair Dealing;
3. Negligence; and
4. Civil Conspiracy.

**b. Lawsuits Brought by the Corrigans Against Aloha**

The Corrigans have two lawsuits pending in state court.  First, on March 4, 2019, the Corrigans and other plaintiffs filed a lawsuit against Aloha and other defendants, and, second, on August 22, 2019, the Corrigans filed another complaint against Aloha and other defendants for a separate property.  See Ex. A. to Aloha's Mot., ECF No. 121-3, Golden v. Certain Underwriters at Lloyd's London, Civ. No. 18-1-327 (amended complaint in first lawsuit filed on May 10, 2019); Ex. C. to Aloha's Mot., ECF No. 121-5, Corrigan v. Certain Underwriters at Lloyd's London, Civ. No. 19-1-233 (second

lawsuit).  Their allegations are generally the same as those made by the Aquilinas against Moa.  Specifically, the Corrigans allege that their homes sustained damages after the 2018 Kilauea eruption, and that the various defendants acted unlawfully in handling their claims and in refusing to pay out their claims. Like the Aquilinas, the Corrigans also allege wrongdoing in the procurement of the insurance policies, including the parties' failure to comply with certain state regulations for the placement of surplus lines coverage and their failure to advise Plaintiffs of the availability of the more comprehensive coverage they sought.

The lawsuits assert four causes of action against Aloha:

1. Breach of the Implied Covenant of Good Faith & Fair Dealing;

2. Violation of Hawai`i's UDAP Law, § 480-2;

3. Civil Conspiracy; and

4. Negligence.

**III. Procedural Posture**

Now before the Court are the Retail Brokers' motions to dismiss or in the alternative stay the proceedings pursuant to the <u>Colorado River</u> abstention doctrine, which they filed on February 13, 2020.  <u>See</u> ECF No. 120 ("Moa's Motion") & 121 ("Aloha's Motion").  Plaintiffs filed their opposition briefs on

April 28, ECF Nos. 138 & 139, and Underwriters filed their reply briefs on May 5, ECF Nos. 153 & 154.  Moa also filed a joinder of simple agreement to Aloha's Motion,[3/] ECF No. 144 ("Joinder"), and Aloha filed statements "in support" of Moa's Motion, ECF No. 150, and Moa's Joinder, ECF No. 156.  Underwriters and Monarch both filed statements of no position as to Moa's and Aloha's Motions.  ECF Nos. 135, 136, 145, & 146.  The Court held a telephonic hearing on both Motions on Tuesday, May 19.

## LEGAL FRAMEWORK

The Retail Brokers seek dismissal, or alternatively, a stay, of this action under the Colorado River abstention doctrine.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule."  Colorado River, 424 U.S. at 813, 96 S. Ct. 1236, 47 L. Ed. 2d 483.  Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction granted to them, so the mere "pendency of an action in the state

---

[3/] The Local Rules distinguish between "substantive" joinders and joinders "of simple agreement."  See L.R. 7.9.  A substantive joinder "must be filed and served within seven (7) days of the filing of the motion . . . joined in" and must "be based on a memorandum supplementing the motion."  Id.  A joinder of simple agreement, on the other hand, "may be filed at any time" and need not be accompanied by a memorandum.  Id.  A party filing a substantive joinder may "seek[] the same relief sought by the movant for himself, herself, or itself," whereas a joinder of simple agreement "simply seek[s] relief for the original movant."  Id.  Here, Moa's Joinder was filed over two months after the initial Motion was filed and it is not accompanied by a memorandum.  Accordingly, the Court construes Moa's Joinder as one of simple agreement, seeking the same relief for the original movant, Aloha.

court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Id. at 817.  The Colorado River doctrine provides a narrow exception to that rule.  See Holder v. Holder, 305 F.3d 854, 867 (9th Cir. 2002).  It provides that where there is a parallel, ongoing state-court proceeding, "courts may refrain from deciding an action for damages only in 'exceptional' cases, and only 'the clearest of justifications' support dismissal." R.R. St. & Co. Inc. v. Transp. Ins. Co., 656 F.3d 966, 978 (9th Cir. 2011) (quoting Colorado River, 424 U.S. at 818-19, 96 S. Ct. 1236, 47 L. Ed. 2d 483).  Colorado River deference "rests on considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1367 (9th Cir. 1990) (quoting Colorado River, 424 U.S. at 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483) (internal quotation marks omitted) (alteration in Colorado River).

