UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| STEPHEN G. AQUILINA and LUCINA J. AQUILINA, Individually and on Behalf of All Others Similarly Situated; and DONNA J. CORRIGAN and TODD L. CORRIGAN, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>  vs.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S LONDON; LLOYD'S SYNDICATE #2003; LLOYD'S SYNDICATE #318; LLOYD'S SYNDICATE #4020; LLOYD'S SYNDICATE #2121; LLOYD'S SYNDICATE #2007; LLOYD'S SYNDICATE #1183; LLOYD'S SYNDICATE #1729; LLOYD'S SYNDICATE #510; BORISOFF INSURANCE SERVICES, INC. d/b/a MONARCH E&S INSURANCE SERVICES; SPECIALTY PROGRAM GROUP, LLC d/b/a SPG INSURANCE SOLUTIONS, LLC; ALOHA INSURANCE SERVICES, INC.; ILIKEA LLC d/b/a MOA INSURANCE SERVICES HAWAII; and DOES 1-100,<br><br>          Defendants. | No. 1:18-cv-00496-ACK-KJM |

ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

This matter is before the Court on Plaintiffs'
Unopposed Motion for Preliminary Approval of the Settlement
Agreement (the "Motion") between Plaintiffs Stephen and Lucina
Aquilina and Todd and Donna Corrigan (collectively,
"Plaintiffs"), for themselves and on behalf of the Settlement
Class, and Lloyd's Syndicates 2003, 318, 4020, 2121, 2007, 1183,
1729, and 510 (collectively, "Underwriters" or "Lloyd's");

Borisoff Insurance Services, Inc. d/b/a Monarch E&S Insurance

Services, Specialty Program Group, LLC d/b/a SPG Insurance

Solutions, LLC (collectively, "Monarch"); Aloha Insurance

Services, Inc. ("Aloha"); and Ilikea LLC d/b/a Moa Insurance

Services Hawaii ("Moa") (and together with Aloha, Monarch, and

Underwriters, "Defendants") for consideration of whether the

Settlement reached by the parties should be preliminarily

approved, the proposed Settlement Class preliminarily certified,

and the proposed plan for notifying the Settlement Class

approved.[1/]   Having reviewed the Motion together with its

exhibits and in conjunction with oral argument held on July 22,

2021, and upon review of the amended proposed Settlement

Agreement and Notice Program filed on July 30, 2021, the Court

has determined that the proposed Settlement Class is likely to

be certified for settlement purposes and the proposed Settlement

satisfies the criteria for preliminary approval.

Accordingly, Plaintiffs' unopposed Motion for

Preliminary Approval of the Settlement, ECF No. 405, is GRANTED.

## **BACKGROUND**

Rather than restate the factual background and

complaint allegations in detail, the Court here provides only a

---

[1/]   Unless otherwise indicated, capitalized terms used herein have the same meaning as in the revised Settlement, ECF No. 408.

summary of the general facts, events, and allegations pertinent to deciding whether the Class should be provisionally certified and whether preliminary approval of the Settlement is proper.[2/]

## I.   Summary of Litigation

### a. Plaintiffs' Claims & Allegations

Plaintiffs are residents of the Puna District of Hawai`i Island (the "Big Island") who own properties in the Lava Zone 1, an eruption zone near Kilauea Volcano.  They brought this lawsuit in 2018 as a putative class action asserting claims relating to their purchase of surplus lines homeowners insurance policies brokered and underwritten by the various Defendants. ECF No. 1.  The policies each contained an exclusion for the peril of lava or lava flow, which Plaintiffs claim rendered them worthless or unsuitable given their properties' location in a high-risk lava zone.  In early 2018, the Kilauea Volcano erupted, displacing nearby residents and causing many to sustain substantial damage to their homes and properties.

After two rounds of motions to dismiss, the operative Second Amended Complaint, ECF No. 302, asserts four claims for relief:

---

[2/]   Several prior orders in this case detail the factual allegations and the nature of Plaintiffs' claims (some of which have been dismissed).  See ECF Nos. 106, 107, 108, 109, 159, & 160.

- as against all four Defendants, a claim for unfair and deceptive acts and practices ("UDAP") under the "unfair" prong;

- as against Underwriters, a claim for breach of the duty of good faith and fair dealing ("bad faith" claim);

- as against Moa and Aloha, a claim for negligence; and

- as against Moa and Aloha, a claim for unjust enrichment.

All four claims are based on Plaintiffs' allegations that Defendants in their various capacities breached obligations under the Hawai`i Surplus Lines Act.  They rely in particular on H.R.S. § 431:8-301(a) which requires that surplus lines insurers conduct a "diligent search" for other available coverage before placing a homeowner with surplus lines coverage.  Had Defendants conducted that diligent search, Plaintiffs say, they would have been required to advise qualified homeowners of the availability of lava-damage coverage through the Hawai`i Property Insurance Association ("HPIA"), a statutorily created association of admitted insurers established in part in response to Kilauea's eruption patterns, which made the private insurance market less likely to insure certain high-risk areas.  Plaintiffs' basic underlying theory is that they suffered injury upon purchasing

4

the surplus lines policies because, in their view, the policies were written and placed unlawfully.

### b. Procedural History

As mentioned, this case began in 2018 as a putative class action. The initial Complaint was brought by lead Plaintiffs the Aquilinas and Audra and Scott Lane, and named as Defendants Underwriters, Monarch, Moa, and Pyramid Insurance Centre, Ltd. ("Pyramid"). ECF No. 1. It alleged that the various Defendants had engaged in a deceptive scheme to defraud Plaintiffs and the putative class and deprive them of meaningful insurance coverage. Id. All four Defendants moved to dismiss for Federal Rule of Civil Procedure ("Rule") 9(b) pleading deficiencies, which the Court granted without prejudice on September 26, 2019. ECF Nos. 106, 107, 108, & 109.

The First Amended Complaint, ECF No. 114, was filed on December 12, 2019. It replaced the Lanes with the Corrigans, and Pyramid (the Lanes' retail broker) with Aloha (the Corrigans' retail broker). It also changed Plaintiffs' theory of the case, abandoning the allegations of deception and fraud and reframing them to allege unfair and negligent conduct.[3/] After the Court entered two orders dismissing the unjust

---

[3/] In summary, following the May 19, 2020 hearing and the Court's June 10, 2020 orders, ECF Nos. 159 & 160, Plaintiffs generally decided to pursue in this federal case the return of insurance premiums, while claims for damage to homes would be sought by lawsuits filed in state courts.

enrichment claim against Underwriters and Monarch and declining to abstain under the Colorado River abstention doctrine, ECF Nos. 159 & 160, the Second Amended Complaint was filed on February 10, 2021, ECF No. 302.  The Parties continued with discovery, and over the course of six months, the Parties briefed to completion various motions on class certification. ECF Nos. 219, 228, 285, 286, 293, 338, 341, & 365.  The Court scheduled a hearing for June 3, 2021, to hear arguments on class certification.

Just before the hearing, the Parties notified the Court that they had reached a settlement in principle.  ECF No. 398; see also Guglielmo Decl., ECF No. 405-2, ¶ 54.  The Court therefore continued the hearing to July 22, 2021, ECF No. 398, and instructed the Parties to submit the settlement terms and motions for preliminary approval one week before the hearing, ECF No. 401.  Plaintiffs filed their Notice of Unopposed Motion for Preliminary Approval of Settlement Agreement on July 13. ECF No. 406.  The Court held the hearing on the preliminary approval of the settlement on July 22.  At the hearing, the Court pointed out a handful of deficiencies and concerns with the Settlement Agreement and the Notice.  Plaintiffs then filed an amended Settlement Agreement adequately addressing the Court's major concerns on July 30.  ECF No. 408.

### c. State Court Lawsuits

In addition to the class action in federal court, there are also parallel lawsuits pending in state court.  The Aquilinas and the Corrigans both have pending lawsuits in state court, as do several other unnamed Class Members.[4/]  These lawsuits generally involve properties damaged by the 2018 eruption's lava flow, and are primarily based on various defendants' alleged conduct in the claims handling process, including wrongful coverage denials or refusals to pay certain claims.

## II.   Summary of Settlement Agreement

As alluded to earlier, the Parties participated in private mediation in early 2021 and were ultimately able to reach a settlement before the class had been certified.  The terms of the settlement agreement are memorialized in the revised Settlement Agreement and Release filed on July 30, 2021.  ECF No. 408.