        The Ninth Circuit has cautioned that Colorado River abstention should be used only in "rare," "limited," and "exceptional" cases.  R.R. St. & Co., 656 F.3d at 977-78.  To decide whether a case presents "exceptional circumstances," courts in the Ninth Circuit weigh the following eight factors:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the

> desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

Id. at 978-79. "These factors are not a 'mechanical checklist'; indeed, some may not have any applicability to a case." Seneca Ins. Co. v. Strange Land, Inc., 862 F.3d 835, 842 (9th Cir. 2017) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)). Courts instead examine the factors in "a pragmatic, flexible manner with a view to the realities of the case at hand." Id. (quoting Cone Mem'l Hosp., 460 U.S. at 21, 103 S. Ct. 927). The balance is "heavily weighted in favor of the exercise of jurisdiction," and there is "a strong presumption against federal abstention." Id. (citing Cone Mem'l Hosp., 460 U.S. at 16, 103 S. Ct. 927, 74 L. Ed. 2d 765). "Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one." Travelers, 914 F.2d at 1369.

Whenever it is appropriate to decline to exercise jurisdiction under the Colorado River doctrine, courts in this circuit "generally require a stay rather than a dismissal." Montanore Minerals Corp. v. Bakie, 867 F.3d 1160, 1166 (9th Cir.

2017).  "A stay 'ensures that the federal forum will remain open if for some unexpected reason the state forum . . . turn[s] out to be inadequate.'"  Id. (quoting Attwood v. Mendocino Coast Dist. Hosp., 886 F.2d 241, 243 (9th Cir. 1989)).

## DISCUSSION

The question here is whether this case implicates "exceptional circumstances" that warrant abstention under Colorado River.  Based on the evaluation of the factors below, the Court holds that it does not.

## I.   Evaluation of the Colorado River Factors

### a. Jurisdiction Over the Res

The first Colorado River factor considers "which court first assumed jurisdiction over any property at stake."  Seneca Ins. Co., 862 F.3d at 841.  Because neither court here has assumed in rem jurisdiction over any property, the parties agree that this factor is neutral.

### b. Inconvenience of the Federal Forum

The second factor considers "whether the inconvenience of the federal forum is so great that this factor points toward abstention."  Morisada Corp. v. Beidas, 939 F. Supp. 732, 737 (D. Haw. 1995) (quoting Travelers, 914 F.2d at 1368) (emphasis removed).  The Retail Brokers argue that this factor supports a stay because "the federal forum is far more inconvenient than

- 11 -

the state forum." Aloha's Mot. 16; see also Moa's Mot. 8-9.

The state courthouse is located in Hilo, on the Big Island,
while the federal courthouse is located in Honolulu, on the
island of Oahu. Plaintiffs all live on the Big Island and Moa's
offices are located there as well. The properties that are the
subject of this lawsuit are located on the Big Island and the
volcanic eruption that gave rise to Plaintiffs' alleged losses
took place there. As far as the distance, the Retail Brokers
acknowledge that the 230 miles to the federal courthouse is not
extreme in itself, but they emphasize that the parties traveling
to and from Oahu would require the expenses and inconvenience of
daily inter-island airfare. Moa's Mot. 8-9; Aloha's Mot. 15-16.

It is not enough that one forum is simply "better" or
"more convenient" than the other. Travelers, 914 F.2d at 1368
(quoting Evanston Ins. Co. v. Jimco, Inc., 844 F.2d 1185, 1192
(5th Cir. 1988)). Yet that is the basis of the Retail Brokers'
arguments. See, e.g., Moa's Mot. 8 ("The federal forum is more
inconvenient than the state forum . . . ."). To the extent that
there is any relative inconvenience of the federal form here, it
is not "so great that this factor points toward abstention."
See Travelers, 914 F.2d at 1368 (quoting Evanston Ins. Co., 844
F.2d at 1192); see also Am. Motorists Ins. Co. v. The Club at
Hokulia, Inc., Civ. No. 10-00199-SOM/KSC, 2010 WL 5389221, at *6
(D. Haw. Dec. 21, 2010) (finding that the federal courthouse in

Honolulu was not "particularly inconvenient" as compared with the state forum on the Big Island).  Thus, this factor is neutral, or at most weighs slightly in favor of a stay.