### a. Proposed Settlement Class

The proposed Settlement Class consists of the following:

> All persons who purchased a surplus lines insurance policy for a residential property located in Lava Zone 1 on the island of Hawai'i with a Lava Exclusion at any time during the period of January

---

[4/]  These lawsuits are defined in the Settlement Agreement as the "Enumerated State Court Lawsuits" (§ 2.10) and the "State Court Lawsuits" (§ 2.33).

1, 2012 through and including May 4, 2018 ("Class Period") that was brokered through Monarch and underwritten and/or subscribed to by Underwriters.

Settlement, ECF No. 408, § 3.1; see also Mot. at 4.[5]  Several entities or persons are also expressly excluded from the Settlement Class:

> Excluded from the Settlement Class are Defendants; all officers, directors, or employees of Defendants; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of any Defendant. Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this Litigation and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Settlement § 3.1.

### b. Payment Terms

Defendants agree to pay $1.8 million (the Settlement Fund) to be allocated among Class Members following certain deductions.[6]  Certain Defendants also agree to pay up to $50,000 to the Settlement Administrator to defray the actual expenses of notice of the Settlement and all expenses attendant to the administration of the proposed Settlement.[7]  Settlement § 4.4. The Settlement Agreement provides that the following amounts

---

[5]  Citations to the Motion refer to ECF No. 405-1, the Memorandum of Law in Support.
[6]  The $1.8 million will be paid by each Defendant as follows: Underwriters will pay $1.4 million; Monarch will pay $200,000; Aloha will pay $100,000; and Moa will pay $100,000.  Settlement § 4.3; Guglielmo Decl. ¶ 3.
[7]  Underwriters and Monarch will each pay fifty percent of the expenses up to the $50,000.  Settlement § 4.4.

will be deducted from the Settlement Fund before payments are made to the Class:  (1) costs of notice and administration to the extent that they exceed the $50,000; (2) service awards of up to $5,000 ($2,500 to each pair of named Plaintiffs, the Aquilinas and the Corrigans); (3) attorneys' fees and litigation expenses approved by the Court and not exceeding one-third (33.3%) of the gross Settlement Fund, including any interest earned thereon; and (4) any taxes and escrow costs, including taxes payable as indemnification.[8/]  Id. §§ 4.5, 4.8; see also id. §§ 10.1-10.4.

The remainder after those deductions are made constitutes the net settlement amount from which individual Class Members will be paid.  Payments to Class Members that do not opt out will be calculated and distributed based on the proportion of total premium dollar amount each Class Member paid during the Class Period.  See Guglielmo Decl. ¶ 7.  Plaintiffs' Counsel anticipate that Class Members will be eligible to receive at least 100% of the premium dollar amounts they paid during the Class Period.  Mot. at 6; see also Guglielmo Decl. ¶ 4 ("Based on my analysis of the number of Class Members . . . the Settlement Fund will be sufficient to reimburse Class

---

[8/]  The award of attorney's fees, expenses, Service Awards, and notice and Settlement administration costs is independent of the Court's consideration of the fairness, reasonableness, and adequacy of the settlement.  See Settlement § 10.2; Ex. D to Settlement ¶ 20.

Members the full amount of premiums paid to Defendants for surplus lines insurance policies placed during the Class Period.").  Class Members who do not opt out of the Settlement will automatically receive a cash payment; no specific documentation is required.  Settlement § 4.5.

### c. Release

The Settlement Agreement includes a detailed release, which the Court will not recite in full here.  See Settlement §§ 9.1-9.10.  Simply put, Class Members who choose not to opt out of the Settlement agree to release all four Defendants from all claims and liability arising from allegations made in this case. Id. §§ 9.1-9.2.  The release does not, however, extend to any claims and allegations made against non-settling parties or made in the State Court Lawsuits predicated on violations not alleged in the federal class action.  Id. § 9.3.  To effectuate the general release, Plaintiffs waive all rights and benefits under Cal Civ. Code § 1542 and similar state laws, meaning they are deemed to have settled and released even claims not known to them at the time of the Settlement and release.  Id. § 9.7.

### d. Notice

The Settlement Agreement includes a robust Notice Program.  Within seven days of preliminary approval, or as soon as practicable, Class Counsel will provide the Settlement Administrator with the Class List.  Settlement § 7.2(a).  The

Class List is based on records produced by Defendants in discovery containing the identifiable names and addresses of the Class Members.  See id. § 6.2; see also Mot. at 5.  No later than thirty days after preliminary approval, the Settlement Administrator will effectuate the specified Mail Notice. Settlement §§ 2.19-2.20; 7.2(b); see also Ex. A to Settlement. In the event that ten to fifteen percent of Mail Notices are returned as undeliverable, the Settlement Administrator will supplement with a Publication Notice, which would be published in media outlets widely read on the Big Island.  See Settlement § 7.2(c); see also Ex. B to Settlement.

In relevant part, the Notice Program will provide Class Members with an overview of the Settlement, the methodology for calculating the payments, the scope of the Release, and other pertinent dates for opting out or objecting. The Notice also notifies Class Members that they may attend the Final Approval Hearing in person and with an attorney.  Finally, the Notice directs Class Members to a website with more detailed information, including a copy of the full Settlement Agreement.

## STANDARD

The Ninth Circuit has a strong judicial policy that favors settlements in class actions.  Class Pls. v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Class action settlements must, however, be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2).  When parties settle before class certification, a district court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  The court must first assess whether the proposed class likely meets the certification requirements and whether the proposed settlement is "fundamentally fair, adequate, and reasonable."  Id.  Then, if the court provisionally certifies the class and preliminarily approves the settlement, the class is notified and a final fairness hearing is scheduled.  Id.

## DISCUSSION

Plaintiffs ask the Court to enter an order (1) provisionally certifying the proposed Settlement Class; (2) preliminarily approving the proposed Settlement; (3) approving the proposed Notice Program; (4) appointing Plaintiffs as Class representatives; (5) appointing Joseph P. Guglielmo of Scott+Scott Attorneys at Law LLP, E. Kirk Wood of Wood Law Firm

LLC, and Gregory W. Kugle of Damon Key Leong Kupchak Hastert, a Law Corporation, as Class Counsel; (6) appointing RG/2 Claims Administration, LLC as the Settlement Administrator; (7) staying the litigation pending final approval; and (8) scheduling a final approval hearing.  Mot. at 1.  As discussed in the sections below, the Court grants the relief requested.

## I.    Provisional Certification of the Settlement Class

Before considering the fairness of the Settlement, the Court must determine whether the proposed Class may be provisionally certified for purposes of settlement.  Pertinent here, Rule 23 contains two sets of requirements.  Subsection (a) first ensures that "the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011).  Rule 23(a) sets out four prerequisites to certifying a class, all of which must be met:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the

representative parties will fairly and
adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Assuming a proposed class satisfies the Rule 23(a)
prerequisites, the second requirement is found in subsection
(b).  See United Steel, Paper & Forestry, Rubber, Mfg. Energy,
Allied Indus. & Serv. Workers Int'l Union AFL-CIO, CLC v.
ConocoPhillips Co., 593 F.3d 802, 806 (9th Cir. 2010).  At the
Rule 23(b) stage of the analysis, the party seeking
certification must establish that the case falls under one of
three requirements.  See Fed. R. Civ. P. 23(b)(1)-(3); United
Steel, 593 F.3d at 806.  Here, the Parties seek provisional
certification under Rule 23(b)(3), which requires that "the
court finds that the questions of law or fact common to the
members of the class predominate over any questions affecting
only individual members, and that a class action is superior to
other available methods for the fair and efficient adjudication
of the controversy."

a. Rule 23(a)

The Court finds that the Rule 23(a) factors—
numerosity, commonality, typicality, and adequate
representation—are satisfied.

### i. Numerosity

First, the class must be so numerous "that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Impracticability "does not mean 'impossibility,' but only 'the difficulty or inconvenience of joining all members of the class.'"  R.P.-K. ex rel. C.K. v. Dep't of Educ., Haw., 272 F.R.D. 541, 547 (D. Haw. 2011) (quoting Harris v. Palm Springs Alpine Ests., Inc., 329 F.2d 909, 914 (9th Cir. 1964)).

Here, the proposed Class consists of about 163 households.  Mot. at 19.  The Court is satisfied that 163 is sufficiently numerous and that joinder would be impracticable.