### c. Desire to Avoid Piecemeal Litigation

"[P]iecemeal litigation is a factor that can support a stay under the exceptional circumstances test." Travelers, 914 F.3d at 1369; see also Seneca Ins. Co., 862 F.3d at 842-43 ("[T]here must be exceptional circumstances present that demonstrate that piecemeal litigation would be particularly problematic.").  "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Travelers, 914 F.3d at 1368 (quoting Am. Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1988)). "The mere possibility of piecemeal litigation does not constitute an exceptional circumstance.  Instead, the case must raise a special concern about piecemeal litigation, which can be remedied by staying or dismissing the federal proceeding." R.R. St. & Co., 656 F.3d at 979 (internal quotation marks and citations omitted).

The Retail Brokers argue that there is a danger of pretrial rulings on dispositive issues that could differ between the state and federal forums, which could lead to inconsistent or conflicting outcomes on the same issues or facts.  Aloha's

Mot. 17-18; Moa's Mot. 9-10.  They argue that these concerns have already begun to play out given that this Court made early substantive rulings when it dismissed the original complaint. Aloha's Reply 9-10; Moa's Reply 6-7.  Plaintiffs respond that this case and the state-court actions raise different issues and that the state-court actions will not answer the central questions in the case before this Court.  Plaintiffs' theory is that the state-court actions focus on the conduct of the various Defendants in handling their claims <u>after</u> the 2018 Kilauea eruption, while the case in this Court focuses on the conduct before the eruption (<u>i.e.</u>, in procuring the allegedly inadequate coverage in the policies in the first place).

The Court finds Plaintiffs' attempt to distinguish the federal and state actions based on pre- and post-eruption conduct unpersuasive.  Nonetheless, the Retail Brokers have not pointed out any "exceptional" circumstances that would justify a special concern about piecemeal litigation in this case.  It is true that the state and federal cases involve overlapping issues and facts, but that alone is not sufficiently "exceptional" to justify abstention.  <u>See</u> <u>Seneca Ins. Co.</u>, 862 F.3d at 842 (noting that some "duplication of judicial efforts" is the "unavoidable price of preserving access to . . . federal relief" (quoting <u>Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines</u>, 925 F.2d 1193, 1195 (9th Cir. 1991))); <u>United States v. Morros</u>,

268 F.3d 695, 706 (9th Cir. 2001) ("Colorado River does not say that every time it is possible for a state court to obviate the need for federal review by deciding factual issues in a particular way, the federal court should abstain.").  Finding otherwise would "make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States."  Morros, 268 F.3d at 707 (quoting New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 368, 109 S. Ct. 2506, 105 L. Ed. 298).

In analyzing the piecemeal litigation factor, courts consider whether certain issues implicate a policy or law favoring "unified state adjudication"; those issues may belong in state court.  See id. at 706 ("Colorado River stands for the proposition that when Congress has passed a law expressing a preference for unified state adjudication, courts should respect that preference.").  The Retail Brokers here have not identified any "strong federal policy" here that all of Plaintiffs' claims belong in state court.  See id. at 706-07 (quoting the Third Circuit's statement that "the avoidance of piecemeal litigation factor is met . . . only when there is evidence of a strong federal policy that all claims should be tried in the state courts" (quoting Ryan v. Johnson, 115 F.3d 193, 197-98 (3d Cir. 1997))).  And the presence of "multiple defendants," "numerous

claims," and even "complex state tort and insurance issues" are not, according to the Ninth Circuit, enough to establish "exceptional circumstances." Seneca Ins. Co., 862 F.3d at 843. Thus, this Court is not convinced this factor weighs in favor of a stay. See id. (finding that this factor did not favor a stay because there was no "clear federal policy" of avoiding piecemeal adjudication in that context).

In any event, at this point the state court has not made any substantive rulings whatsoever, so there is "no certainty that duplicative effort would result." Travelers, 914 F.2d at 1369. And "whichever court were to first reach a judgment on the merits, that judgment would most likely have conclusive effect on the other court." Id.

Last, abstaining from Plaintiffs' claims against the Retail Brokers would actually increase the concern of piecemeal litigation given that this case is moving forward in federal court with respect to related claims (including a UDAP claim) against two other Defendants, Underwriters and Monarch, who have not joined in these motions to abstain. See Order Granting in Part and Denying in Part Defendants Underwriters' and Monarch's Motions to Dismiss, ECF No. 159. As the Court is retaining jurisdiction with respect to those claims against those Defendants, splitting the Defendants in this class action would almost certainly result in piecemeal litigation.