### ii. Commonality

Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Common questions exist where class members suffer the same injury, Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982), such that simultaneous litigation is productive, Wal-Mart Stores, Inc., 564 U.S. at 349, 131 S. Ct. 2541, 180 L. Ed. 2d 374.  "This does not mean merely that [class members] have all suffered a violation of the same provision of law."  Id.  Rather, the claims "must depend upon a common contention" the nature of which "is capable of classwide resolution."  Id.  In other words, "the determination of its truth or falsity will resolve an issue that is central to the

15

validity of each one of the claims in one stroke." Vaquero v. Ashley Furniture Indus., Inc., 824 F.3d 1150, 1153 (9th Cir. 2016) (quoting Wal-Mart Stores, 564 U.S. at 349, 131 S. Ct. 2541, 180 L. Ed. 2d 374).  Although just one common question could be enough to establish commonality, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Wal-Mart Stores, 564 U.S. at 349-50, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (citation omitted).

Here, the Court holds that the commonality requirement is satisfied because there are common questions of law and fact involving Defendants' alleged conduct and the alleged resulting injuries to Plaintiffs and the Class Members.  The Parties identify several common questions that would not require individualized inquiries:

> Whether Defendants' conduct violated the duty of good faith owed to Plaintiffs and the Class, and thus, was unfair under §480-2, constituted bad faith (as to Underwriters), or was negligent or unjust [enrichment] (as to Moa and Aloha);
>
> Whether Moa's, Aloha's, and Monarch's conduct violated the HSLA's diligent search requirement, and thus, was unfair under §480-2 (as to all Defendants);
>
> Whether Defendants' offering, placement, and sale of the surplus lines insurance policies contravened the public policy behind the enactment of HPIA, and thus, was unfair under §480-2 (as to all

> Defendants), or negligent or unjust [enrichment] (as to Moa and Aloha); and
>
> Whether Underwriters failed to oversee its agent Monarch, and thus, is vicariously liable for Monarch's misconduct.

Mot. at 20. Simply put, the crucial question in this case is whether Defendants' activities—writing surplus lines policies with lava exclusions and brokering and selling those policies to homeowners with properties at high risk for lava damage, without advising them of HPIA or other coverage options—violated Hawai`i's UDAP law or constituted bad faith, negligence, or unjust enrichment. That question is common to each of the proposed Class Members, and its answer has the capacity to generate "common answers apt to drive the resolution of the litigation." Wal-Mart Stores, 564 U.S. at 350, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (citation omitted).

Accordingly, the common core questions regarding Defendants' conduct in writing and brokering the policies to these particular homeowners are enough to satisfy commonality.

### iii. Typicality

A class representative's claims or defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality and adequacy prerequisites, together, are "[t]he due process touchstone." Blackie v. Barrack, 524 F.2d 891, 910 (1975). Typicality must be judged in

17

light of the circumstances.  Id.  The Ninth Circuit has stated
that "[t]he purpose of the typicality requirement is to assure
that the interest of the named representative aligns with the
interests of the class."  Hanon v. Dataproducts Corp., 976 F.2d
497, 508 (9th Cir. 1992), superseded by statute on other grounds
as stated in Berger v. Ludwick, No. C-97-0728-CAL, C-97-2347-
CAL, 2000 WL 1262646, at *7 (N.D. Cal. Aug. 17, 2000).  "The
test of typicality 'is whether other members have the same or
similar injury, whether the action is based on conduct which is
not unique to the named plaintiffs, and whether other class
members have been injured by the same course of conduct.'"  Id.
(quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal.
1985)).

          The Court holds that typicality is satisfied because
Plaintiffs' claims challenge a course of conduct that applied to
all the Class Members such that they all suffered the same or
similar injury.  Plaintiffs' and the Class Members' claims all
arise from the same conduct and are based on the same legal
theories.  Plaintiffs and the Class Members are all Lava Zone 1
homeowners who purchased Lloyd's policies brokered by Monarch
during the Class Period.  Plaintiffs' and the Class Members'
alleged injuries all stem from Defendants' allegedly wrongful
conduct—including writing in a lava exclusion, selling the
policies to high-risk homeowners, failing to conduct the

diligent search, and failing to advise Plaintiffs and Class Members of other available coverage sources.

For those reasons, the Court finds that the typicality requirement is satisfied.

### iv. Adequate Representation

Adequacy asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class.  Staton, 327 F.3d at 957.  A court must consider whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 158 n.13, 102 S. Ct. 2364, 72 L. Ed. 2d 740.

Here, the Court finds that the named Plaintiffs and their Counsel are adequate representatives of the Class.  The named Plaintiffs are part of the defined Class.  They—like the Class Members—are homeowners with properties in Lava Zone 1 who purchased the relevant Lloyd's policies brokered by Monarch. Class Members used various retail brokers, including Moa and Aloha.  The Aquilinas procured their policies through Moa, while the Corrigans procured theirs through Aloha.  Plaintiffs were allegedly injured by the same conduct common to the rest of the

19

Class Members—i.e., suffering monetary losses (lost premiums) stemming from their purchase of the policies.  From all this it follows that Plaintiffs' interests in this litigation and the relief afforded by the Settlement are aligned with the interests of the Class Members.  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 594-95, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

Moreover, Plaintiffs' Counsel have extensive experience litigating consumer protection and class actions. See Ex. 2 to Guglielmo Decl.  Their experience includes managing and litigating complex class actions and administering settlements.  See id.; see also Guglielmo Decl ¶ 2.  They have vigorously prosecuted this action on behalf of the Class from the very beginning.  From the Court's perspective, Plaintiffs' Counsel have diligently investigated and pursued the claims in this complex case.  See Guglielmo Decl ¶¶ 9-10, 14-15, 23, 29-34, 36-50.  They have demonstrated familiarity with the law and the class-action procedures in federal court.  And they have spent significant time and effort pursuing these claims on behalf of the named Plaintiffs and proposed Class Members, including by conducting investigations, engaging in dispositive motions briefing, and seeking discovery.  Id.  Beyond that, Plaintiffs' Counsel briefed to completion a motion for class certification and several oppositions to Defendants' motions to deny certification.  Before reaching the Settlement, Plaintiffs'

20

Counsel even filed three motions for summary judgment.  From all the time and effort put into this case, the Court is confident that Plaintiffs' Counsel and the named Plaintiffs have vigorously pursued the claims on behalf of the putative Class.

Thus, the Court holds that Plaintiffs and Plaintiffs' Counsel are adequate representatives of the class.

### b. Rule 23(b)(3)

Having found that the Rule 23(a) prerequisites to certification are met, the Court must next decide whether common questions of law or fact predominate over questions affecting individual members and whether the class action is superior relative to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).  As discussed below, the Court holds that predominance and superiority are both satisfied.

#### i. Predominance

The Court must first decide whether common questions of law and fact "predominate over any questions affecting individual members."  Fed. R. Civ. P. 23(b)(3).  "The predominance analysis focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  Wang v. Chinese Daily News, Inc., 737 F.3d 538, 545 (9th Cir. 2013) (quoting Hanlon v.

Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998), <u>overruled</u>
<u>on other grounds as recognized in</u> Castillo v. Bank of Am., NA,
980 F.3d 723, 730 (9th Cir. 2020)).  While some variation among
individual plaintiff's claims is allowed, <u>Abdullah v. U.S. Sec.</u>
<u>Assocs., Inc.</u>, 731 F.3d 952, 963 (9th Cir. 2013), predominance
is "more demanding" than commonality, <u>Comcast Corp. v. Behrend</u>,
569 U.S. 27, 34, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013).

The Court is satisfied that this more demanding
standard is met.  The core common questions at issue in this
case—the lawfulness of Defendants' writing, brokering, and
selling insurance policies with lava exclusions to high-risk
homeowners and their alleged practice of failing to advise of
the HPIA as a possible coverage source—predominate over any
differences as to how Defendants acted toward a given individual
homeowner.  The elements of the UDAP, bad faith, negligence, and
unjust enrichment claims all raise common questions about
Plaintiffs' and the Class Members' status as homeowners in Lava
Zone 1 who purchased the relevant policies, and about the
conduct of Defendants in brokering and selling those policies.

"To ensure that common questions predominate over
individual ones, the court must 'ensure that the class is not
defined so broadly as to include a great number of members who
for some reason could not have been harmed by the defendant's
allegedly unlawful conduct.'"  <u>Castillo</u>, 980 F.3d at 730

(quoting Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1138 (9th Cir. 2016)).  Here, the Class is defined quite narrowly, to ensure that only those homeowners with properties in a particularly high-risk lava zone who had coverage through Underwriters and Monarch.[9/]

The fact that the Settlement requires individualized damages calculations—here to determine the actual premium amount paid by each individual homeowner—does not defeat predominance. See Vaquero, 824 F.3d at 1154.  Indeed, those determinations can be made here through common evidence, by relying on Defendants' own records.  Because common questions of law and fact predominate over any individualized questions, the Court finds that predominance is satisfied.