- 16 -

Simply put, the Retail Brokers have not shown any "exceptional circumstances" here to suggest that piecemeal litigation would be "particularly problematic" if the Court retains jurisdiction.  Seneca Ins. Co., 862 F.3d at 842-43. "Nothing about this dispute evinces a special or important rationale or legislative preference for resolving these issues in a single proceeding."  Id. at 843.  And finally, this case does not "raise a special concern about piecemeal litigation, which can be remedied by staying or dismissing the federal proceeding," and which "the court could [not] have avoided by other means."  Montanore Minerals Corp., 867 F.3d at 1167 (quoting R.R. St. & Co., 656 F.3d at 979) (alteration in Montanore Minerals Corp.).  In any event, "[a]ny doubt as to whether a factor exists should be resolved against a stay, not in favor of one."  Travelers, 914 F.2d at 1369.

The Court thus finds that this factor does not weigh in favor of a stay.

### d. Order in Which Jurisdiction Was Obtained

The next factor is the order in which the forums gained jurisdiction.  Courts do not apply a mechanical first-to-file rule.  Instead, courts, consider "the realities" of the case "in a pragmatic, flexible manner."  Cone Mem'l Hosp., 460 U.S. at 21, 103 S. Ct. 927, 74 L. Ed. 2d 765.  In analyzing this factor, "priority should not be measured exclusively by which

complaint was filed first, but rather in terms of how much progress has been made in the two actions."  Cone Mem'l Hosp., 460 U.S. at 21, 103 S. Ct. 927, 74 L. Ed. 2d 765.

This factor implicates slightly different timelines for each of the Retail Brokers because Aloha was joined in this lawsuit one year after it was originally filed:  (1) the federal case was filed in December 2018 and included Moa (but not Aloha) as a defendant; (2) the state-court lawsuits were filed in March, May, and August of 2019; (3) the Court dismissed the original complaint in this case in September 2019; and (4) the Amended Complaint in this case was filed in December 2019, which first named the Corrigans as Plaintiffs and Aloha as a Defendant.  This case is in the pleading stage, while the state-court proceedings have entered the discovery phase.

The Retail Brokers argue that the relative progress of the state-court proceedings is "substantial."  Moa's Mot. 11; see also Aloha's Mot. 18-19.  They contend that the state actions are further along because answers have been filed and written discovery among the parties has already begun.  Aloha's Mot. 18.  The Retail Brokers contrast this case, in which they argue that there has been "little progress."[4/]  Moa's Mot. 11. They point to the case still being in the early pleading stage,

---

[4/]  Interestingly, Aloha in its Reply seems to contradict this argument to argue that there is a danger of piecemeal litigation.  Aloha Reply 9-10. It observes that this Court has already made several substantive rulings.

as well as the fact that no answers have been filed and no discovery has taken place.  Moa's Mot. 11; Aloha's Mot. 18. Plaintiffs counter that the state-court actions are only "slightly ahead."  Opp. to Moa's Mot. 15; Opp. to Moa's Mot. 12.

Comparing the progress made in this case versus the progress made in the state-court actions, the Court finds that any difference is negligible.  Certainly the state-court actions have not progressed substantially further than this case.  In fact, while this case is technically still in the pleading stage, that is only because this Court made several substantive rulings on the prior set of motions to dismiss.[5/]  Those rulings were impactful.  For instance, the Court made detailed rulings on the scope and nature of a broker's fiduciary duty and duty of reasonable care owed to an insured; on the extent to which a broker can be liable for an insurer bad-faith claim; and on the relevant standards and factual threshold for pleading a UDAP claim.[6/]  These significant rulings ultimately led to the framing of the Amended Complaint in its current form.

The state court, on the other hand, has not made any

---

[5/]  See Order Granting Defendant Moa's Motion to Dismiss, ECF No. 106 ("Prior Moa Order"); Order Granting Defendant Monarch's Motion to Dismiss, ECF No. 107; Order Granting Defendant Pyramid's Order, ECF No. 108; & Order Granting Defendant Certain Underwriters at Lloyd's Motion to Dismiss, ECF No. 109 ("Prior Underwriters Order").