### ii. Superiority

The final requirement for Rule 23 certification requires a finding that a class action is superior to individual lawsuits.  In making this determination, courts consider four non-exhaustive factors:  (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability of concentrating the

---

[9/]  Indeed, the Class definition has even narrowed from the definition in the Second Amended Complaint.  See 2d Am. Compl. ¶ 121 (defining the class to include persons with homes in Lava Zones 1 or 2).

litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in management of a class action.  See Fed. R. Civ. P. 23(b)(3)(A)-(D).  "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."  Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1235 (9th Cir. 1996).

The Court finds that a class action is superior to individual litigation in this case.  First, there is no evidence that the proposed Class Members have a strong interest in individualized litigation.  This is especially true for those who suffered damages on the lower end of the spectrum such that the resources required to pursue individual claims would not be worthwhile.  See Leyva v. Medline Indus., Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.").  In addition, although there are pending State Court Lawsuits challenging coverage denials based on the lava exclusion and on other policy provisions, this case is the only one seeking a return of premiums for improperly placing surplus lines homeowners insurance policies.  Finally, "any concerns over manageability of the class action in this case would not weigh in favor of individual litigation given

that Defendant[s'] liability to 'class members depends on common proof'" regarding the premiums amounts paid and Defendants conduct in writing and selling the surplus lines insurance policies to Lava Zone 1 homeowners.  See Uschold v. NSMG Shared Servs., LLC, 333 F.R.D. 157, 168 (N.D. Cal. 2019).

        For those reasons, the Court finds that superiority is satisfied.  Therefore, the Court holds that provisional class certification for settlement purposes is proper.

## II.   Preliminary Approval of the Settlement

        To decide whether a settlement agreement is fair, adequate, and reasonable, courts generally balance several factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).  The role of the district court is not to assess the individual components of the agreement, but to consider the settlement as a whole.  See Lane v. Facebook, Inc., 696 F.3d 811, 818-19 (9th Cir. 2012).

When—as here—a settlement agreement is reached before formal class certification, consideration of these factors alone is not enough.  Id.  In pre-certification settlements, "[t]he district court's approval order must show not only that 'it has explored [the Churchill] factors comprehensively,' but also that the settlement is 'not[] the product of collusion among the negotiating parties.'"  In re Bluetooth, 654 F.3d at at 947 (quoting In re Mego Fin. Corp. Secs. Litig., 213 F.3d 454, 458 (9th Cir. 2000)) (alterations in In re Bluetooth).

A full assessment of these factors cannot be done until after the final approval hearing.  Thus, "a full fairness analysis is unnecessary at this stage."  Uschold, 333 F.R.D. at 169 (quoting Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008)).  At the preliminary approval stage, "the settlement need only be potentially fair."  Id. (quoting Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007)).  "To determine whether a settlement falls within the range of possible approval, a court must focus on substantive fairness and adequacy, and "ensure that an appropriate class exists and that the agreement is non-collusive, without obvious deficiencies, and within the range of possible approval as to that class."  Urena v. Cent. Calif. Almond Growners Ass'n, No. 1:18-cv-00517-NONE-EPG, 2021 WL 2588266, at *4 (E.D. Cal. June 24, 2021).

### a. Fairness Factors

To evaluate the potential fairness of the Settlement, the Court addresses each of the factors below.[10]

#### i. Strength of Plaintiffs' Case

"This factor considers both the likelihood of success on the merits and the range of possible recovery."  In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig., No. 8:10ML 02151 JVS (FMOx), 2013 WL 3224585, at *7 (C.D. Cal. June 17, 2013) (citing Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964-65 (9th Cir. 2009)).  That said, "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits."  Officers for Justice v. Civ. Serv. Com'n of City & Cnty. of S.F., 688 F.2d 615, 625 (9th Cir. 1982).  A court should not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."  Id.  A settlement "is not to be judged against a hypothetical or speculative measure of what might have been achieved by the

---

[10]  The Court notes that it questioned Plaintiffs' counsel at the hearing regarding what impact if any the State of Hawai`i's offer to purchase properties damaged by the 2018 eruption's lava flow through the Kilauea Disaster Voluntary Housing Buyout Program might have on the proposed settlement.  See Christie Wilson, Homeowners hit by 2018 Kilauea eruption rush for buyout program, Star Advert., Aug. 8, 2021.  Counsel responded that it would have no impact.

negotiators"; rather a court's "determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice."  Id. (citation and quotation marks omitted).

The Court's prior orders deciding the many motions to dismiss considerably narrowed the issues and theories in this case.  Although the causes of action assert typical state-law claims, Plaintiffs have raised novel theories that implicate complex and unresolved statutory interpretation questions under Hawai`i state law.  Not to mention, Defendants in both their summary judgment motions and class certification motions raised strong legal and factual arguments in support of their position that they did not engage in any wrongdoing.  See Mot. at 14-15. Whatever claims may have proceeded past summary judgment would have been subject to the extent to which a jury could be convinced of actual wrongdoing.  The contested facts and competing statutory interpretations together increase the likelihood of risk and expense of further litigation.

The Court finds that the Settlement properly strikes a balance between the strengths of Plaintiffs' case and the risks of continued litigation before a jury.  The Settlement provides Plaintiffs with a fair and meaningful resolution of their clams. This factor therefore weighs in favor of approving the Settlement.

### ii. Risk, Expense, Complexity, & Likely Duration of Further Litigation

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted); see also Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense." (footnotes omitted)).

The Parties have been litigating this case for over three years. During that time, the Court has heard multiple motions to dismiss, as well as a motion seeking abstention. The Parties also completed and submitted briefing on class certification, and all five Parties submitted motions for summary judgment or associated joinders. As for discovery, Plaintiffs responded to ten separate discovery requests, ultimately producing 280 documents (more than 1,703 pages), and the Parties deposed several witnesses.

Moreover, had this case gone to trial, it likely would have been lengthy—probably at least several weeks.  Not to mention, the losing parties almost certainly would appeal any adverse jury verdict.  Simply put, "[t]he only thing that continued litigation would ensure is the accrual of further costs and attorneys' fees," and possibly the costs of a "lengthy, expensive appeal."  Willcox v. Lloyd's TSB Bank, plc, Civ. No. 13-00508 ACK-RLP, 2016 WL 7238799, at *8 (D. Haw. Dec. 14, 2016).

As Plaintiffs recognize, there is no guarantee that if this case were to go to trial Plaintiffs and the Class Members would recover anything at all.  The Settlement, on the other hand, ensures that Plaintiffs and the Class Members receive a meaningful damages award, and that they receive it immediately.

With all this in mind, this factor weighs in favor of approving the Settlement.

### iii. Risk of Maintaining Class Action Status

Plaintiffs reached the Settlement before the Court had ruled on class certification.  In light of that, Plaintiffs faced the risk that the Class either would not be certified or that it could face decertification later in the litigation.  By this Order, the Court provisionally certifies the Class, virtually eliminating any risk that the Class will be decertified.

30

### iv. Amount Offered in Settlement

In assessing the settlement amount, the Court must again bear in mind that "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." Officers for Justice, 688 F.2d at 625; see also Lane, 696 F.3d at 823 ("[W]e reject Objectors' argument insofar as it stands for the proposition that the district court was required to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award."). And "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 (2d Cir. 1974)). The ultimate inquiry is whether the Settlement is "fair, adequate, and free from collusion." Lane, 696 F.3d at 826 (citation omitted).

Here, the Parties participated in arm's length settlement discussions beginning in January 2021; exchanged settlement communications for several months; attended a settlement conference before the Magistrate Judge on April 7, 2021; participated in virtual mediation with respected mediator

Keith Hunter of Dispute Prevention & Resolution, Inc. beginning on March 26, 2021; and, after exchanging numerous drafts, executed a Terms Sheet memorializing the material Settlement terms on June 1, 2021.  Guglielmo Decl. ¶¶ 5, 51-54 Mot. at 10, 14.  The main result of the Settlement is that Plaintiffs and the Class Members will likely receive 100% of their premiums actually paid, which Plaintiffs' lead counsel calls an "excellent result."  Guglielmo ¶ 55.