[6/]  For example, see Prior Moa Order at 36, 44-47 (rulings on UDAP), 53-59 (rulings on bad faith), 65 (rulings on fiduciary duties), & 66-69 (rulings on negligence); Prior Underwriters Order at 32-33, 38-40, & 48-52 (rulings on UDAP).

substantive rulings on dispositive motions and the parties have

offered no indication that the state-court proceedings might

soon resolve.  Again, the Retail Brokers' arguments fail to

point out any "exceptional" circumstances that warrant a stay.

See Neuchatel Swiss Gen. Ins. Co., 925 F.2d at 1195 ("Even if

the litigants had made somewhat more progress in Geneva than in

the district court by the time the stay motion was heard, the

mere fact that parallel proceedings may be further along does

not make a case exceptional.").  To illustrate, this case is not

like Montanore Minerals Corp. v. Bakie, where the Ninth Circuit

reasoned that this factor weighed in favor of a stay.  867 F.3d

at 1169-70.  The parties in that case had been litigating the

state-court action for six years by the time the federal court

action was filed, and the—"parties had conducted extensive

discovery, filed cross-motions for summary judgment, and the

state court had issued an order deciding several issues in the

case."  Id.  Here, to the contrary, this Court—not the state

court—has made substantive rulings that have shaped the nature

of the case as it moves forward.  And while this case is still

in the pleading stage, it is there because of prior substantive

rulings.

        All that said, the Court would be remiss if it did not

note its concern about the fact that both the state and federal

actions were filed by Plaintiffs.  This makes the case different

from other Colorado River cases in which the opposing parties
"race to the courthouse," so to speak.  There is some authority
suggesting that the same party filing in both state and federal
court tilts this factor in favor of a stay.  See, e.g., Am.
Int'l Underwriters, 843 F.2d at 1258-59 (finding that this
factor favored abstention because the plaintiff "should also be
bound by its initial choice of the state forum, given the
substantial progress that has occurred in the state court
litigation"); Horowitz v. Sulla, Civ. No. 15-00186 JMS-BMK, 2015
WL 5439227, at *8 (D. Haw. Sept. 11, 2015) (holding that
plaintiffs' filing of a case in state court, improperly removing
it, and then filing a new case in federal court after remand
weighed heavily in favor of abstention because "permitting th[e]
action to continue would be giving Plaintiffs an improper
'second bite' at the apple, after their action in state court
failed"); Corbin v. United Law Grp., No. CV 09-9334-VBF(RNBx),
2010 WL 11601588, at *5 (C.D. Cal. Mar. 5, 2010) ("[T]he fact
that it is Plaintiffs who first filed in state court, then later
filed a similar action in federal court further means this
factor should weigh in favor of Defendants.").  Plaintiffs here
filed all four lawsuits.  And while the original complaint in
this case was filed slightly before the state actions, the
current theory of the case only made it into federal court when
Plaintiffs amended their complaint one year into the pending

- 21 -

state-court proceedings.

Still, this case does not involve the "unusual" or "exceptional" circumstances that Judge Seabright recognized in Horowitz and the Ninth Circuit recognized in American Underwriters International.  There have been no specific adverse state rulings that seemingly led Plaintiffs to bring or amend their claims in federal court, and there has been less progress in the state-court proceedings here than there had been in the several years of state proceedings in those cases.  Accordingly, even though Plaintiffs here brought both lawsuits themselves, this case does not implicate exceptional circumstances to the same extent as the cases cited above.  Moreover, the substantial rulings made by this Court (some of which were even unfavorable to Plaintiffs) outweigh the fact that Plaintiffs' chose, for whatever reason, to sue in both state and federal courts.

In sum, the Court finds that this factor does not weigh in favor of abstention.

### e. Rule of Decision

The next factor considers whether state or federal law controls.  "Although 'the presence of federal-law issues must always be a major consideration weighing against surrender,' the 'presence of state-law issues may weigh in favor of that surrender' only 'in some rare circumstances.'"  Travelers, 914 F.3d at 1370 (quoting Cone Mem'l Hosp., 460 U.S. at 26, 103 S.

Ct. 927, 74 L. Ed. 2d 765).  Those circumstances exist "only
when the state law questions are themselves complex and
difficult issues better resolved by a state court; it is not
enough that a state law case is complex because it involves
numerous parties or claims."  Seneca Ins. Co., 862 F.3d at 844.