In agreeing to the $1.8 million proposed by the Settlement, the Parties appear to have made serious, good faith efforts to settle, with both ceding ground on their initial positions.  Guglielmo Decl. ¶ 55.  The Settlement was made after negotiations conducted at arm's length.  Id. ¶ 5.  The Settlement provides a favorable outcome to Plaintiffs and the Class Members, each of whom is projected to receive 100% of premiums paid.[11/]  And the fact that those Class Members who paid more in premiums will receive greater proportionate compensation suggests that the proposed distribution is fair.  See Willcox, 2016 WL 7238799 at *9 (citing Hendricks v. StarKist Co., Case No. 13-cv-00729-HSG, 2015 WL 4498083, at *7 (N.D. Cal. July 23, 2015)).  Equally important is that, as noted above, the

---

[11/] In fact, a return of premiums is by all accounts exactly what Plaintiffs sought in this lawsuit.  See Order Den. Defs. Moa's & Aloha's Mots. to Dismiss or in Alternative Stay, ECF No. 160, at 28-29 (addressing Plaintiffs' argument framing the federal class action as seeking a return of premiums as a measure of damages).

Settlement provides certainty to Class Members that they will soon recover some amount of money.  That benefit cannot be overstated in this complex case.

For these reasons, this factor weighs in favor of approving the Settlement.

### v. Extent of Discovery Completed & Stage of Proceedings

"Consideration of the extent of discovery and the current stage of the litigation allows the Court to evaluate whether the parties are able to make decisions about their claims based on information received during the discovery process."  In re Toyota, 2013 WL 3224585 at *10 (citing Linney, 151 F.3d at 1239).  "Where a settlement occurs in an advanced stage of the proceedings, this fact supports a finding that the parties had the opportunity to investigate their claims before resolving them."  Id.

Here, the Court finds that the case has proceeded to the point that Class Counsel is in a position to thoroughly understand and evaluate the strengths and weaknesses of Plaintiffs' case.  See Guglielmo Decl. ¶¶ 5-7.  Although formal discovery is not technically complete, the Parties have exchanged numerous documents, conducted extensive discovery, and litigated multiple dispositive motions.  See Guglielmo Decl. ¶¶ 12-17, 21-26, 36-50; see also Lane v. Facebook, Inc., No. C 08-

33

3845 RS, 2010 WL 9013059, at *5 (N.D. Cal. Mar. 17, 2010)
("Class Counsel established that they acquired sufficient
information to make an informed decision with respect to
settlement, even though formal discovery is not complete."),
aff'd, 696 F.3d 811 (9th Cir. 2012).  The Parties retained
experts, took depositions, served subpoenas, conducted a damages
report, and litigated a handful of discovery disputes before the
Magistrate Judge.  See Guglielmo Decl. ¶¶ 7, 38, 41, & 50.
Additionally, this case has undergone full briefing on class
certification and all five Parties filed one or more motions for
summary judgment or joinders.  Plaintiffs' Counsel also
undertook an extensive investigation before filing the original
complaint.  See id. ¶ 10.

Given these factors, the Court finds that the Parties
had a full opportunity to evaluate the strengths and weaknesses
of their respective cases, and that Defendants were in a
position to make and Plaintiffs were in a position to accept, a
meaningful settlement.  This factor weighs in favor of approving
the Settlement.

### vi. Experience & Views of Counsel

"'Great weight' is accorded to the recommendation of
[Plaintiffs'] counsel, who are most closely acquainted with the

facts of the underlying litigation."[12/]  Nat'l Rural Telecomms., 221 F.R.D. at 528; see also Ellis v. Naval Air Rework Facility, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."). "This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'"  Nat'l Rural Telecomms., 221 F.R.D. at 528 (quoting In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995)).

Here, the Court recognizes that the Settlement was "only achieved after intense and protracted arm's length negotiations conducted in good faith and free from collusion, through the efforts of counsel with recognized experience in complex litigation" involving the consumer-protection and insurance issues raised in this case.  See Lane, 2010 WL 9013059 at *5.  Plaintiffs are represented by both mainland and local counsel.  All three have extensive experience litigating

---

[12/]  Plaintiffs argue that the Settlement is "entitled to a presumption of fairness because it was reached by capable counsel with the assistance of an experienced mediator."  Mot. at 9.  The Ninth Circuit recently rejected that presumption, especially when settlement is negotiated before formal class certification.  See Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1049 (9th Cir. 2019) (explaining that a presumption of fairness is "not supported by our precedent" and emphasizing the "extra caution and more rigorous scrutiny" required when settlements are negotiated before class certification).  Therefore, the Court declines to recognize any presumption of fairness and instead carefully analyzes the fairness factors.

consumer protection and class actions.  <u>See</u> Ex. 2 to Guglielmo Decl.  Mainland counsel Joseph P. Guglielmo of Scott+Scott has experience in complex civil litigation, including class actions, with a focus on consumer protection.  Guglielmo Decl. ¶ 2; Ex. 2 to Guglielmo Decl.  And E. Kirk Wood of Wood Law Firm LLC has experience in multi-district and class action litigation matters.  <u>See</u> Ex. 1 to ECF No. 410.  Local counsel Gregory W. Kugle of Damon Key Leong Kupchak Hastert likewise has experience practicing in commercial and business civil litigation and appeals, including class actions.  <u>See</u> Ex. 2 to ECF No. 410.

Given the history of this case, as well as the combined experience of Plaintiffs' and Class Counsel, it is clear to the Court that these attorneys are well-versed in the relevant issues and strengths and weaknesses of the case.  As discussed above in Section II.a.4., Plaintiffs' Counsel have vigorously pursued Plaintiffs' and the Class Members' claims, including by participating in extensive motions briefing, discovery exchanges, depositions, and a several-month-long mediation.  It is Class Counsel's view that the Settlement is fair, adequate, reasonable, and an "outstanding result." Guglielmo Decl. ¶ 6.  The Court therefore finds that this factor weighs in favor of approving the Settlement.

vii.  **Presence of a Government Participant & Reaction of Class Members to Proposed Settlement**

Because at this point there is no government actor participating in the litigation and the Class Members have not yet received Notice of the Settlement, these factors are not relevant to the Court's analysis at the preliminary approval stage.

b. **Signs of Collusion**

As required for pre-certification settlements, the Court must consider whether any signs of collusion are present in the Settlement.  The Ninth Circuit has cautioned that "[c]ollusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  In re Bluetooth, 654 F.3d at 947 (citing Staton, 327 F.3d at 960).  The Ninth Circuit has identified three common signs of collusion:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in

exchange for counsel accepting an unfair settlement on behalf of the class; and

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

In re Bluetooth, 654 F.3d at 947 (internal quotation marks and citations omitted).  The Court finds that there is no evidence of collusion from the face of the Settlement or the negotiation circumstances.  The Court also finds that for purposes of preliminary approval, there are no "subtle signs of implicit collusion" either.  See Roes, 1-2 v. SFBSC Mgmt., LLC, 994 F.3d 1035, 1049 (9th Cir. 2019).

First, the Settlement provides that the Class will receive substantial monetary distribution, and there is no indication that Class Counsel will receive a disproportionate distribution.  See, e.g., In re Bluetooth, 654 F.3d at 947 (finding that the warning sign of a disproportionate fee award existed because the class reward included no monetary distribution at all).

Second, there is no clear sailing arrangement.  See, e.g., id. (finding that a clear sailing agreement existed whereby defendants "agreed not to object to an award of attorneys' fees up to eight times the monetary cy pres relief afforded the class"); Hofmann v. Dutch LLC, 317 F.R.D. 566, 578 (S.D. Cal. 2016) (finding that a clear sailing provision

"creates at least a danger of collusion during the settlement negotiations which is not refuted by the record"). The original agreement submitted to the Court contained language that Defendants agreed not to oppose the motion for attorneys' fees. See ECF No. 405-3 § 4.5(a)(iii). But the Court raised its concern about the clear sailing arrangement at the preliminary fairness hearing, and the Parties removed the language in the revised Settlement Agreement. Settlement § 4.5(a)(iii). The Court finds that this change alleviates any concern about a clear sailing arrangement. See Beltran v. Olam Spices & Vegetables, Inc., No. 118CV01676NONESAB, 2021 WL 2284465, at *14 (E.D. Cal. June 4, 2021) (noting the district judge's finding that the removal of clear sailing language from the settlement agreement "alleviated the concern so it no longer applied to the analysis").

Third, there is no indication that fees not awarded will revert to Defendants rather than be added to the Settlement Fund. To the contrary, the Settlement Fund is established at $1.8 million, and monetary distributions to Class Members will be made after and to the extent of the deductions provided for in the Settlement Agreement, without any allowance for a reversion to Defendants.

### c. Range of Possible Approval

At this preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." Alberto, 252 F.R.D. at 666 (citation omitted).  The Court is concerned only with "whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." Id. (quoting West v. Circle K Stores, Inc., No. 040438, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006)).  Here, having reviewed the Settlement agreement as a whole and in conjunction with the fairness factors analyzed above, the Court finds that the Settlement falls within the range of possible approval.