This case involves routine issues of state law—UDAP
claims, negligence, and unjust enrichment.  This Court is fully
capable of deciding those types claims and indeed has done so in
numerous cases.  Although the Retail Brokers note certain novel
statutory questions implicated in this case, the Court is
proficient in handling issues of statutory interpretation.
Deciding UDAP and negligence claims in the insurance context
will not entail any more federal intrusion into state law or
policy than would any other diversity action.  See id.
("Congress, having adopted the policy of opening the federal
courts to suitors in all diversity cases involving the
jurisdictional amount, we can discern in its action no
recognition of a policy which would exclude cases from the
jurisdiction merely because they involve state law or because
the law is uncertain or difficult to determine." (quoting
Meredith v. City of Winter Haven, 320 U.S. 228, 236, 64 S. Ct.
7, 88 L. Ed. 9 (1943))).

And, as noted earlier, the issues raised in this case
do not reveal any particular policy favoring "unified state

- 23 -

adjudication," like the complex water issues in <u>Colorado River</u>.
See <u>Morros</u>, 268 F.3d at 706-07; <u>see also</u> <u>Seneca Ins. Co.</u>, 862
F.3d at 844 n.3 (rejecting an argument that "amount[ed] to an
assertion that federal courts cannot properly apply state
insurance law," describing that as "something federal courts
routinely do").  Nor do they involve especially unique questions
of state law, like the state eminent domain law at issue in
<u>Montanore Minerals Corporation</u>.  <u>Montanore Minerals Corp.</u>, 867
F.3d at 1168-68 (holding that such issues went "beyond what [the
Ninth Circuit] ha[s] identified as routine state law issues
(e.g., breach of contract, indemnification and subrogation,
misrepresentation, and breach of fiduciary duty)").  This case
is—at its core—a UDAP and negligence case in the insurance
context, which this Court is well-equipped to handle.  <u>See</u>
<u>Seneca Ins. Co.</u>, 862 F.3d at 844 (finding that "straightforward"
insurance dispute did not implicate "rare circumstances" to
weight this factor in favor abstention).

  For these reasons, there are no "rare circumstances"
here and this factor does not weigh in favor of granting a stay.

### f. Inadequacy of State Court Proceedings to Protect Federal Litigants' Rights

  The next factor "involves the state court's adequacy
to protect federal rights, not the federal court's adequacy to
protect state rights."  <u>Morisada</u>, 939 F. Supp. at 740.  There

are no federal claims here; the lawsuits purely allege state-law claims.  Accordingly, this factor is neutral.

### g. Forum Shopping

The next factor addresses the "desire to avoid forum shopping."  Seneca Ins. Co., 862 F.3d at 841.  The Court considers "whether either party improperly sought more favorable rules in its choice of forum or pursued suit in a new forum after facing setbacks in the original proceeding."  Id. at 846.

The Retail Brokers argue that this case was brought for purposes of preserving the federal forum.  They speculate about the possible motives of Plaintiffs to gain a tactical advantage or preserve a "'second bite' at the same apple" in federal court.  Moa's Mot. 13; Aloha's Mot. 21.  The Court indeed is somewhat wary of Plaintiffs' motives in maintaining both the federal and state actions.  At first, the federal lawsuit sought relief stemming from allegations of a fraudulent or deceptive "scheme."  But the plaintiffs adjusted their pleading and theory of the case to drop the allegations of a deceptive scheme, and now rest on the "unfair" prong of UDAP and other negligent lapses of duties owed.  These changes render the First Amended Complaint more similar to the already-pending state-court actions.  As noted above, some circuits have also held that "the filing of a second lawsuit by the plaintiff should weigh against the exercise of federal jurisdiction."

- 25 -

Gonzalez v. Cruz, 926 F.2d 1, 4 (1st Cir. 1991) (collecting cases and noting that the "significance of this factor . . . must be examined in light of the motivation of the plaintiff in filing the second suit"); Am. Int'l Underwriters, 843 F.2d at 1259 (affirming district court's abstention where the plaintiff had filed both the state and federal lawsuits).