#### i. Release

"Beyond the value of the settlement, potential recovery at trial, and inherent risks in continued litigation, courts also consider whether a class action settlement contains an overly broad release of liability." Spann v. J.C. Penney Corp., 314 F.R.D. 312, 327 (C.D. Cal. 2016).

Here, the Release provides that Class Members who do not opt out release liability and claims against Releasees (Defendants) "arising out of the allegations made against Releasees in the Complaints." Settlement § 9.1.  The Release

40

expressly does not apply to claims other than those related to the subject matter of this litigation, nor does it extend to allegations against non-settling parties or allegations made in the State Court Lawsuits predicated on different violations. See id. §§ 9.2-9.3.

In the Court's view, the Release "adequately balances fairness to absent class members and recovery for plaintiffs with defendants' business interest in ending this litigation with finality."  Spann, 314 F.R.D. at 327-28.  The Court recognizes that the Release was carefully crafted to ensure that Defendants were sufficiently released from liability for the class claims, while also ensuring that Class Members with existing lawsuits in state court could continue to litigate those claims to the extent distinct from this case.  All in all, the Court finds the Release to be fair and not overly broad.

### ii. Notice Program

Rule 23(e) requires that notice of a proposed settlement, voluntary dismissal, or compromise be directed "in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  Hanlon, 150 F.3d at 1025 (finding that notice provided to the class met the requirements of Rule 23(c)).  For classes certified under Rule 23(b)(3), as here, "the court must direct

41

to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  "Notice provided pursuant to Rule 23(e) must 'generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" Lane, 696 F.3d at 826 (quoting Rodriguez, 563 F.3d at 962).  However, this standard "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." Id.

     The Court finds that the notice requirements under Rule 23(c)(2)(B) are met.  The Notice here describes the allegations and claims in plain language, defines a Class Member, includes contact information for both Plaintiffs' and Defendants' counsel and the Settlement Administrator, and summarizes the Settlement amount and its distribution. See Ex. A to Settlement.  The Notice further describes the options available to class members, including instructions for opting out of the settlement and filing an objection. Id.  It also informs Class Members that receiving a Settlement award will release certain claims against certain parties, and it defines both "Released Claims" and "Releasees." Id.  The Notice informs

Class Members that they may appear at the final fairness hearing in person or through an attorney.  Id.  Finally, it directs Class Members to a website with more information, including the Settlement documents.  Id.

The Notice Program itself is also adequate.  Within seven days of preliminary approval, or as soon as practicable, Class Counsel will provide the Settlement Administrator with the Class List.  Settlement § 7.2(b).  The Settlement Administrator must then mail the Notice to class members within 30 days of preliminary approval.  Id.; see also id. § 2.19.  If any Mail Notices are returned as undeliverable with forwarding address information, the Settlement Administrator will re-mail the Mail Notice to the updated address.  Id. § 7.2(b).  The Settlement Administrator will also use reasonable efforts to identify updated addresses (including running the mailing address through the National Change of Address Database) and re-mail the Notices as necessary.  Id.  Notably, the relatively small size of the Class and the Defendants' access to contact information for their policyholders will allow the parties to accurately identify qualifying Class Members.  See Guglielmo Decl. ¶ 8 (explaining that the Class List is "based off of Defendants' business records, which identify the mailing address for each Class Member").  However, in the event that ten to fifteen percent of the Mail Notices are returned as undeliverable and

cannot be re-mailed, the Notice Program provides for Publication Notice.  Settlement § 7.2(c).

Class members then have 114 days after preliminary approval to either opt out of or object to the Settlement.  Id. §§ 2.22, 7.1, & 7.3.

The Court finds that the Notice Program complies with the requirements of Rule 23(c)(2) and 23(e)(1) and is within the range of possible approval.

### iii.  Settlement Administration

Based on the collective experience and expertise of Class Counsel discussed earlier, the Court will appoint Joseph P. Guglielmo of Scott+Scott, E. Kirk Wood of Wood Law Firm, and Gregory W. Kugle of Damon Key Leong Kupchak Hastert, as Class Counsel.

In addition, the parties have selected and seek approval of RG/2 Claims Administration, LLC to handle the Notice Program and administration of the Settlement.  See Wickersham Decl., ECF No. 405-5, ¶¶ 4-5, 11-19.  The Settlement provides that certain Defendants will pay up to $50,000 for administration costs, and any excess would be deducted from the Settlement Fund.  At the hearing, the parties indicated that the likelihood of costs exceeding $50,000 is extremely low.  The Court finds that RG/2 is an appropriate settlement administrator and will appoint it as such.  See Wickersham Decl. ¶¶ 2-3.

### iv. Attorneys' Fees & Costs

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement."  However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  In re Bluetooth, 654 F.3d at 941; see also Staton, 327 F.3d at 963 ("[A] district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement.").  Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to determine whether the requested fees are reasonable.  Id. at 942 (citing In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 992 (9th Cir. 2010)).

The "lodestar" method is typically used where the benefit received by the class is injunctive in nature such that the monetary benefit is not easily calculated.  See id. at 941.  Under the "lodestar" approach, the court calculates attorney fees by multiplying the number of hours reasonably expended by a reasonable hourly rate.  Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013).  Though the lodestar figure is "presumptively reasonable, the court may adjust it upward or

downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." In re Bluetooth, 654 F.3d at 941-42 (quoting Hanlon, 150 F.3d at 1029) (internal quotation marks omitted).

     Because the benefit to the class is easily calculated in a common fund case, courts may award a percentage of the common fund rather than engaging in a lodestar analysis to determine the reasonableness of the fee request.  Id. at 942. The Ninth Circuit has established a benchmark of twenty-five percent of the common fund for attorneys' fees calculations under the latter method.  Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000); see also In re Pac. Enters. Litig., 47 F.3d at 379 ("Twenty-five percent is the 'benchmark' that district courts should award in common fund cases." (citation omitted)); Chun v. Bd. of Trs. of Emps.' Ret. Sys. of State of Haw., 106 Haw. 416, 439, 106 P.3d 339 (2005) (finding that circuit court did not abuse its discretion in adopting the Ninth Circuit's twenty-five percent benchmark).  Although "[a] district court may depart from the benchmark . . . , it must be made clear by the district court how it arrives at the figure ultimately awarded."  Powers, 229 F.3d at 1256-57 (quoting Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 2000));

46

see also Chun, 106 Haw. at 439, 106 P.3d 339 (holding that circuit court did not abuse its discretion in finding that an upward departure from a twenty-five percent benchmark was not justified by any "peculiar circumstances"). Moreover, courts are encouraged to "guard against an unreasonable result by cross-checking their calculations against a second method." In re Bluetooth, 654 F.3d at 944-45 ("Just as the lodestar method can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate,' the percentage-of-recovery method can likewise 'be used to assure that counsel's fee does not dwarf class recovery.'" (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 821 n.40 (3d Cir. 1995))).

        Here, the Settlement provides that Class Counsel will seek an award of attorneys' fees not to exceed one-third (33.3%) of the gross Settlement Fund, including any interest earned thereon. "This amount is not per se excessive, however, the Court is not likely to approve an amount over the Ninth Circuit's benchmark of twenty-five percent (25%) absent a showing that counsel achieved extraordinary results or otherwise prove they are entitled to such an amount." Beltran, 2021 WL 2284465 at *17. Thus, the Court forewarns Plaintiffs that it will not grant any upward departure from the twenty-five percent benchmark unless, at the final fairness hearing, Plaintiffs

present compelling evidence supporting a departure.  See id. at
*18; Uschold, 333 F.R.D. at 174; see also In re Pac. Enters.
Litig., 47 F.3d at 379 (holding that district court's upward
departure to award thirty-three percent was not an abuse of
discretion); Millan v. Cascade Water Servs., Inc., 310 F.R.D.
593, 613 (E.D. Cal. 2015) (stating that "the Court need not
resolve" the justifications for a fee award of one-third of the
common fund "at the preliminary approval stage, since the
propriety of the fee request is an issue that can be determined
at the Final Fairness Hearing").