That said, the Court does not find the circumstances here so "exceptional" to justify surrendering the Court's otherwise "unflagging" jurisdiction.  Plaintiffs' conduct does not reveal obvious forum shopping in the way other courts have recognized.  See, e.g., Montanore Minerals Corp., 867 F.3d at 1169-70 (holding that this factor weighed in favor of a stay because the plaintiffs had—after six years of state-court litigation—filed the federal lawsuit immediately after an unfavorable state ruling); Am. Int'l Underwriters, 843 F.2d at 1259 (affirming district court's finding that this factor favored a stay because plaintiff was "rule-of-evidence shopping" in federal court after two years of litigation in state court). It is at best unclear what Plaintiffs' motives are here.  And "federal courts may not decline to exercise jurisdiction solely on the basis of forum shopping."  Travelers, 914 F.2d at 1371 (citing F.D.I.C. v. Nichols, 885 F.2d 633, 638 (9th Cir. 1989)). When it is unclear whether a factor would weigh in favor of a stay, the factor should weigh against a stay.

### h. **Whether the State-Court Actions Will Resolve All Issues**

The final factor considers whether the state-court proceedings sufficiently parallel the federal proceedings. "[E]xact parallelism" is not required; it is sufficient if the state and federal proceedings are "substantially similar." Montanore Minerals Corp., 867 F.3d at 1170.  If a court abstains under Colorado River, it by implication concludes that "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." Seneca Ins. Co., 862 F.3d at 845 (quoting Cone Mem'l Hosp., 460 U.S. at 28, 103 S. Ct. 927, 74 L. Ed. 2d 765). "'[T]he existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes' a Colorado River stay or dismissal." R.R. Street & Co., 656 F.3d at 981 (quoting Smith v. Cent. Ariz. Water Conservation Dist., 418 F.3d 1028, 1033 (9th Cir. 2005)).  Typically, "a stay is inappropriate when there is a good chance that the federal court would have to decide the case eventually because the state proceeding will not resolve all of the issues in the federal case." Id. at 983 (citing Intel Corp. v. Advanced Micro Devices, Inc., 12 F.3d 908, 913 (9th Cir. 1993)).

This factor is neutral, or at most slightly favors a stay.  Although the claims in the pending state-court actions

are not exactly parallel with the Amended Complaint in this action, they are certainly "substantially similar."  The claims arise out of the same overarching transactions and the ultimate denial of coverage for losses caused by the Kilauea eruption in 2018.  The state actions are also more comprehensive than the federal action, including more causes of action[7/] and theories of recovery, as well as other allegations with respect to coverage and the Defendants conduct in handling Plaintiffs' claims <u>after</u> the eruption.

Plaintiffs point out that their focus in the federal action is the conduct of Defendants in procuring and selling "inadequate" insurance, while the state-court actions focus on the handling of the claims after Plaintiffs sustained lava damage.  They also asserted at the hearing that their claims in federal court seek damages exclusively in the form of paid premiums, while the state-court actions seek different damages.

Turning first to the latter argument, Plaintiffs contend that the federal and state cases are different because this case seeks a return of premiums based on pre-eruption wrongdoing—distinct from the state-court actions seeking damages

---

[7/]  The only exception is that the federal lawsuit includes a cause of action for unjust enrichment, which is absent from the state-court actions. The Court finds that this has no meaningful bearing on the inadequacy of the state court to resolve all of Plaintiffs' claims.  The unjust enrichment claim is solely alleged in the alternative and, given that the Court has dismissed the claim against Underwriters and Monarch, it is not likely to survive against the Retail Brokers anyway.

primarily for post-eruption wrongdoing.  The Court is not persuaded.  The claim for premiums primarily is addressed in the Amended Complaint connection with the unjust enrichment count, which is only pleaded in the alternative to the UDAP and negligence claims.[8/]  Not to mention, the Court has now dismissed the unjust enrichment count against Underwriters and Monarch, so it is unlikely to survive against the Retail Brokers anyway. The damages are also pleaded more broadly in both this case and the state-court actions than Plaintiffs' counsel would admit; Plaintiffs in this case appear to seek not only a return of premiums, but also UDAP and other damages in both forums.