        In sum, given that the fee award can be determined at
a later time upon evidence justifying any upward departure from
the twenty-five percent benchmark, that there is no longer any
express clear sailing agreement, and that any reduction in the
award will not revert back to Defendants, the Court finds that
the fee aspect of the agreement is fair, reasonable, and
adequate for purposes of preliminary approval.  Class Counsel
will be required to submit a separate notice of motion for
attorneys' fees and costs, including a lodestar fee calculation
for cross-checking purposes and an itemized list of costs
incurred, to allow the Magistrate Judge to calculate and
recommend the reasonable fee award for this Court's final
approval.  See Fed. R. Civ. P. 23(h)(1); D. Haw. Civ. Local R.
54.2; see also Ontiveros v. Zamora, 303 F.R.D. 356, 37 (E.D.

48

Cal. 2014) (explaining that attorneys who create common funds for a class benefit are "entitled to reimbursement of reasonable litigation expenses from that fund").

### v. Service Awards

"Incentive awards are fairly typical in class action cases." Rodriguez, 563 F.3d at 958 (emphasis removed). Such incentive or compensation awards are discretionary and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id. at 958-59; see also Alberto v. GMRI, Inc., 2008 WL 4891201, at *12 (E.D. Cal. Nov. 12, 2008) ("[A] class representative is entitled to some compensation for the expense he or she incurred on behalf of the class lest individuals find insufficient inducement to lend their names and services to the class action."). The Court must assess these awards individually, "using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" Staton, 327 F.3d at 977 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)) (first alteration in Staton). Incentive awards "must be

reasonable in light of applicable circumstances, and not 'unfair' to other class members." Alberto, 2008 WL 4891201, at *12 (citation omitted).

The Aquilinas and the Corrigans have played a critical role in this litigation over the last three years.  They worked with their counsel to respond to numerous document requests, interrogatories, and requests for admission, and they generally provided "substantial assistance" to Plaintiffs' Counsel throughout the litigation.  Guglielmo Decl. ¶ 49.  Here, Service Awards totaling $5,000 ($2,500 to each pair of named Plaintiffs) will have minimal impact on the amount of Settlement Funds available to the Class Members.  See In re Mego, 213 F.3d at 463 (approving incentive awards of $5,000 each to two class representatives in a settlement of $1.725 million); Alberto, 252 F.R.D. at 669 (collecting cases and noting that "[c]ourts have generally found that $5,000 incentive payments are reasonable").  The award represents under three percent of the gross Settlement Fund and is not disproportionate to the awards Class Members are expected to receive.  See Alberto, 252 F.R.D. at 669 (noting the court's reticence to approve the parties' proposed agreement because of the disparity between the incentive award of $5,000 and the average class payments of $24.17).

In sum, the Court finds that the Service Awards are within the range of possible approval.

## CONCLUSION

For the foregoing reasons, the Court preliminarily finds that the Settlement in its totality is fair, reasonable, and adequate.   The Court therefore GRANTS Plaintiffs' unopposed Motion for Preliminary Approval of Settlement, ECF No. 405.

Accordingly, IT IS HEREBY ORDERED THAT:

### Provisional Certification of the Settlement Class

(1)   The Court provisionally certifies the following Settlement Class:

> All persons who purchased a surplus lines insurance policy for a residential property located in Lava Zone 1 on the island of Hawai'i with a Lava Exclusion at any time during the period of January 1, 2012 through and including May 4, 2018 ("Class Period") that was brokered through Monarch and underwritten and/or subscribed to by Underwriters.

> Excluded from the Settlement Class are Defendants; all officers, directors, or employees of Defendants; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of any Defendant. Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this Litigation and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

(2)  The Court determines that for settlement purposes the proposed Settlement Class likely meets all the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3), namely that the Settlement Class is so numerous that joinder of all members is impractical; that there are common issues of law and fact;

that the claims of the Plaintiffs are typical of absent Class Members; that the Plaintiffs will fairly and adequately protect the interests of the Settlement Class as they have no interests antagonistic to or in conflict with the Settlement Class and have retained experienced and competent counsel to prosecute this matter; that common issues predominate over any individual issues; and that a class action is the superior means of adjudicating the controversy.

(3) Plaintiffs the Aquilinas and Corrigans are designated and appointed as representatives of the Settlement Class.

(4)  The following lawyers are designated as Class Counsel pursuant to Fed. R. Civ. P. 23(g):  Joseph P. Guglielmo of Scott+Scott Attorneys at Law LLP, E. Kirk Wood of Wood Law Firm, LLC, and Gregory W. Kugle of Damon Key Leong Kupchak Hastert, Law Corporation.

### Preliminary Approval of the Proposed Settlement

(5)  Upon preliminary review as required under Rule 23(e)(2), the Court finds it will likely be able to approve the proposed Settlement, that the Settlement appears to be fair, reasonable, and adequate, and that it warrants issuance of notice to the Settlement Class.  Accordingly, the proposed Settlement is preliminarily approved.

## Final Approval Hearing

(6)   A Final Approval Hearing shall take place before the Court on **March 3, 2022, at 10:00 a.m.** before this Court to determine, among other things, whether:  (a) the proposed Settlement Class should be finally certified for settlement purposes pursuant to Federal Rule of Civil Procedure 23; (b) the Settlement should be finally approved as fair, reasonable and adequate and, in accordance with the Settlement's terms, all claims in the Complaints and Litigation should be dismissed with prejudice; (c) Class Members should be bound by the releases set forth in the Settlement; (d) the proposed Final Approval Order and Judgment should be entered; (e) the application of Class Counsel for an award of attorneys' fees, expenses, and notice and administration costs should be approved; and (f) the application for Service Awards to the Plaintiffs should be approved.  Any other matters the Court deems necessary and appropriate will also be addressed at the hearing.

(7) Class Counsel shall submit their application for attorneys' fees, expenses, and notice and administration costs, and the application for Service Awards no later than 100 days after the entry of this Order.  Objectors, if any, shall file any response to Class Counsel's motions no later than 114 days after the entry of this Order.  By no later than 160 days after the entry of this Order, responses, if any, shall be filed to

53

any filings by objectors, and any replies in support of final approval of the Settlement and/or Class Counsel's application for attorneys' fees, expenses, notice and administration costs, and Service Awards shall be filed.

(8) Any Class Member that has not timely and properly excluded itself from the Settlement Class in the manner described below, may appear at the Final Approval Hearing in person or by counsel and be heard, to the extent allowed by the Court, regarding the proposed Settlement; provided, however, that no Class Member that has elected to exclude itself from the Settlement Class shall be entitled to object or otherwise appear, and, further provided, that no Class Member shall be heard in opposition to the Settlement unless the Class Member complies with the requirements of this Order pertaining to objections, which are described below.

### Administration

(9) RG2 Claims Administration LLC is appointed as the Settlement Administrator as set forth in the Settlement, with responsibility for Claims Administration, the Notice Program, and all other obligations of the Settlement Administrator as set forth in the Settlement. Within (30) thirty days of this order, the Settlement Administrator shall cause the Notice Program to be effectuated as set forth in the Settlement Agreement. Notice pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.

§1715(b) will also be provided.  Up to $50,000 of the Settlement Administrator's fees, as well as all other costs and expenses associated with notice and administration, will be paid by certain of the Releasees, with the remainder of such costs, if approved by the Court, to be paid by the Settlement Fund to the extent provided in the Settlement.

<u>Notice to the Class</u>

(10) The Notice Program set forth in the Settlement, including the forms of Notice attached as exhibits to the Settlement, satisfies the requirements of Rule 23 and due process and thus are approved.  Non-material modifications to the exhibits may be made without further order of the Court. The Settlement Administrator is directed to carry out the Notice Program in conformance with the Settlement and to perform all other tasks that the Settlement requires.

(11) The Court finds that the form, content, and method of giving notice to the Settlement Class, as described in the Settlement and exhibits therefore:  (a) constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the action, the terms of the proposed Settlement, and their rights under the proposed Settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d)

satisfy the requirements of Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements.  The Court further finds that the notice is written in plain language, uses simple terminology, and is designed to be readily understandable by Class Members.

Exclusions from the Settlement Class

(12) Any Class Member that wishes to be excluded from the Settlement Class must mail a written notification of the intent to exclude itself to the Settlement Administrator, Class Counsel, and Defendants' counsel at the addresses provided in the Notice, postmarked no later than 114 days after the entry of this Order (the "Opt-Out Deadline") and sent via first class postage pre-paid United States mail.  The written notification must include the name of this Litigation, Aquilina, et al. v. Certain Underwriters at Lloyd's London, et al., No. 18-cv-00496-ACK-KJM (D. Haw.); the full name, mailing address, property address, email address, and telephone number of the Class Member; and the words "Request for Exclusion" at the top of the document or a statement in the body of the document requesting exclusion from the Settlement.  If the Class Member fails to provide all the required information necessary to confirm the identity of the Class Member on or before the deadlines specified in the Settlement and fails to cure any deficiency within the time allowed in the Settlement, then its attempt to

opt out shall be invalid and have no legal effect, and the Class Member shall be bound by the Settlement, including the releases, if finally approved.