Aside from damages, the operative complaints in the state and federal actions are also quite substantively similar and implicate many of the same factual questions.  If anything, the state actions are in many ways broader and more comprehensive than the federal action.  In that sense, this factor would tend to lean in favor of a stay.  On the other hand, the Amended Complaint in this case seeks certification of a Class, while the state-court actions seek relief only on behalf of the individual named plaintiffs.  What this means is

---

[8/]   While the Amended Complaint makes some general references to Plaintiffs and the Class paying premiums and commissions to Defendants outside the unjust enrichment count, those allegations always tend to associate with the idea that the payments unjustly enriched Defendants.  See, e.g., Am. Compl. ¶ 6 (general factual allegation that "Plaintiffs and the Class paid premiums and commissions to Defendants that Defendants otherwise would not have received, but for their wrongdoing, injuring Plaintiffs and the Class and unjustly enriching Defendants"); see also id. ¶¶ 104, 111.

that, if this Court abstains, then the claims of qualifying members of the putative Class would not be remedied in the state-court actions.  The Class has not yet been certified and the Court cannot say at this stage whether class certification will be successful.  But, as the case stands now, this is a putative class action seeking broad relief for both the individuals and those similarly situated.  The same cannot be said of the pending actions in state court.

Even assuming the federal and state proceedings here are substantially similar—which they appear to be—that alone is not an "exceptional" circumstance justifying abstention.  As the Ninth Circuit recently clarified, "sufficiently similar claims are a necessary precondition to Colorado River abstention and should not, absent more, add weight to the balance in favor of abstention."  Seneca Ins. Co., 862 F.3d at 845.  Said another way, "[p]arallelism is necessary but not sufficient to counsel in favor of abstention."  Id.  Unless "the clearest of justifications" warrant the surrender of federal jurisdiction, parallelism alone is not enough, and this factor is neutral. Id. (quoting Cone Mem'l Hosp., 460 U.S. at 25-26, 103 S. Ct. 927, 74 L. Ed. 2d 765)).

For these reasons, considering this factor as a whole, the Court finds that this factor is neutral, or at most weighs slightly in favor of a stay.

## II.  Balancing the Colorado River Factors

To determine whether a stay is warranted, the Court must balance the above factors "with the balance heavily weighted in favor of the exercise of jurisdiction." Cone Mem'l Hosp., 460 U.S. at 16, 103 S. Ct. 927, 74 L. Ed. 2d 765. Applying those factors to this case, "exceptional" circumstances are absent.  Here, the only factors that may weigh in favor of a stay—and they do so only slightly—are the minor inconvenience of the federal forum, the fact that Plaintiffs filed both the parallel actions, and the similarities between the state and federal lawsuits.

On balance, these factors do not establish "exceptional circumstances" required for Colorado River deference.  Instead, they—taken with the strong presumption against abstention—counsel in favor of continuing the proceedings in federal court.  The Court thus holds that a stay of this action is not warranted.

## III. Landis Factors

Aloha argues in the alternative that the Court should stay this case pursuant to its inherent powers under Landis v. North American Co., 299 U.S. 28, 57 S. Ct. 73, 81 L. Ed. 20 (1936).[9/]  Aloha advances the same arguments as those it made in the Colorado River analysis.  For similar reasons, the Court

---

[9/]  Moa does not address Landis in either of its briefs.

declines to exercise its inherent authority to stay this case under Landis.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis, 299 U.S. at 254-55, 57 S. Ct. 73, 81 L. Ed. 20.  Deciding whether a stay is appropriate under Landis "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Id. Courts examine (1) "possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof and questions of law which could be expected to result from a stay." CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962) (citing Landis, 299 U.S. at 254-55, 57 S. Ct. 73, 81 L. Ed. 20).

Analyzing these factors, the Court finds that a stay under Landis is not appropriate.  Any form of abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Hochroth v. Ally Bank, Civ. No. 18-00319-JAO-KJM, 2019 WL 1386368, at *7 (D. Haw. Mar. 27, 2019) (quoting Colorado River, 424 U.S. at 813, 96 S. Ct. 1236, 47 L. Ed. 2d 483).  The Court is

unpersuaded by Aloha's arguments that the circumstances in this case warrant the extreme remedy of abstention, whether under <u>Landis</u> or <u>Colorado River</u>.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Aloha's Motion to Dismiss and/or Stay First Amended Complaint, ECF No. 121, and DENIES Moa's Motion to Dismiss or in the Alternative Stay Proceedings, ECF No. 120, and its Joinder to Aloha's Motion, ECF No. 144.  The Court retains jurisdiction over this matter and the case shall proceed accordingly.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, June 10, 2020.



Alan C. Kay
Sr. United States District Judge

<u>Aquilina, et al. v. Certain Underwriters at Lloyd's, et al.</u>, Civ. No. 18-0496-ACK-KJM, Order Denying Defendants Moa's and Aloha's Motions to Dismiss or in the Alternative Stay.