(13) All Class Members who submit valid and timely notices of their intent to be excluded from the Settlement shall not receive any benefits of or be bound by the terms of the Settlement.  Any Class Member that does not timely and validly exclude itself from the Settlement shall be bound by the terms of the Settlement.  If final judgment is entered, any Class Member that has not submitted a timely, valid written notice of exclusion from the Settlement (in accordance with the requirements of the Settlement) shall be bound by all subsequent proceedings, orders and judgments in this matter, the Settlement, including but not limited to the releases set forth in the Settlement, and the Final Approval Order and Judgment.

(14) The Settlement Administrator shall provide the Parties with copies of all opt-out notifications promptly upon receipt and a final list of all that have timely and validly excluded themselves from the Settlement Class in accordance with the terms of the Settlement.

<u>Objections to the Settlement</u>

(15) A Class Member that complies with the requirements of this Order may object to the Settlement, the

request of Class Counsel for an award of attorneys' fees, costs, and expenses, and/or the request for Service Awards.

(16) No Class Member shall be heard, and no papers, briefs, pleadings, or other documents submitted by any Class Member shall be received and considered by the Court, unless the objection is (a) electronically filed with the Court by the objection deadline; or (b) mailed first-class postage prepaid to the Clerk of Court, Class Counsel, and Defendants' Counsel, at the addresses listed in the Notice, and postmarked by no later than the objection deadline, which shall be 114 days after the entry of this Order, as specified in the Notice.  Objections shall not exceed twenty-five (25) pages.  For the objection to be considered by the Court, the objection shall set forth:

    a. the name of the Litigation: <u>Aquilina, et al. v. Certain Underwriters at Lloyd's London, et al.</u>, No. 18-cv-00496-ACK-KJM (D. Haw.);

    b. the full name of the objecting Class Member and the full name, address, email address, and telephone number of the person acting on its behalf;

    c. an explanation of the basis upon which the objector claims to be a Class Member;

    d. whether the objection applies only to the objecting Class Member, a specific subset of Class Members, or the entire Settlement Class;

    e. all grounds for the objection stated, with specificity, accompanied by any legal support for the objection;

    f. the identity of all counsel who represent the objecting Class Member, including any former or

current counsel who may be entitled to compensation for any reason related to the objection to the Settlement Agreement, Class Counsel's request for attorneys' fees, expenses, Service Awards, and/or notice and administration costs;

g. the identity of all representatives (including counsel representing the objecting Class Member) who will appear at the Final Approval Hearing;

h. the number of times in which the objecting Class Member has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

i. the number of times in which the objecting Class Member's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector filed the objection, the caption of each case in which the counsel or the firm has made such an objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

j. if the objecting Class Member is represented by an attorney who intends to seek fees and expenses from anyone other than the objectors he or she represents, the objection should also include: (i) a description of the attorney's legal background and prior experience in connection with class action litigation; (ii) the amount of fees sought by the attorney for representing the objector and the factual and legal justification for the fees being sought; (iii) a statement regarding whether the fees being sought are calculated on the basis of a lodestar, contingency, or other method; (iv) the number of hours already spent by the attorney and an estimate of the hours to be spent in the future; and (v) the attorney's hourly rate;

k. any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between the objector or objector's counsel and any other person or entity;

l. a description of all evidence to be presented at the Final Approval Hearing in support of the objection, including a list of any witnesses, a summary of the expected testimony from each witness, and a copy of any documents or other non-oral material to be presented;

m. a statement indicating whether the objecting Class Member intends to personally appear and/or testify at the Final Approval Hearing; and

n. the objecting Class Member's (or the objecting Class Member's attorney's) signature on the written objection.

(17) In addition, any Class Member that objects to the proposed Settlement must make itself available to be deposed regarding the grounds for its objection and must provide, along with its objection, the dates when the objector will be available to be deposed during the period from when the objection is filed through the date 7 (seven) days before the Final Approval Hearing.

(18) Any Class Member that fails to comply with the provisions in this Order will waive and forfeit any and all rights it may have to object, and shall be bound by all the terms of the Settlement, this Order, and by all proceedings, orders, and judgments, including, but not limited to, the releases in the Settlement, if finally approved. Any Class Member who both objects to the Settlement and opts out will be

60

deemed to have opted out and the objection shall be deemed null and void.

### Class Payments and Distribution Plan

(19) The Settlement establishes a methodology for paying Class Members.  The Court preliminarily approves this process.

(20) The Net Settlement Fund shall be distributed to Class Members based on the proportion of total premium dollar each Class Member paid during the Class Period compared to the total aggregate premium paid by all Class Members during the Class Period.  No specific documentation shall be required.  If the Settlement is finally approved, all Class Members that qualify for any benefit under the Settlement will be subject to and bound by the provisions of the Settlement, including the releases included in the Settlement, and the Final Approval Order and Judgment.

### Termination of the Settlement and Use of this Order

(21) This Order shall become null and void and shall be without prejudice to the rights of the Parties, all of which shall be restored to their respective positions existing immediately before this Court entered this Order, if the Settlement is not finally approved by the Court or is terminated in accordance with the terms of the Settlement.  In such event, the Settlement shall become null and void and be of no further

force and effect, and neither the Settlement (including any Settlement-related filings) nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose whatsoever.

(22) If the Settlement is not finally approved or there is no Effective Date under the terms of the Settlement, then this Order shall be of no force or effect; shall not be construed or used as an admission, concession, or declaration by or against Defendants of any fault, wrongdoing, breach, or liability; shall not be construed or used as an admission, concession, or declaration by or against any Plaintiff or any other Class Member that their claims lack merit or that the relief requested is inappropriate, improper, or unavailable; and shall not constitute a waiver by any party of any defense (including without limitation any defense to class certification) or claims they may have in this Litigation or in any other lawsuit.

<u>Stay of Proceedings</u>

(23) Except as necessary to effectuate this Order, this Litigation and any deadlines set by the Court in this matter are stayed and suspended pending the Final Approval Hearing and issuance of the Final Approval Order and Judgment, or until further order of this Court.

## Continuance of Final Approval Hearing

(24)   The Court reserves the right to adjourn or continue the Final Approval Hearing and related deadlines without further written notice to the Settlement Class.  If the Court alters any of those dates or times, the revised dates and times shall be posted on the website maintained by the Settlement Administrator.

## Summary of Deadlines[13]

(25) The Settlement, as preliminarily approved in this Order, shall be administered according to its terms pending the Final Approval Hearing.  Deadlines arising under the Settlement and this Order include but are not limited to the following:

- Notice Deadline:  September 13, 2021

- Objection and Opt-Out Deadline:  December 6, 2021

- Final Approval Hearing:  March 3, 2022, at 10:00 a.m.

- Application for Attorneys' Fees, Expenses and Service Awards ("Fee Application"):  November 22, 2021

- Motion for Final Approval of the Settlement ("Final Approval Motion"):  November 22, 2021

---

[13]   The Court notes that it has removed the "Claims Deadline" originally included in Plaintiffs' proposed order for preliminary approval of the Settlement, Ex. C to Settlement.  Because payments are automatic, there is no apparent requirement that Class Members file any sort of "claim" in order to recover some amount under the Settlement.

- <u>Objectors', if any, Response to Final Approval Motion and Fee Application</u>: December 6, 2021

- <u>Replies in Support of Final Approval and Fee Motion</u>: January 20, 2022

<u>Summary</u>

In sum, the Court (1) provisionally certifies the proposed Settlement Class; (2) preliminarily approves the proposed Settlement; (3) approves the proposed Notice Program; (4) appoints Plaintiffs as Class representatives; (5) appoints Joseph P. Guglielmo of Scott+Scott Attorneys at Law LLP, E. Kirk Wood of Wood Law Firm LLC, and Gregory W. Kugle of Damon Key Leong Kupchak Hastert, a Law Corporation, as Class Counsel; (6) appoints RG/2 Claims Administration, LLC as the Settlement Administrator; (7) stays this litigation pending final approval; and (8) schedules the final approval hearing for **March 3, 2022, at 10:00 a.m.**

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, August 13, 2021.



_____
Alan C. Kay
Sr. United States District Judge

<u>Aquilina, et al. v. Certain Underwriters at Lloyd's, et al.</u>, Civ. No. 18-0496-ACK-KJM, Order Granting Preliminary Approval of Class Action Settlement